

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP,<br><br>Plaintiff,<br><br>v.<br><br>QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; ROSETTE, LLP; RICHARD ARMSTRONG; KEENY ESCALANTI, SR.; MARK WILLIAM WHITE II, A/K/A WILLIE WHITE; and DOES 1 THROUGH 10,<br><br>Defendants. | Case No.: 3:17-cv-1436-GPC-MDD<br><br>**ORDER DENYING *EX PARTE* MOTION TO SEAL CASE AND COMPLAINT** |

Before the Court is an *ex parte* motion to seal the case and the complaint, along with its exhibits, by Plaintiff Williams & Cochrane, LLP ("Williams & Cochrane"). EPM "Ex Parte Motion" at 1. Plaintiff argues that there are compelling reasons to seal the case and the complaint because "this controversy involves confidential client information, confidential dispute resolution communications with the State of California, proprietary attorney-work product, and sensitive matters involving another client of the

1

3:17-cv-1436-GPC-MDD

Firm." *Id.* Upon review of Plaintiff's motion, the relevant law, and for the following reasons, the Court hereby **DENIES** Plaintiff's ex parte motion.

## BACKGROUND

The instant dispute arises out of an attorney-client fee agreement that Plaintiff entered into with Defendant Quechan Tribe of the Fort Yuma Indian Reservation ("the Quechan Tribe.") *Id.* at 2. Years ago, the Quechan Tribe reached out to Plaintiff about representing the tribe in a dispute with California over "overpayments under an allegedly void compact." *Id.* After weeks of discussion and negotiation, Plaintiff agreed to represent the Quechan Tribe on the contingency that the tribe pay Plaintiff a 15% contingency fee if the tribe prevailed in recovering the $40 million in overpayments allegedly owed. *Id.*

In their capacity as counsel to the Quechan Tribe, Plaintiff alleges that it "was able to convince the Officer of the Governor to provide Quechan with a replacement compact that would eliminate over $120 million in revenue sharing fees during the next 28 years and provide the tribe with the ability to generate another $660 million in additional revenue as a result of new gaming rights." *Id.* at 3. This compact, however, was never executed, Plaintiff alleges, because "just three days before the parties were supposed to execute the compact" the tribe "terminat[ed] the firm effective immediately and would not pay either the contingency fee or a reasonable fee in lieu thereof based upon the value of the services the tribe had received." *Id.* This lawsuit against the Quechan tribe, along with the individuals allegedly responsible for interfering in Plaintiff's agreement with the tribe, followed thereafter.

## LEGAL STANDARD

There is a presumptive right of public access to court records based upon the common law and the first amendment. *See Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978); *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212-13 (9th Cir. 2002). Nonetheless, access may be denied to protect sensitive confidential information. Courts are more likely to protect information covered by Rule

26(c) of the Federal Rules of Civil Procedure, but are not limited by items listed in protective orders. *See KL Group v. Case, Kay, & Lynch*, 829 F.2d 909, 917-19 (9th Cir. 1987) (letter to client from attorney); *Kalinauskas v. Wong*, 151 F.R.D. 363, 365-67 (D. Nev. 1993) (confidential settlement agreement).

"Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the historical right of access and the public policies favoring disclosure." *Id.* at 1178-79.

Parties seeking to seal documents in a dispositive motion must meet the high threshold requiring "compelling reasons" with specific factual findings to support a sealing. *Kamakana*, 447 F.3d at 1178-80 (9th Cir. 2006). However, for non-dispositive motions, the parties must show a lesser "particularized showing" under the "good cause" standard pursuant to Federal Rule of Civil Procedure 26(c). *Id.* at 1180. The "compelling reasons" test requires showing more than just "good cause." *Id.* Documents filed under seal will be limited to only those documents, or portions thereof, necessary to protect such sensitive information.

Although the "Ninth Circuit has yet to specify whether a party seeking to seal a complaint . . . must meet the 'compelling reasons' or 'good cause' standard," *see Harrell v. Cal. Forensic Med. Grp., Inc.*, 2015 WL 1405567, *1 (E.D. Cal. Mar. 26, 2015), district courts generally conclude that the "compelling reasons" standard applies because the complaint initiates the civil action. *See, e.g., Baldwin v. U.S.*, 732 F. Supp. 2d 1142, 1145 (D.N. Mar. 1, 2010); *Robert Half Intern., v. Ainsworth*, 2015 WL 4394805, *3 n.2 (S.D. Cal. July 15, 2015); *In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 1859067 (N.D. Cal. Apr. 23, 2008). Accordingly, and especially considering the public's interest in

being able to access civil actions filed in the courts, the Court will apply the "compelling reasons" standard to Plaintiff's request.

Plaintiff argues that there are "important policy reasons" for denying the general right to access documents. EPM at 3 (citing *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1219 (9th Cir. 1989) ("there is no right of access to documents which have traditionally been kept secret for important policy reasons"). Chief among them, Plaintiffs argue, is the right to keep attorney-client communications secret. *Id.* at 5. Plaintiff goes on to argue the unique circumstances of this dispute justify sealing the complaint for four reasons: namely, that the allegations contain (1) information that Plaintiff obtained during its representation of the Quechan tribe; (2) disclosures made by the State of California during confidential negotiations with the Quechan Tribe; (3) attorney work product; and that sealing the complaint will alleviate and avoid "internal strife" for the tribe. *Id.* at 5-8.

The Court generally agrees that is appropriate to seal privileged attorney-client information and attorney work-product that arose out of Plaintiff's representation of the Quechan Tribe and that it is, moreover, equally fitting to seal confidential information involving the Quechan Tribe's negotiations with the State of California. The Court, however, is not persuaded that these reasons justify sealing the entire complaint from public view. Plaintiff has offered no compelling reason why every paragraph in its 91-page complaint and why each of its thirty-nine exhibits must be filed under seal. The Court further concludes that it does not even find good cause for sealing the entire complaint. The Court, therefore, **DENIES** Plaintiff's motion because it finds that sealing the entire complaint is not necessary to protect the sensitive information raised therein.

Accordingly, to the extent that Plaintiff wishes to protect the confidential and privileged information contained within the complaint, it must redact those portions of the complaint (and those portions of the exhibits) and file the redacted version on the public docket. Simultaneously, it may file a motion to seal the unredacted version of the complaint and preliminarily lodge an unredacted version under seal. The unredacted

4

version, in turn, will remain under seal until the Court has the opportunity to issue an order on Plaintiff's motion to seal.

## **CONCLUSION**

The clerk of court shall unseal the case, strike the complaint from the record, and file the motion to seal on the public docket.

**IT IS SO ORDERED.**

Dated: August 17, 2017

Hon. Gonzalo P. Curiel
United States District Judge