MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
BRITTANY ROGERS (S.B. #274432)
brogers@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendants Robert Rosette,
Rosette & Associates, PC, Rosette, LLP, and
Richard Armstrong

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP and FRANCISCO AGUILAR, MILO BARLEY, GLORIA COSTA, GEORGE DECORSE, SALLY DECORSE, et al., on behalf of themselves and all those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; ROSETTE, LLP; RICHARD ARMSTRONG; KEENY ESCALANTI, SR.; MARK WILLIAM WHITE II, a/k/a WILLIE WHITE; and DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 17-CV-01436 GPC MDD<br><br>**REDACTED**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ROSETTE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH, FIFTH, AND SIXTH CLAIMS FOR RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT**<br><br>[Notice of Motion and Request for Judicial Notice Filed Concurrently]<br><br>Judge:  Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Date: October 12, 2018<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. PROCEDURAL BACKGROUND ............................................................ 2

III. ARGUMENT ............................................................................................ 3

    A. W&C's RICO Claims Are Implausible and Inadequately
       Pleaded ............................................................................................ 4

        1. The RICO Claim Against the Rosette Defendants Fails to
           Allege a Pattern, Enterprise, Injury, or Causation ..................... 5

        2. The SAC's RICO Conspiracy Claim Fails to Allege an
           Agreement to Violate RICO, Predicate Acts, or Injuries to
           W&C .................................................................................. 17

    B. The Individual Plaintiffs' "Negligence/Breach of Fiduciary
       Duty" Claim Fails Because They Do Not Sufficiently Allege
       Negligent Performance ...................................................................... 19

    C. Immaterial, Impertinent, and Scandalous Allegations in the SAC
       Should Be Struck ............................................................................ 22

IV. CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*A. Terzi Prods., Inc. v. Theatrical Protective Union*,
  2 F. Supp. 2d 485 (S.D.N.Y. 1998) ....................................................................11

*Allen v. U.S. Bank, Nat'l Ass'n*,
  2013 WL 5587389 (E.D. Cal. Oct. 10, 2013) ...................................................12

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ..........................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................3

*Ashland Oil, Inc. v. Arnett*,
  875 F.2d 1271 (7th Cir. 1989) ...........................................................................11

*Avalos v. Baca*,
  596 F.3d 583 (9th Cir. 2010) ...............................................................................4

*Barner v. Leeds*,
  24 Cal. 4th 676 (2000) .......................................................................................21

*Beck v. Prupis*,
  529 U.S. 494 (2000) ..........................................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................4

*Canyon Cty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) .............................................................................15

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ..........................................................................................14

*Chaset v. Fleer/Skybox Int'l, LP*,
  300 F.3d 1083 (9th Cir. 2002)...........................................................................17

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) .............................................................18

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ..............................................................................15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014)..............................................................4, 13, 14, 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004)........................................................4, 18

*Fasulo v. United States*,
   272 U.S. 620 (1926) ......................................................................11

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990) ..........................................................14

*Fitzgerald v. Chrysler Corp.*,
   116 F.3d 225 (7th Cir. 1997) ..........................................................15

*Freeman v. Lasky, Haas & Cohler*,
   410 F.3d 1180 (9th Cir. 2005)...........................................................9

*Grauberger v. St. Francis Hosp.*,
   169 F. Supp. 2d 1172 (N.D. Cal. 2001)..........................................12

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010)............................................................................16

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992) .......................................................................16

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000)...........................................................17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., etc. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011)..........................................15

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ..................................14

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd sub nom. Katzman v.
   Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229
   (2d Cir. 1997) ..........................................................................10, 14

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) .............................................................13

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005)...........................................................13

*Martorana v. Marlin & Saltzman*,
   175 Cal. App. 4th 685 (2009)..........................................................21

**TABLE OF AUTHORITIES**
(continued)

Page

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ................................................................17

*Moran v. Bromma*,
    675 F. App'x 641 (9th Cir. 2017) ...........................................................14

*Nutrition Distribution LLC v. Custom Nutraceuticals LLC*,
    194 F. Supp. 3d 952 (D. Ariz. 2016) ......................................................11

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) .................................................................10

*Pauma v. Nat'l Labor Relations Bd.*,
    888 F.3d 1066 (9th Cir. 2018) ...............................................................16

*Salinas v. United States*,
    522 U.S. 52 (1997) .................................................................................17

*Solin v. O'Melveny & Myers, LLP*,
    89 Cal. App. 4th 451 (2001) ...................................................................21

*Sosa v. DirecTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ....................................................................8

*ThermoLife Int'l., LLC v. Gaspari Nutrition, Inc.*,
    2011 WL 6296833 (D. Ariz. Dec. 16 2011) ...........................................11

*Viner v. Sweet*,
    30 Cal. 4th 1232 (2003) ..........................................................................21

*Walters v. Fid. Mortg. of Cal.*,
    730 F. Supp. 2d 1185 (E.D. Cal. 2010) ..................................................22

**<u>STATUTES</u>**

18 U.S.C. § 1964(c) ......................................................................................19

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD

## I.     Introduction

Even after three opportunities to amend the operative complaint (Docket Nos. 5, 39, 100), Williams & Cochrane, LLP ("W&C") still cannot adequately allege a RICO violation or a malpractice claim against the Rosette Defendants.[1] Despite the Court's clear directions for amendment when it dismissed the First Amended Complaint ("FAC"), the Second Amended Complaint ("SAC") recycles many of the same allegations the Court previously rejected as insufficient to state a claim.  The SAC continues to include "pages-long discussions of topics wholly irrelevant to the claims in this case" and the Court has ample grounds to "dismiss[] the complaint *sua sponte*", as it warned Plaintiffs it might do.  (Docket No. 89 at 2 n.1)  Looking to what passes for substance, the SAC fails to add factual detail necessary to plead plausible claims for relief.  If anything, what has been added only confirms that Plaintiffs' claims should be dismissed with prejudice.

W&C premises its RICO claims on contradictory, self-defeating, and at times inexplicable allegations.  The SAC glosses over RICO's enterprise, purpose, and injury elements, and once again pays lip service to the pattern requirement, relying on a litany of accusations that do not constitute mail or wire fraud and do not have any alleged deceitful purpose.  These supposed "predicate acts" now include allegations about ███████████████████████████████, as well as Quechan's per capita distributions in spring 2017—months before Rosette, LLP was hired—while W&C still represented Quechan.  (SAC ¶ 231.)  The SAC goes so far as to assert that events in this litigation, like the filing of Quechan's answer (*id.* ¶ 174), are themselves predicate acts of mail or wire fraud sufficient to support a RICO violation.  (*Id.* ¶ 225.)  As for the malpractice claim, the deficiencies this

---

[1] "Rosette Defendants" refers to Robert Rosette; Rosette & Associates, PC; Rosette, LLP; and another member of the Rosette firm, Richard Armstrong.  "Quechan Defendants" refers to the remaining defendants.

1  Court previously identified have not been addressed; nothing in the SAC states a

2  plausible claim for professional negligence.

3      The SAC does make one thing clear: W&C is looking to blame someone else

4  for its business setbacks without regard for the collateral damage it causes.  W&C

5  lost a client and failed to recoup a disputed fee.  That is not a RICO violation, and it

6  does not imply any kind of malpractice by the Rosette Defendants.  Nor does it

7  justify W&C's campaign to smear the reputations of the Rosette Defendants and

8  their other clients.

9      The Court granted amendment to give W&C a chance to develop its

10  allegations in order to get closer to "the line" of plausibility.  (Docket No. 89 at 39.)

11  Rather than heed the Court's guidance, W&C doubled down on its conspiratorial

12  theorizing and personal attacks, suffusing the SAC with even more conclusory

13  allegations.  Dismissal with prejudice is more than warranted here, as is striking the

14  immaterial, impertinent, and scandalous allegations about Mr. Rosette and his

15  representation of other clients, which have no connection to Quechan, Pauma, or

16  any claims against the Rosette Defendants.

17  **II.    Procedural Background**

18      Despite its name, the SAC is the fourth pleading in this case.  The first

19  complaint was filed on July 17, 2017 (Docket No. 1) and later struck by the Court.

20  (Docket No. 3.)  The next complaint, filed on September 9, 2017, referred to events

21  that occurred after July 17, meaning that it must have included new allegations.

22  (*See, e.g.*, Docket No. 5 at ¶ 199.)  The third complaint, the FAC, was filed on

23  March 2, 2018.  (Docket No. 39.)  The FAC asserted five claims against the Rosette

24  Defendants: two Lanham Act claims, two RICO claims, and one malpractice claim.

25  (*Id.*)  The final claim was asserted on behalf of a collection of individual Quechan

26  members.  (*Id.*)

27      The Court granted the Rosette Defendants' motion to dismiss nearly all of the

28  FAC's claims, finding only a portion of one Lanham Act claim was adequately

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD

pleaded.  (Docket No. 89 at 24.)  The Court's 39-page dismissal order (the "Order") laid out the applicable legal standards and explained, in detail, why the FAC's RICO and malpractice claims against the Rosette Defendants did not meet those standards.  In places, the Order identified allegations that *might* be viable if properly augmented.  (*E.g. id.* at 29.)  It also warned that if Plaintiffs "choose to file an amended complaint in an attempt to cure the deficiencies discussed in this ruling . . . the Court will consider dismissing the complaint *sua sponte*" if it still fails to meet Rule 8(a)'s "short and plain" requirement.  (*Id.* at 2 n.1.)

W&C filed the 80-page SAC on July 20, 2018.  (Docket No. 100.)  The SAC asserts four claims against some or all of the Rosette Defendants: (1) a Lanham Act claim on behalf of W&C; (2) a RICO claim on behalf of W&C; (3) a RICO conspiracy claim against the Rosette Defendants and individual Quechan Defendants on behalf of W&C; and (4) a malpractice claim against the Rosette Defendants on behalf of individual Quechan members (the "Individual Plaintiffs").[2]

## III.   Argument

Plaintiffs' RICO and malpractice claims against the Rosette Defendants fail to state a claim on which relief can be granted for multiple, independent reasons. Although at this stage the Court must accept factual allegations as true, a pleading "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted).  Allegations that "are no more than conclusions [] are not entitled to the assumption of truth."  *Id.* at 679.  Those allegations must be ignored when determining whether the remaining allegations allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "plausibly give rise to an entitlement to relief."  *Id.* at 678–79; *see generally Bell*

---

[2] Plaintiffs lodged under seal a redline comparing the FAC and SAC.  (*See* Ex. 32 to SAC.)

1  *Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Likewise, allegations that fail to

2  "exclude a plausible and innocuous alternative explanation" for defendants'

3  conduct are not entitled to a presumption of truth.  *Eclectic Props. E., LLC v.*

4  *Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014).  And those claims that

5  hinge on fraud, like W&C's RICO claims, must also comply with the heightened

6  pleading standards set forth in Rule 9 of the Federal Rules of Civil Procedure.  *See,*

7  *e.g., Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004)

8  (applying Rule 9 to RICO claims).

9        **A.     W&C's RICO Claims Are Implausible and Inadequately Pleaded**

10        W&C's RICO claims against the Rosette Defendants suffer from the same

11  defects as those the Court previously dismissed.  To allege a RICO claim, a plaintiff

12  must plead that the defendants participated in: "(1) the conduct of (2) an enterprise

13  that affects interstate commerce (3) through a pattern (4) of racketeering activity or

14  collection of unlawful debt."  *Eclectic Props.*, 751 F.3d at 997.  "In addition, the

15  conduct must be (5) the proximate cause of harm to the victim."  *Id.*  That harm

16  must be a concrete injury to business or property.  *Avalos v. Baca*, 596 F.3d 583,

17  594 (9th Cir. 2010) (describing RICO standing requirements.)  Bare recitals of

18  these elements are insufficient to survive a motion to dismiss, and when defendants

19  "otherwise act as routine participants in American commerce, a significant level of

20  factual specificity is required to allow a court to infer reasonably that such conduct

21  is plausibly part of a fraudulent scheme."  *Eclectic Props.*, 751 F.3d at 997–98.

22        While the focus of the two RICO claims has shifted slightly in the SAC,

23  Plaintiffs have still failed to allege with the required factual specificity any element

24  of either one.  Although ostensibly based on "mail and wire fraud," the SAC fails to

25  plead with particularity a single instance of any such fraud.  W&C's allegations

26  simply do not rise to the level of a RICO claim.

27

28

1. **The RICO Claim Against the Rosette Defendants Fails to Allege a Pattern, Enterprise, Injury, or Causation**

   a. **The SAC Fails to Allege a Pattern of Racketeering Activity**

The SAC seizes on the few allegations the Court's Order recognized as being *potentially* viable, if augmented, and then simply recycles them without augmentation in an effort to create the illusion of a pattern. These pattern allegations have not been supplemented to provide the detail Rule 9(b) requires. As this Court explained, "[t]o establish a 'pattern,' W&C must allege at least two acts constituting mail or wire fraud." (Docket No. 89 at 26.) "To allege a violation of mail or wire fraud under 18 U.S.C. §§ 1341 or 1343, respectively, a plaintiff must show: (1) there was a scheme to defraud; (2) the defendants used the mail (or wire, radio, or television) in furtherance of the scheme; and (3) the defendants acted with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004)." (*Id.*) This Court previously rejected as insufficient many of the "predicate acts" identified in the SAC. (*Compare* Docket No. 89 at 27–28 with SAC ¶ 225.) The remainder are patently not mail or wire fraud—either they did not occur over mail or wires, or they are not alleged to have occurred in connection with a scheme to defraud. Most are also contradicted by other allegations in the SAC.

W&C's RICO claim against the Rosette Defendants is premised on 12 alleged predicate acts by Mr. Rosette, Rosette, LLP, and Rosette & Associates, PC (SAC ¶ 225):

1. Interfering with W&C's alleged agreement with La Pena Law by claiming Mr. Rosette was responsible for litigating the Pauma case (*id.* ¶ 225(a));

2. Directing Mr. Armstrong to e-mail the State's negotiator to set up settlement talks with Pauma "even though his firm did not represent

1    the tribe in the matter" (*id.* ¶ 225(b));

2    3.    Communicating with the State's negotiator and "erroneously

3          claim[ing] that Pauma desired to settle" the Pauma litigation (*id.* ¶

4          225(c));

5    4.    Posting on Mr. Rosette's website that he "successfully litigated a case

6          saving the Pauma Band of Luiseno Mission Indians over $100 Million

7          in Compact payments allegedly owed to the State of California" (*id.* ¶

8          225(d));

9    5.    Disseminating promotional materials with the same statement (*id.* ¶

10         225(e));

11   6.    Disseminating those promotional materials to Quechan President

12         Keeny Escalanti and Councilmember Willie White (*id.* ¶ 225(f));

13   7.    Arranging to transmit a letter terminating W&C on "June 27, 2017 . . .

14         even though Rosette, LLP did not officially represent Quechan at that

15         point" (*id.* ¶ 225(g));

16   8.    Working through a "strawman" attorney at Pauma to recommend the

17         hiring of an acquaintance (*id.* ¶ 225(h), ¶ 170);

18   9.    Disseminating sealed documents to the general manager of Pauma's

19         gaming facility and informing the Court that the disclosure was

20         inadvertent (*id.* ¶ 225(i));

21   10.   Disseminating sealed documents to an unidentified Pauma Tribe

22         member (*id.* ¶ 225(j));

23   11.   "[A]rrang[ing] to have the attorney representing Quechan" file in

24         answer in this case (*id.* ¶ 225(k)); and

25   12.   "[D]isseminat[ing] the answer" to a Pauma Tribe member, along with

26         a message that the SAC neither attaches nor describes (*id.* ¶ 225(l)).

27   The SAC also identifies alleged predicate acts involving Mr. Armstrong, all

28   of which relate to the allegations against the other Rosette Defendants:

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD

13.   E-mailing the State's negotiator in the Pauma matter, as described in Allegation 2,"when he was not even retained on the matter" (*id.* ¶ 225(2nd a));

14.   Communicating with the State's negotiator and "erroneously claim[ing] that Pauma desired to settle" the Pauma litigation "when he was not even retained on the matter", as described in Allegation 3 (*id.* ¶ 225(2nd b));

15.   "[A]rrang[ing], or assist[ing] in arranging" to transmit the letter terminating W&C on "June 27, 2017 . . . even though Rosette, LLP did not officially represent Quechan at that point", as described in Allegation 7 (*id.* ¶ 225(2nd c)); and

16.   "[D]irect[ing] a subordinate associate to e-mail Cheryl Williams in an attempt to get the June 21st draft compact even though Rosette, LLP did not officially represent Quechan at that point." (*Id.* ¶ 225(2nd d).)

As the Court recognized when analyzing the FAC, these allegations fall into substantive categories: suggestions to others (Docket No. 89 at 28), conduct on behalf of others (*id.* at 29), a statement about the Pauma litigation, and conduct related to this litigation.  Despite the number of allegations, the SAC yet again fails to allege predicate acts of mail or wire fraud consistent with Rule 9(b).

***Suggestions to Others Regarding Legal Representation or Legal Strategy.***
The SAC alleges that the Rosette Defendants "'[s]uggest[ed]' that another party engage in, or 'instructed' another party to engage in, certain conduct" related to legal representation or legal matters.  (Docket No. 89 at 28.)  This includes Allegations 8 and 11.  As the Court recognized when dismissing these claims, "none of the conduct that Rosette Defendants sought to produce in those allegations was fraudulent."  (*Id.*)  Other than a conclusory reference to seeking access to "monies" at Pauma using a "strawman," there is little explanation of Allegation 8, no indication that any portion of the allegations occurred over mail or wires, and no

1   reason to believe that, even accepting the allegations as true, there was anything

2   nefarious about providing a job reference for an acquaintance.  (*See* SAC ¶ 170.)

3   As for Allegation 11, Quechan's filing of an answer in this case is constitutionally

4   protected litigation activity, *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929–30 (9th Cir.

5   2006), and to suggest that it constitutes mail or wire fraud betrays a fundamental

6   misunderstanding of the law.

7        ***Professional Conduct on Behalf of Others.***  Next, like in the FAC, many of

8   the allegations refer to the Rosette Defendants "engag[ing] in conduct on behalf of

9   another," and, like in the FAC, "[t]hese actions also fail to suggest a scheme to

10  defraud."  (Docket No. 89 at 28.)  Allegations 2, 3, 13, and 14 relate to conduct

11  undertaken on behalf of Pauma.[3]  Similar allegations were present in the FAC.

12  (*Compare* FAC ¶ 288(d) *with* SAC ¶¶ 225(b), 225(c), 225(2nd a), and (225(2nd b).)

13  As before, there are no allegations suggesting that these actions were done "through

14  deceit."  (Docket No. 89 at 28.)

15       W&C's theory appears to be that the conduct was wrongful because at the

16  time of the communications, the "firm did not represent the tribe in the matter."

17  (*See, e.g.*, SAC ¶ 225(b).)  But its other allegations and exhibits make clear that the

18  Rosette Defendants affirmatively disclosed that fact when members of the firm

19  tried, as a favor to the Tribe, to arrange for an informal meeting between the Tribe's

20  leadership and the State.  As paragraph 159 of the SAC concedes, "Robert Rosette

21  sent a follow-up e-mail to Mr. Appelsmith, explaining that his firm was "not

22  engaged as legal counsel on the litigation[.]"  (*See also* SAC ¶ 160.)  And nothing

23  about these allegations is substantively different from those the Court previously

24

25

---

26  [3] These are also protected petitioning and litigation activities under *Noerr-*

27  *Pennington*.  (Docket No. 53-1 at 13–17); *see also*, *Sosa*, 437 F.3d 923, 934–35
    ("conduct incidental" to petitioning activity is protected).

28

1    rejected as inadequate.[4]

2           Allegations 7, 15, and 16 concern Quechan's termination of W&C and

3    W&C's assertion that the Rosette Defendants committed mail and wire fraud by

4    helping to prepare the termination letter and requesting that W&C turn over its

5    working file on the compact.  The Court has already concluded these are not

6    predicate RICO acts: "[T]hese allegations do not . . . suggest that Rosette was

7    anything but forthright about the current state of Quechan's legal representation or

8    the likely consequences of W&C continuing to withhold the requested documents."

9    (Docket No. 89 at 29.)[5]

10          The only new contention in the SAC is that as of June 27, 2017, when the

11   letter was sent, "Rosette, LLP did not officially represent Quechan" (*see, e.g.*, SAC

12   ¶ 225(g)), but this allegation is both inconsistent with other assertions in the SAC

13   and flatly wrong.  W&C itself alleges that Mr. Rosette met with Quechan on June

14   16, 2017, and discussed representing the Tribe at that meeting.  (*Id.* ¶ 183.)

15   Quechan's Attorney Services Contract with Quechan was executed on June 23,

16   2017 (Docket No. 54-2, Ex. 2), and Quechan's formal resolution authorizing

17   Rosette, LLP's retention was passed on June 26, 2017—all before the termination

18   letter was sent.  (*See* Docket No. 29-2, Ex. A.)  While W&C makes a single,

19   conclusory claim that the resolution may have been "backdate[d]", it offers no

20   ────────────────────

21   [4] It is not uncommon to rely on attorneys who are uninvolved in ongoing litigation

     to facilitate settlement discussions, and there are significant benefits to this

22   approach.  *See, e.g.*, William F. Coyne, Jr., *The Case for Settlement Counsel*, 14

     Ohio St. J. on Disp. Resol. 368 (1999) ("[T]he initial attempt to settle has a greater

23   chance of success if made by separate settlement counsel . . .  [who] is not a

     member of the same firm as trial counsel").

24   [5] Actions undertaken on behalf of Quechan in connection with its negotiations with

25   the State and threatened litigation are likewise protected by *Noerr-Pennington* and

     cannot form the basis of liability.  (*See* Docket No. 53-1 at 13–17); *see also*

26   *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005) (petition

     right belongs to the client-party in the first instance, "their employees, law firms

27   and lawyers . . . get to benefit as well.").

28

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD

support or explanation for this assertion, which falls far short of the requirements for Rule 9(b).  (SAC ¶ 185.)  Thus, each of these alleged predicate acts is based on a characterization belied by W&C's other allegations and undermined by judicially noticeable documents incorporated into the SAC.

*Statement about the Pauma Litigation.*  Allegations 1, 4, 5, and 6 each concern the statement at the very end of Mr. Rosette's biography that the Court found was sufficiently susceptible to an interpretation that could support a Lanham Act claim: that Mr. Rosette successfully litigated the Pauma case, saving the Tribe over \$100 million over the life of the Tribe's compact.[6]  (*See* Docket No. 54-2, Ex. 1 at 8.)  As an initial matter, Allegations 1, 5, and 6 contain no reference to the statement occurring through mail or over wires.  (*See* SAC ¶¶ 225(a), (e), (f).)  Indeed, even W&C appears uncertain whether Quechan received the statement in any form, alleging elsewhere that Mr. Rosette "*presumably* solicited Quechan with similar misrepresentations about his role in the case[.]"  (*Id.* ¶ 4; *see also id.* ¶ 136.)  This is hardly sufficient to meet the burden imposed by Rule 9(b), which requires the pleader to "state the time, place, and specific content of the false representations."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

More broadly, the SAC fails to allege that the creation or electronic posting of this biography was part of a scheme to defraud, occurred as part of a pattern, or that any Rosette Defendant acted with specific intent to defraud.  It is not enough that the Court found that W&C alleged a viable Lanham Act claim.  The "Lanham Act is not among those listed under § 1961(1) and, therefore, alleged violations of [that] statute[] cannot satisfy the requirement for allegations of RICO predicate acts."  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 n.2 (S.D.N.Y.

---

[6] The Rosette Defendants respectfully maintain that the Lanham Act claim against them fails under Rule 12, but respects the Court has ruled on this question under Rule 12(b)(6).

1996), *aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997) ("Those offenses which may serve as predicate acts for a RICO claim are *exclusively* listed in § 1961.") (quotation and citation omitted, emphasis in original).  There are no factual allegations in the SAC to establish that any misrepresentation, if one existed, was intentional or designed to defraud.  *See, e.g., Nutrition Distribution LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 958 (D. Ariz. 2016) ("It is not enough to allege that Defendants have violated some federal law, since not all violations of federal law are RICO predicates"); *see also ThermoLife Int'l., LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, at *4 (D. Ariz. Dec. 16 2011) (viable Lanham Act claims insufficient for RICO predicates).

And even if the statement was false (which it is not), one statement does not constitute a pattern under RICO, even when it is embodied in many distributions over mail and wires.  *See Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1278 (7th Cir. 1989) ("[P]laintiffs are mistaken to emphasize the raw number of mail and wire fraud violations" where a single statement is concerned).  As this Court previously explained: "It is long settled that, absent any element of deception, allegations of threats and abusive conduct simply do not constitute 'a scheme to defraud.'" (Docket No. 89 at 28–29, quoting *A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 500 (S.D.N.Y. 1998) and *Fasulo v. United States*, 272 U.S. 620 (1926).)

**Conduct of this Litigation.**  The final set of alleged RICO predicates relates to events occurring in the context of this very litigation.  Specifically, Allegations 9 and 10 posit that the Rosette Defendants committed mail or wire fraud by disseminating a sealed version of the FAC to two members of the Pauma Tribe.  As Rosette, LLP's Notice of Inadvertent makes clear, the firm is only aware of one inadvertent disclosure, which was unintentional and was rectified as soon as the disclosure was known.  (Docket No. 81.)  W&C offers no details about the second

11

alleged disclosure.  It also fails to explain what it believes was fraudulent about either or how they were part of a scheme to defraud.

Also lacking is any cogent explanation of the Rosette Defendants' intent, or for that matter, harm to W&C.  How the FAC "spread[ing] like wildfire" (SAC ¶ 173) would benefit any of the Rosette Defendants is inconceivable.  The FAC is rife with maliciously false accusations against the Rosette Defendants and the Quechan Defendants, and, as courts recognize, "[t]he mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants." *Allen v. U.S. Bank, Nat'l Ass'n*, 2013 WL 5587389, at *11 (E.D. Cal. Oct. 10, 2013). Moreover, if the FAC has somehow caused harm to W&C, that is not the responsibility of the Rosette Defendants—W&C filed it.  Finally, Quechan—the party whose privilege the redactions were intended to protect—has expressed that "to appropriately defend itself against W&C's claims and to pursue its Counterclaims, it cannot seek to maintain the confidentiality of the specific information and communications that W&C has put at issue in this case." (*See* Docket No. 103 at 2.)  Thus, the only party that might claim harm, Quechan, has disclaimed an interest in maintaining the confidentiality of the sealed information. Whatever the merits of sealing the Court filings, these are not predicate acts for a RICO violation.

Lastly, Allegations 11 and 12 assert that the Rosette Defendants encouraged Quechan to file an answer in this case and then sent the answer to an unnamed Pauma Tribe member with a "deceitful message" about W&C's "unethical behavior".  (SAC ¶¶ 174–175.)  It bears repeating that W&C is now asserting a RICO claim against the Rosette Defendants based on the fact that the Quechan Defendants filed a pleading in this case.  W&C may not appreciate the counter claims contained in the answer, but that does not make the answer fraudulent, let alone an act of mail or wire fraud. *See Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001) ("[A]llegations of improper legal filings,

1  which are inevitably ubiquitous in a litigious society, are best addressed through

2  state law tort remedies rather than resort to criminal statutes and RICO claims")

3  (collecting authorities).  Indeed, even "allegations of frivolous, fraudulent, or

4  baseless litigation activities—without more—cannot constitute a RICO predicate

5  act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (allowing RICO claim

6  premised on judicial filing "would chill litigants and lawyers and frustrate the well-

7  established public policy goal of maintaining open access to the courts").  Nor is

8  another party's filing attributable to the Rosette Defendants.  W&C also fails to

9  explain the contents of "the deceitful message" that supposedly accompanied the

10  answer, who specifically it was sent to, or how it relates in any way to W&C's

11  other allegations.  No attempt has been made to comply with Rule 9(b), despite

12  numerous opportunities to amend this claim.

13     In short, none of the "predicate acts" demonstrates an underlying violation of

14  federal statutes prohibiting mail or wire fraud.  Rather than forming a pattern, these

15  disjointed and contradictory allegations establish that W&C has no RICO claim.

16            **b.    The SAC Fails to Allege a RICO Enterprise**

17     A RICO "enterprise" is an essential element of W&C's claim.  *Eclectic*

18  *Props.*, 751 F.3d at 997.  "[I]f the 'enterprise' consist[s] only of [a corporate entity]

19  and its employees, the pleading would fail." *See Living Designs, Inc. v. E.I.*

20  *Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  Yet, the SAC

21  makes no effort to cure the deficiencies in the enterprise allegations that identified

22  in the Rosette Defendants' prior motion to dismiss (Docket No. 53) and reply

23  (Docket No. 85).[7]

24     W&C's RICO claim falls far short of alleging that the Rosette Defendants

25  constitute a RICO enterprise, rather than simply a law firm run by Mr. Rosette.  "To

26  show the existence of an enterprise . . . plaintiffs must plead that the enterprise has

27  _____

[7] The Court did not reach these arguments in its Order.

28

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD

(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997.  W&C is also required to allege the existence of "two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  To be sure, "[a] plaintiff may name all members of an associated-in-fact enterprise as individual RICO persons, but must establish that those individual members are separate and distinct from the enterprise they collectively form." *See Moran v. Bromma*, 675 F. App'x 641, 645 (9th Cir. 2017).  The SAC does not satisfy this requirement of distinctiveness.

The SAC fails to allege how "the associated in fact enterprise . . . is a being different from, not the same as or part of, the person whose behavior [RICO] was designed to prohibit." *Moran*, 675 F. App'x at 645.  Since the SAC includes no allegations defining the enterprise beyond its individual defendant-constituents, all of whom are related through Rosette, LLP, and provides no explanation of how the "enterprise's" efforts differ from the efforts of Rosette, LLP generally, the allegations fail as a matter of law.  *See In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *12 (S.D.N.Y. July 15, 2016).

There are no individualized allegations of wrongdoing against Rosette & Associates, PC or Rosette, LLP,[8] and naming these parties separately does not

---

[8] The only factual allegations against Mr. Armstrong are that he (1) oversaw Rosette, LLP's request for the Quechan Compact file from W&C (SAC ¶ 103) and (2) corresponded with the State's lead negotiator on behalf of Pauma.  (*Id.* ¶¶ 156–158.)  As courts have recognized, "civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device," often leading to significant personal damage to individual defendants from the very inclusion of the claim. *Katzman*, 167 F.R.D. at 655 (quotation and citation omitted).  This is why "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  Regardless of what happens in this case, Mr. Armstrong should not continue to be attacked publicly based on such limited and unsupported allegations.

create a RICO enterprise: "[t]he requirement of distinctness cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., etc. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (company-defendant and its agents, employees, and directors do not constitute an enterprise).  A contrary reading of the statute "would encompass every fraud case against a corporation." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997).  "The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise." *Id.*

Nor does W&C allege facts that "exclude [the] plausible and innocuous alternative explanation" for the Rosette Defendants' actions—that they were advising clients and potential clients in the course of operating a law firm.  *Eclectic Props.*, 751 F.3d at 998, 1000.  "[W]hen faced with two possible explanations [for defendants' conduct], only one of which can be true and . . . results in liability, [plaintiff] cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation." *Id.* at 996 (quotation and citation omitted).  The facts alleged in the SAC are far more consistent with ordinary law firm operations in a close-knit community than they are with an eight-year conspiracy to engage in racketeering.

### c.    The SAC Fails to Allege Concrete Injury and Proximate Causation

W&C's RICO claim also must be dismissed because the SAC fails to allege that any injury to its business or property "was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).  Here, W&C's only supposed loss was the contingency fee that it hopes to recover on its claims against

Quechan.  "When a Court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]he plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.") (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).

There are no facts in the SAC either demonstrating W&C's entitlement to the fee or showing that its loss was attributable to an act of mail or wire fraud by the Rosette Defendants.  W&C's agreement with Quechan included an absolute right to terminate the firm at will, meaning that it had no legitimate expectation to ongoing payments.  (FAC ¶ 113.)  To the extent that W&C feels it is owed more under its contract, it can continue to pursue that contractual claim.  The Court will either conclude that W&C is entitled to more money, in which case W&C will receive what is owed by its former client, or the Court will rule for Quechan.  Either way, W&C has no loss proximately caused by a RICO violation.  Likewise, while the SAC alludes to challenges in W&C's client relationship with Pauma (SAC ¶ 175), there is no plausible explanation that Pauma's dissatisfaction is due to anything other than W&C's performance in the delivery of legal services.[9]

"Congress enacted RICO 'to combat organized crime, not to provide a

---

[9] Indeed, according to the State of California's website, Pauma still has not been able to obtain a new gaming compact in the years that W&C has represented the tribe.  *See* California Gambling Control Commission, Ratified Tribal-State Gaming Compacts (New and Amended), http://www.cgcc.ca.gov/?pageID=compacts (listing Pauma's most recent compact as amended in 2004 and noting that "the Tribe is subject to the 1999 Compact for purposes of payment obligations.") (last visited Aug. 2, 2018).  Pauma also recently suffered a high profile loss at the Ninth Circuit.  *See Pauma v. Nat'l Labor Relations Bd*., 888 F.3d 1066, 1069 (9th Cir. 2018).  The tribe was represented by W&C.  *Id.*

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD

federal cause of action and treble damages' for personal injuries." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (quotation and citation omitted).  In other words, "RICO has not federalized every state common-law cause of action available to remedy business deals gone sour," as W&C's relationship with Quechan, and now apparently Pauma, has.  *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025–26 (7th Cir. 1992).  W&C's RICO claims here fall precisely into that category, and RICO is not the proper means for pursuing the firm's contractual remedies.

### 2. The SAC's RICO Conspiracy Claim Fails to Allege an Agreement to Violate RICO, Predicate Acts, or Injuries to W&C

In addition to the RICO claim against the Rosette Defendants, W&C asserts that the Rosette Defendants, along with Defendants Escalanti and White, should be held liable for engaging in a *separate* conspiracy to violate RICO under 18 U.S.C. § 1962(d).  This is a claim in search of both a conspiracy and a RICO violation.  The SAC contends that the defendants "aimed at fraudulently abusing the finances of the tribe in pursuit of a sham online payday lending business ***or for some other elicit end*** [sic]."  (SAC ¶ 230.)  This type of guesswork is not sufficient to state a claim.

To maintain a RICO conspiracy claim, "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Each alleged conspirator must "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense . . . ."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).

In the FAC, W&C's claim was based on conclusory allegations of a "payday" lending scheme, the objective of which the Court concluded "was not one to violate RICO's substantive provisions."  (Docket No. 89.)  In response to the

Court's Order, the SAC—rightly—removed many of the unsupported allegations about online lending on tribal lands at Quechan—there is no online lending at Quechan to the best of the Rosette Defendants' knowledge.  Now, the "objective" of the supposed conspiracy is alleged to be an undefined form of financial abuse, the goal of which is also not identified.  The SAC is nothing but conjecture.

The SAC also fails to allege that the Rosette Defendants and individual Quechan Defendants committed, or agreed to commit, two predicate acts: all of the predicate acts W&C identifies either pre-date Rosette, LLP's retention or do not qualify as mail or wire fraud.  Most of the acts W&C identifies relate to per-capita payments to Tribe members and various certifications related to those payments. As W&C describes it, those per-capita payments were discontinued in April 2017 as part of an effort to stockpile resources for some illicit, but undefined purpose. (SAC ¶¶ 230–31.)  Certifications regarding those payments were allegedly sent to regulatory bodies in April and May 2017.  (*Id.* ¶ 231.)

Rosette, LLP was not Quechan's counsel in April 2017.  W&C represented Quechan during the time period that the SAC alleges wrongdoing and misconduct occurred.  (*E.g. id.* ¶ 3.)  Mr. Rosette is not alleged to have met with Quechan Tribal leaders until June 2017, and was not retained until later that month.  (*Id.* ¶ 181.)  And all that W&C alleges to tie Mr. Rosette to the Tribe before June 2017 are conclusory references to a "prior relationship" with Mr. White (*id.*) and unsupported accusations that Mr. Rosette was controlling the Tribal Council even while W&C was firmly in place as the Tribe's attorneys.  (*Id.* ¶ 6.)  "[W]hen a RICO claim is based on a predicate offense of fraud, the 'circumstances constituting fraud . . . shall be stated with particularity' pursuant to Federal Civil Procedure Rule 9(b)."  *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017) (quoting *Edwards*, 356 F.3d at 1066.)  Not a single properly pleaded factual allegation supports these legal conclusions.  The remaining "predicate acts" relate to the Tribal Council's

interactions with specific Tribe members, none of which plausibly involve the Rosette Defendants, and none of which are alleged to have occurred through mail or over wires.  (*See* SAC ¶ 231.)

Another fatal flaw in W&C's RICO conspiracy claim is that there is no indication, and none can be inferred, that W&C sustained any injury from the alleged conduct.  The Court's Order specifically warned W&C that "[i]f Plaintiffs choose to amend their complaint, they must be clear as to how this alleged abuse of power affected, or will affect, W&C itself."  (Docket No. 89 at 34, n.4.)  Instead of heeding the Court's warning, the SAC concedes that W&C has no authority to bring this claim on behalf of any individual Tribe member.  (SAC ¶¶ 227–228 n. 59.)  W&C has no standing to pursue a claim based on hypothetical injuries to someone else (the Tribe or individual Tribe members), and the SAC makes no effort to tie its dubious allegations to W&C, the only party asserting the RICO claim.  Not only must W&C allege a concrete injury to its business or property to maintain a RICO conspiracy claim (*see* 18 U.S.C. § 1964(c)), that injury must be caused by "an act . . . . that is independently wrongful under RICO."  *Beck v. Prupis*, 529 U.S. 494, 505–07 (2000).  W&C alleges neither, once again repeating that it is owed over $6 million dollars in "contract damages" for a contingency fee it hoped to collect from Quechan.  (SAC ¶ 233.)  This alone is a sufficient basis for dismissal.

**B.    The Individual Plaintiffs' "Negligence/Breach of Fiduciary Duty" Claim Fails Because They Do Not Sufficiently Allege Negligent Performance**

The SAC contains a final claim against all Rosette Defendants on behalf of a group of the Individual Plaintiffs, who assert a professional negligence claim against the Rosette Defendants for their work taking over and concluding Quechan's compact negotiations with the State.  The Rosette Defendants' concurrently filed Special Motion to Strike addresses in detail the Individual Plaintiffs' lack of standing to bring a professional negligence claim.

19

Separately, the claim remains inadequately pleaded.  The Court previously found that "[t]he FAC does not point to any conduct by the Rosette Defendants suggesting their representation fell below the appropriate standard of care." (Docket No. 89 at 36.)  The same is true of the SAC.  The SAC continues to allege that Quechan's final, executed compact "in all positive material respects is one and the same with the one Williams & Cochrane sent to the State of California on June 21, 2017[.]"  (SAC ¶ 110.)  According to W&C, "the only material difference . . . lies in what the State took away" (*id.* ¶ 111), and, again according to W&C, the State changed its position "simply because it was suddenly facing off with" a different firm.  (*Id.*; *see also id.* ¶ 5 (alleging that Mr. Rosette "was abused by a State negotiator" who supposedly gave up undocumented concessions "as a result of the firm switch").)  In other words, the challenged result flowed from a decision by the State, according to Plaintiffs, and not any action or inaction by Mr. Rosette.[10]

In support of their claim of an adverse outcome, the Individual Plaintiffs implausibly assert that allegedly overdue revenue-sharing payments to the State only became a factor in the compact negotiations after Mr. Rosette took over and that the final compact lacked minimum wage deferrals previously agreed to.  (*Id.* ¶ 238.)  As to the overdue payments, the FAC conceded that "the Rosette Defendants were able to negotiate that demand down to Quechan paying only half of what it previously owed."  (Docket No. 89 at 37.)  And the remaining alleged differences "are not significant enough to suggest that the Rosette Defendants negligently concluded the compact negotiations."  (*Id.*)  Mr. Rosette was able to resolve all the outstanding negotiation points and potential litigation between Quechan and the State.  As with all deals, resolutions come with tradeoffs.  Attorneys are "granted latitude in choosing among legitimate but competing considerations, and [are] not

---

[10] There are no allegations about Mr. Armstrong in this section of the SAC, and consequently this claim against him must be dismissed with prejudice.

liable for an informed tactical choice within the range of reasonable competence."

*Barner v. Leeds*, 24 Cal. 4th 676, 690 (2000).

The SAC also refers to a "total repudiation" of W&C's Attorney-Client Fee Agreement with Quechan, citing the fees Quechan has incurred in W&C's lawsuit as evidence of malpractice and referring to a purported desire to "abuse the finances of the [T]ribe." (SAC ¶ 238.)[11]  The Individual Plaintiffs, however, fail to identify any specific action or inaction by Mr. Rosette or his colleagues that allegedly fell below professional standards here, too.  The SAC lacks any allegations about advice to Quechan on W&C's contract or the risks of termination.  The Individual Plaintiffs' allegations are therefore insufficient to maintain a malpractice claim, even if a duty existed, as they do not demonstrate that counsel provided to Quechan "was so legally deficient when it was given that [their lawyers] may be found to have failed to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake."  *Martorana v. Marlin & Saltzman*, 175 Cal. App. 4th 685, 693 (2009).  Nor do they meet the requisite "but for" causation test in the malpractice context.  *Viner v. Sweet*, 30 Cal. 4th 1232, 1244 (2003) (attorney's error or omission must be legal cause of asserted damages).

Additionally, to the extent that the Individual Plaintiffs seek to pursue their claim based on any advice that the Rosette Defendants gave to Quechan in connection with its rights and obligations under W&C's Attorney-Client Fee Agreement or the California compact dispute, that advice is privileged and cannot be used to prove Plaintiffs' case.  *See, e.g.*, *Solin v. O'Melveny & Myers, LLP*, 89

---

[11] Apparently, W&C is proposing to serve as counsel for a putative class that claims to have been damaged by a lawsuit W&C filed seeking to have tribal monies paid over to W&C as damages.  The Rosette Defendants preserve and reserve all of their arguments as to the suitability and adequacy of the Individual Plaintiffs and putative class counsel.

Cal. App. 4th 451, 458 (2001) ("[U]nless a statutory provision removes the protection afforded by the attorney-client privilege to confidential communications between attorney and client, an attorney plaintiff may not prosecute a lawsuit if in doing so client confidences would be disclosed.").

## C.   Immaterial, Impertinent, and Scandalous Allegations in the SAC Should Be Struck

The Court's Order warned Plaintiffs that filing another pleading with "pages-long discussions of topics wholly irrelevant to the claims in this case" could result in *sua sponte* dismissal.  (Docket No. 89 at 2 n.1.)  While the SAC is shorter, it still includes pages of character attacks against Mr. Rosette and assails his representation of clients unrelated to Quechan, Pauma, and the claims in this case. (*See* SAC ¶¶ 115–121, 178–179, 190–193.)  Motions to strike are admittedly disfavored, but W&C has flouted this Court's warning and insisted on using the SAC to perpetuate malicious, false, and immaterial allegations against Mr. Rosette and his firm.

Striking these allegations is appropriate because "it is absolutely clear that the matter[s] to be stricken could have no possible bearing on the litigation." *Walters v. Fid. Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010). Moreover, while these allegations are not at all relevant to the claims here, their presence has real world consequences, and these allegations have caused harm to the Rosette Defendants.  Identifying certain of Rosette, LLP's clients by name and casting aspersions on Mr. Rosette's representation of them serves no purpose but to alienate him from his community and threaten his livelihood.  Such abuse should not be tolerated or rewarded, and paragraphs 115 to 121, 178 to 179, and 190 to 193 of the SAC should therefore be struck under Rules 1, 8 or 12(f) as immaterial, impertinent, and scandalous.

## IV.    Conclusion

For the foregoing reasons, the Rosette Defendants respectfully request that the RICO and malpractice claims against them in Plaintiffs' SAC be dismissed with prejudice.  The Rosette Defendants further request that paragraphs 115 to 121, 178 to 179, and 190 to 193 of the SAC be struck.

Dated:  August 3, 2018                    MATTHEW W. CLOSE
                                          BRITTANY ROGERS
                                          O'MELVENY & MYERS LLP


                                          By:    s/ Matthew W. Close
                                                 Matthew W. Close

                                          Attorneys for Defendants Robert
                                          Rosette, Rosette & Associates, PC,
                                          Rosette, LLP, and Richard Armstrong
                                          Email: mclose@omm.com

MEM. ISO MOTION TO DISMISS
& STRIKE PORTIONS OF SAC
17-CV-01436 GPC MDD