1  Christopher T. Casamassima (SBN 211280)
2  chris.casamassima@wilmerhale.com
   Rebecca A. Girolamo (SBN 293422)
3  becky.girolamo@wilmerhale.com
4  WILMER CUTLER PICKERING
    HALE AND DORR LLP
5  350 South Grand Avenue, Suite 2100
6  Los Angeles, CA 90071
   Telephone: (213) 443-5300
7  Facsimile: (213) 443-5400

8
9  *Attorneys for Defendants*
   *Quechan Tribe of the Fort Yuma Indian*
10 *Reservation, Keeny Escalanti, Sr., and*
   *Mark William White II*
11

12         **IN THE UNITED STATES DISTRICT COURT**

           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
13

14 WILLIAMS & COCHRANE, LLP; and        CASE NO.: 17-cv-01436-GPC-MDD
   FRANCISCO AGUILAR, MILO
15 BARLEY, GLORIA COSTA, GEORGE
   DECORSE, SALLY DECORSE, et al., on    **OPPOSITION TO PLAINTIFFS'**
16 behalf of themselves and all those similarly  **MOTION TO DISMISS**
   situated;                            **QUECHAN TRIBE'S ANSWER**
17                                       **TO PLAINTIFFS' FIRST**
18     (All 27 Individuals Listed in ¶ 12)  **AMENDED COMPLAINT AND**
                                         **COUNTERCLAIMS PURSUANT**
19                Plaintiffs,           **TO FEDERAL RULES OF CIVIL**
                                         **PROCEDURE 12(b)(1) AND**
20 v.                                    **12(b)(6)**

21 ROBERT ROSETTE; ROSETTE &            Judge:  Hon. Gonzalo P. Curiel
   ASSOCIATES, PC; ROSETTE, LLP;        Courtroom: 2D
22 RICHARD ARMSTRONG; QUECHAN           Date: November 30, 2018
   TRIBE OF THE FORT YUMA INDIAN        Time: 1:30 p.m.
23 RESERVATION, a federally-recognized
   Indian tribe; KEENY ESCALANTI, SR.;
24 MARK WILLIAM WHITE II a/k/a
   WILLIE WHITE; and DOES 1
25 THROUGH 10,
26
27                Defendants.
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................1

LEGAL STANDARD................................................................8

ARGUMENT ..........................................................................9

I.    W&C'S MOTION TO DISMISS VIOLATES THE COURT'S
      AUGUST 20, 2018 ORDER ..............................................9

II.   THE TRIBE HAS ARTICLE III STANDING ..........................10

      A.    The Tribe Has Sufficiently Pled Injury-In-Fact.................10

      B.    The Tribe Has Sufficiently Pled Causation......................11

III.  THE TRIBE HAS SUFFICIENTLY PLED A CLAIM FOR BREACH
      OF FIDUCIARY DUTY ....................................................12

      A.    The Tribe Has Pled Facts Sufficient To Show W&C Breached Its
            Fiduciary Duty To The Tribe ..........................................13

      B.    W&C's Misrepresentations Are Actionable Statements......14

      C.    The Tribe Properly Alleged Harm ...................................15

IV.   THE TRIBE HAS SUFFICIENTLY PLED A CLAIM FOR BREACH
      OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
      DEALING....................................................................15

V.    THE TRIBE HAS STATED A CLAIM FOR NEGLIGENCE ...........17

      A.    The Tribe Has Sufficiently Pled The Existence Of A Duty.........17

      B.    The Tribe Has Sufficiently Pled That W&C Breached Its Duty .......17

      C.    Proximate Cause/Causation...........................................19

      D.    The Tribe Has Sufficiently Pled Damages.........................20

VI.   THE TRIBE HAS STATED A CLAIM FOR BREACH OF
      CONTRACT................................................................21

VII.   THE TRIBE HAS SUFFICIENTLY PLED A CLAIM UNDER THE
       UCL ...................................................................................................22

       A.   The Tribe Has Standing Under the UCL..............................22

       B.   The Tribe Has Alleged Particularized Facts .......................23

       C.   The Safe Harbor Does Not Apply .......................................23

       D.   W&C Cannot Assert Its Fact-Based Affirmative Defenses................24

VIII.  THE TRIBE HAS STATED A CLAIM FOR RECOUPMENT/SETOFF ...24

CONCLUSION ..........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Adan v. Insight Investigation, Inc.*,
   2018 WL 467897 (S.D. Cal. Jan. 18, 2018) ...................................................10, 11

*Aliya Medcare Finance, LLC v. Nickell*,
   2015 WL 4163088 (C.D. Cal. July 8, 2015) .............................................21, 22

*ASARCO, LLC v. Union Pac. R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ...............................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................... 8, 20, 21

*Belinda K. v. Cty. of Alameda*,
   2012 WL 1535232 (N.D. Cal. Apr. 30, 2012)...............................................20

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544, 570 (2007) ...................................................................8

*Brill v. Chevron Corp.*, 2017 WL 76894 (N.D. Cal. 2017) ........................................12

*Center for Biological Diversity v. U.S. Bureau of Land Management*,
   2018 WL 3004594 (C.D. Cal. June 8, 2018) ............................................. 11-12

*Chemehuevi Indian Tribe v. California State Bd.of Equalization*,
   757 F. 2d 1047, 1055 (9th Cir. 1985), *rev'd on other grounds*, 474
   U.S. 9 (1985)...............................................................................22

*City of St. Paul v. Evans*,
   344 F.3d 1029 (9th Cir 2003) ...............................................................25

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ...............................................................8

*Crooks v. Rady Children's Hosp.*,
   2017 WL 4541742 (S.D. Cal. Oct. 10, 2017)...............................................8

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ...............................................................23

*Guidiville Rancheria of California v. United States*, 2015 WL 4934408,
  at *5 (N.D. Cal. Aug. 18, 2015), *vacated in part on other grounds*,
  704 F. App'x 655 (9th Cir. 2017) ..............................................................25

*James River Ins. Co., v. W.A. Rose Constr. Co.*,
  2018 WL 3023408 (N.D. Cal. June 18, 2018) ..........................................24

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ....................................................................18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................11

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .............................................................11, 12

*Navarro v. Block*,
  250 F.3d 729, 732 (9th Cir. 2001) ..............................................................8

*Nguyen v. Radient Pharm. Corp.*,
  2011 WL 5041959 (C.D. Cal. Oct. 20, 2011) .............................. 16, 20, 25

*Oil Express Nat'l, Inc. v. Burgstone*,
  958 F. Supp. 366 (N.D. Ill. 1997)..............................................................16

*Pemberton v. Nationstar Mort'g LLC*,
  2017 WL 4759018 (S.D. Cal. Oct. 20, 2017)............................................11

*Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 917 (N.D. Cal. 2013) ................11

*Rovai v. Select Portfolio Servicing*,
  Inc., 2017 WL 4700080, at *4 (S.D. Cal. Oct. 18, 2017)..........................11

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035, 1039 (9th Cir. 2004) ..........................................................8

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ...................................................................24

*In re Sizzler Rests. Int'l*,
  225 B.R. 466 (Bankr. C.D. Cal. 1998) ......................................................16

*Sonoma Falls Developer, LLC v. Dry Creek Rancheria Band of Pomo Indians*,
    No. 3:01-cv-04125-VRW, ECF No. 40 (N.D. Cal. filed July 24, 2002) ......................................................................................22

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540, 1547 (2016).................................................10

*Swartz v. KPMG LLP*,
    476 F.3d 756, 763 (9th Cir.2007) .........................................18

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) ......................................11

*Wolk v. Green*,
    516 F. Supp. 2d 1121 (N.D. Cal. 2007).................................17

**STATE CASES**

*Bank of the West v. Super. Ct.*,
    2 Cal. 4th 1254 (1992)..........................................................22

*Borissoff v. Taylor & Faust*,
    33 Cal. 4th 523 (2004).........................................................17

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*,
    272 Cal. Rptr. 387 (Ct. App. 1990) .....................................15

*Charnay v. Cobert*,
    145 Cal. App. 4th 170 (2006) ........................................12, 13

*Cohen v. S & S Constr. Co.*,
    151 Cal. App. 3d 941 (1983) ................................................14

*Graham v. Bank of America., N.A.*,
    226 Cal. App. 4th 594 (2014) ..............................................14

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310, 320 (2011)............................................22, 23

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
    6 Cal. 3d 176 (1971) ......................................................12, 14

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811 (2011).........................................................13

*Osornio v. Weingarten*,
     124 Cal. App. 4th 304 (2004) ...........................................................17

*Plotnik v. Meihaus*,
     208 Cal. App. 4th 1590 (2012) .........................................................22

*Schultz v. Harney*,
     27 Cal. App. 4th 1611 (1994) ...........................................................18

*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*,
     231 Cal. App. 4th 1131 (2014) .........................................................21

*Viner v. Sweet*,
     30 Cal. 4th 1232 (2003) ..............................................................19, 20

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 *et seq.* ....................................................22

## RULES

Federal Rules of Civil Procedure Rule 8 ............................................. *passim*
Federal Rules of Civil Procedure Rule 9 ...................................................13
Federal Rules of Civil Procedure Rule 12(b)(1).............................................8
Federal Rules of Civil Procedure Rule 12(b)(6)................................. 8, 18, 24
Federal Rules of Civil Procedure Rule 12(f) .................................................9
California Rule of Professional Conduct 3-700(D)(1) ..................... *passim*
Local Rule 83.1 ......................................................................................1,9

# **INTRODUCTION**

W&C's motion to dismiss violates this Court's Order to "answer" the Tribe's Counterclaims.  W&C's decision to ignore the Court's order should, at a minimum, result in denial of the motion.[1]

Even if the motion could be considered on its merits, it still fails.  W&C uses the majority of its opening brief to introduce disputed—and largely irrelevant—fact issues not appropriately before the Court.  But none of the detritus littered throughout W&C's briefing alters the correct result here:  The Tribe has adequately pled each of its claims.

*First*, the Tribe has Article III standing.  It has sufficiently pled that W&C's conduct and misrepresentations caused it to suffer a variety of damages.

*Second,* the Tribe has stated a claim for breach of fiduciary duty based on W&C's efforts to prolong its representation of the Tribe and maximize its fees.

*Third,* the Tribe has stated a claim for breach of the implied covenant of good faith and fair dealing, alleging that W&C acted in bad faith by dragging out gaming compact negotiations to increase its fees, and denying the Tribe the efficient and competent legal representation it was entitled to under the Fee Agreement.

*Fourth,* the Tribe has stated a claim for negligence.  It has sufficiently pled that W&C breached its duty of care by, among other things, failing to act with the requisite skill and diligence in its representation of the Tribe and failing to transmit the Tribe's "entire case file" upon request.

*Fifth,* the Tribe has sufficiently pled that W&C breached the Fee Agreement by refusing to transmit the Tribe's case file, which it was required to do under Section 12 of the Fee Agreement.

---

[1]   Given the expense the Tribe has had to incur in responding to W&C's motion, and the unnecessary burden on the Court's resources, sanctions would be appropriate under Local Rule 83.1.  In the event that the Court is inclined to impose such sanctions on the basis of attorneys' fees, the Tribe will promptly provide the Court with evidence of its expenses incurred in connection with preparing this Opposition.

1
2
3

***Sixth,*** the Tribe has sufficiently pled a claim under the UCL.  For purposes of
that statute, the Tribe is a "person" who has "lost money or property" as a result of
W&C's unfair business practices.  Accordingly, W&C's motion should be denied.

4
5
6
7

***And, finally,*** the Tribe has stated a claim for recoupment/setoff.  If indeed, as
W&C alleges, the June 21, 2017 draft compact was "materially better" than the
compact signed by the Tribe in August 2017, the Tribe was prejudiced by W&C's
refusal to transmit the Tribe's case file containing W&C's work.

8
9

For these reasons, even if W&C's motion is considered on its merits, it must be
dismissed in its entirety.

## SUMMARY OF ALLEGATIONS

10
11
12
13
14
15
16
17
18
19

The Tribe is a sovereign nation located along both sides of the lower Colorado
River near Yuma, Arizona.  CC ¶ 20.  Its operations and the majority of the
reservation land is located in California.  *Id*.  The Tribe's Constitution provides for a
Tribal Council to act as the Tribe's governing body and represent the Tribe in "all
affairs."  *Id*. ¶ 21.  Among the constitutionally-enumerated powers, the Tribal
Council is responsible for (1) negotiating with Federal, State and local governments
on behalf of the Tribe and (2) employing legal counsel on behalf of the Tribe.  *Id*.
The Tribe has negotiated gaming compacts and related amendments with the State of
California on several occasions, including in 1998, 2006, and 2017.  *Id*. ¶ 22.

20

**Williams & Cochrane's Representation of the Tribe**

21
22
23
24
25
26
27
28

In late September 2016, the then-Tribal Council retained W&C to re-negotiate
its existing obligations to the State under its 2006 compact amendment, which
included an underpayment to the State of approximately $4 million.  *Id*. ¶ 25.  The
parties' Fee Agreement provides that the Tribe would pay W&C a "Flat Fee" of
$50,000/month for its "services," which included negotiations and potential litigation
against the State.  *Id*., Ex. A §§ 2, 4.  W&C also added a 15% "Contingency Fee"
clause to the agreement based on amounts the Tribe was to be paid or credited by the
State for any overpayments under the Tribe's prior gaming compact with the State.

1   *Id.* § 5.  If, however, the Tribe terminated W&C before it was entitled to the

2   Contingency Fee, W&C could be entitled to what it labeled a "reasonable fee" using

3   a multi-factor test.  *Id*. § 11.  Section 12 of the Fee Agreement provides that the Tribe

4   "may request the return of [its] case file" at the end of the engagement.  *Id.* § 12.

5        After an exchange of letters between the State and W&C in October 2016, the

6   initial meeting to begin negotiations of the compact took place on November 9, 2016.

7   CC ¶ 27.  And on December 6, 2016, the State provided to W&C an initial discussion

8   draft of a gaming compact for the Tribe.  *Id.* ¶ 28.  This draft contained terms similar

9   to those contained in compacts that the State has entered into with other tribes and

10  that the State was willing to offer any similarly-situated tribes seeking to negotiate a

11  compact at that time.  *Id.*  It did not address the $4 million underpayment issue.  *Id.*

12       Shortly thereafter, on December 14 and December 28, 2016, before providing

13  any comments back to the State on the draft, Ms. Williams sent to then-President

14  Jackson the draft compact proposal from the State along with memoranda

15  summarizing provisions of the draft compact.  *Id.* ¶ 29.  W&C claimed that the "draft

16  compact is as good as it can get from a financial perspective," and stated that aside

17  from the revenue-sharing provisions, the "vast majority of the draft compact was

18  boilerplate."  *Id.*

19       On January 11, 2017, Ms. Williams sent to the State a letter requesting that,

20  among other things, the State and the CGCC "refrain" from enforcing the Tribe's

21  payment obligations under the 2006 Amendment (i.e. the afore-mentioned

22  underpayments).  *Id.* ¶ 31.  On January 18, Mr. Dhillon responded on behalf of the

23  State that neither the CGCC nor the Office of the Governor had the "legal authority

24  to excuse" the Tribe's payment obligations.  *Id.*

25       The State's representatives met with Ms. Williams and Mr. Cochrane for

26  further gaming compact negotiations on January 31, 2017.  *Id.* ¶ 32.  W&C had not

27  provided a revised draft to the State in response to the State's December 6, 2016

28  initial discussion draft as of that date.  *Id.*

- 3 -

The then-Tribal Council and W&C held a conference call on February 3, 2017 to discuss the January 31 meeting.  *Id*. ¶ 33.  In an email dated February 3, 2017, Ms. Williams claimed that W&C had the "legal" and "textual authority" to support the Tribe making reduced payments to the State under the 1999 compact terms.  *Id*.  This was misleading.  Less than a month earlier, Mr. Dhillon had informed Ms. Williams that the State would not excuse such payments.  *Id*.  Mr. Dhillon had not changed his position.  *Id*.  Ms. Williams also wrote that the State agreed to increase the Tribe's machine cap by 100 machines, but that "[o]ther issues" would "take some time to iron out" and that W&C would "work hard" to "redline" the draft compact.  W&C had not sent even one redline to the State at that time.  *Id*.

In early April 2017, after the current Tribal Council had been seated, Ms. Williams sent a letter to it claiming vaguely that W&C had done its "best to buy time" to keep the December 6, 2016 draft compact offer "on the table."  *Id*. ¶ 34.  But it is not clear what work, if any, W&C performed during this time or how it "b[ought] time" for the Tribe.  Rather, the Tribe is informed and believes W&C did very little or nothing, and that this was essentially untrue.  *Id*.  Significantly, W&C also reported that negotiations with the State would continue and that the CGCC continued to seek payments due by the Tribe to the State under the 2006 Amendment.  *Id*.

Indeed, by April 2017, W&C had still not provided the State with revisions to the compact.  *Id*. ¶ 35.  Finally, on April 13, 2017—more than ***four months*** after receiving the initial draft compact from the State—Ms. Williams e-mailed Mr. Dhillon a revised draft compact.  *Id*.  W&C's April 13, 2017 draft was, however, nearly identical to the State's December 6, 2016 initial draft.  *Id*.

After another period of little activity, on June 9, 2017, Kevin Cochrane, responding to an inquiry from the Tribe, stated that the compact would be ready to sign as of June 16, or within the following week.  *Id*. ¶ 37.  This was not true.  The State was not ready to sign any draft of the compact in existence at that time.  *Id*.

- 4 -

W&C sent the State a revised compact draft on June 21, 2017.  *Id.* ¶ 38.
Although W&C was representing to the Tribe at this time that it would have a final
signed compact in June, at the time W&C was terminated on June 26, the Tribe had
not even seen the latest draft.  And, critically, this draft was still not final and the
State was ***not*** prepared to sign it.  *See id.* ¶¶ 9, 38.  According to the State's lead
negotiator, Joginder Dhillon, there were a litany of unresolved issues, including
resolution of the amount the Tribe would have to pay the state for past
underpayments under the current gaming compact, the identification of the land
eligible for gaming pursuant to the compact, an agreed-upon payment mechanism,
and an agreement on final language.  *Id.*  The reality—contrary to W&C's
representations—was that the draft compact substantively was not far from the initial
draft that the State provided at the beginning of the negotiations, and was not ready to
be signed by anyone.  *Id.* ¶¶ 4, 5, 38.

**Concerns About W&C**

In late Spring 2017, around the time that W&C provided its first comments on
the compact to the State, the current Tribal Council reviewed the status of its compact
negotiations, and W&C's work.  *Id.* ¶ 39.  Based on that review, it became clear to
the Tribal Council that W&C was not diligently pursuing negotiations and was
misrepresenting the limited results it had obtained.  *Id.*  W&C had also recommended
retaining a lobbyist in Sacramento, for a substantial additional fee, to assist getting
the compact approved.  *Id.*  Importantly, the underpayment issue continued to be
unresolved.  *Id.*  Even so, W&C continued to charge the Tribe $50,000/month.  *Id.*
Based on its concerns, the current Tribal Council began to explore the idea of
replacing W&C and had reached out to a Native American law firm in an initial
effort to do so, but ultimately chose not to retain it.  *Id.* ¶ 40.

Later, in June 2017, President Escalanti and Councilman White attended an
Arizona Tribal Leaders' meeting.  *Id.* ¶ 41.  While at the meetings, a Tonto Apache
tribe member contacted them about gaming issues affecting rural Arizona Tribes, and

suggested that they meet with Tonto Apache's attorney—Rob Rosette.  *Id.*  The next morning, President Escalanti and Councilman White met with Rob Rosette to discuss gaming issues in Arizona.  *Id.* ¶ 42.  After discussing those issues, President Escalanti asked Rob Rosette about his experience with compact negotiations in California, and ultimately, his availability and interest in working for the Tribe.  *Id.*  President Escalanti and Councilman White later relayed to the Tribal Council what happened at the meeting with Rob Rosette.  *Id.*

Because the Tribal Council was dissatisfied with W&C's unreasonable fees, slow progress, and overall performance, it invited Rob Rosette to present to the Council about the possibility of Rosette LLP representing the Tribe in both Arizona and California compact negotiations.  *Id.* ¶ 43.  Following this presentation, the Tribal Council voted 6-0 to hire Rosette LLP.  *Id.*; CC, Ex. C.

**W&C's Termination**

On June 26, 2017, with the Tribal Council's approval, President Escalanti sent W&C a letter terminating the firm's engagement.  *Id.* ¶ 44.  The letter included a request that W&C transmit the Tribe's entire case file to its new counsel and advised W&C that Rosette LLP ("Rosette") would be representing the Tribe going forward. *Id.*  At that time, the Tribe had paid to W&C $400,000 in monthly fees in exchange for a limited number of draft compacts containing essentially boilerplate provisions that any similarly-situated tribe might have received following the *Rincon* litigation. *Id.* ¶ 45.

W&C had not sent the Tribe the most recent draft compact at that time.  *Id.* ¶ 46.  Over the next few days, the Tribal Council learned that W&C refused to give that draft to Rosette.  *Id.*  And W&C refused to give the Tribe or Rosette the Tribe's full case file—*as W&C is required to do* under the plain language of the Fee Agreement (*see* § 12) and California Rule of Professional Conduct 3-700(D)(1) ("A member whose employment has terminated shall . . . promptly release to the client, at the request of the client, all the client papers and property.").  *Id.*  Accordingly, on June

30, 2017, with the Tribal Council's approval, President Escalanti sent a letter demanding that W&C provide the Tribe with its case file and the most recent draft compact.  *See* CC, Ex. B.  The letter further demanded that W&C cease and desist from communicating to anyone that they still represented the Tribe.  *Id.*

W&C eventually sent Rosette the most recent draft of the gaming compact dated June 21, 2017 but refused (and continues to refuse) to send the Tribe or Rosette the Tribe's case file or any time records, despite specific requests to do so.  *Id.* ¶ 47.

**Rosette Concludes Negotiations with the State**

Without the benefit of the Tribe's full case file, Rosette proceeded to conduct negotiations on behalf of the Tribe with the State starting on June 29, 2017.  *Id.* ¶ 48. Less than a month later, Rosette submitted to the State the first of several draft compacts on behalf of the Tribe.  *Id.* ¶ 49.  Over the ensuing weeks, the parties discussed, among other things, the eligible gaming land and related map, the Revenue Sharing Trust Fund payment, the establishment of credits for non-gaming related capital investments, the establishment of programs to assist certain tribe members and to protect wildlife and habitat—and importantly, the Tribe's then-outstanding $4.2 million underpayment owed to the State under the 2006 Amendment.  *Id.*

The parties resolved the underpayment issue in late August 2017, agreeing that, to satisfy the purported debt, the Tribe would pay the state just under half of the amount owed—about $2 million—over a period of six years.  *Id.* ¶ 50.  Beyond that, the State agreed to credit amounts spent by the Tribe on certain of the Tribe's non-gaming related capital investments, and programs to assist certain tribe members and to protect wildlife and habitat towards that $2 million.  *Id.* ¶¶ 49, 50.  This was a great result for the Tribe, which W&C had not thought of and would have never achieved.

The parties exchanged further drafts during the latter half of August 2017, during which the State confirmed that President Escalanti had authority to execute a compact on behalf of the Tribe.  *Id.* ¶ 51.  President Escalanti signed the compact on

- 7 -

August 29, 2017 on behalf of the Tribe.  *Id.* ¶ 52.  Governor Brown signed on behalf of the State on August 31, 2017.  *Id.*

## **LEGAL STANDARD**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter.  "In a facial attack [on jurisdiction], the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."  *Crooks v. Rady Children's Hosp.*, 2017 WL 4541742, at *4 (S.D. Cal. Oct. 10, 2017) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  To determine whether a claim has been stated, the Court must accept as true all well-pled factual allegations and construe them in the light most favorable to the plaintiff.  A complaint need not contain detailed factual allegations, but must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

If a complaint is dismissed, leave to amend "shall be freely given when justice so requires . . . . "  *See*, *e.g.*, *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).  The Tribe's Counterclaims are well pled and satisfy Rule 8; but in the event the Court finds that any of the Tribe's allegations are lacking, the Tribe requests leave to amend.

# ARGUMENT

## I.   W&C'S MOTION TO DISMISS VIOLATES THE COURT'S AUGUST 20, 2018 ORDER

On August 20, 2018, the Court ordered W&C to file an answer to the Tribe's counterclaims.  ECF No. 135 at 12.  W&C ignored the Court's order and filed this motion instead.  This is patently improper and should not be condoned by the Court.  *See* L.R 83.1(a).

On June 21, 2017, the Tribe filed its Counterclaims.  ECF No. 94.  W&C filed a Rule 12(f) motion in response.  ECF No. 95.  As an alternative to striking the counterclaims, W&C asked the Court to "continue/eliminate any response obligation under [Rule] 12 until after both the filing of the Second Amended Complaint and WilmerHale has an opportunity to file an updated pleading."  *Id.* at 2.  The Court denied that motion and held that striking the Tribe's counterclaims was "not appropriate."  ECF No. 135 at 12, 13.  The Court ordered that, "[the Tribe's] counterclaims have been asserted and ***must be answered***.  The Court will give W&C 14 days from the date this order is issued to file ***an answer*** to Quechan's counterclaims."  *Id.* (emphasis added).

W&C did not file an answer.  W&C instead filed this motion to dismiss—effectively manufacturing the alternative relief it sought, and was denied, in its 12(f) motion.  *See* ECF No. 95 at 2.

There is no ambiguity in the Court's order.  W&C asked for an indefinite extension of time in its 12(f) motion.  The Court denied that motion.  Indeed, the Tribe pointed out this exact scenario and timing in opposing the 12(f) motion.  *See* ECF No. 98 at 1 ("Forcing the Tribe to wait until late Fall to file counterclaims against W&C—or allowing W&C to delay its response to the Counterclaims until then—would be inefficient, would unnecessarily prolong the litigation, and would prejudice the Tribe.").  W&C never even filed a reply to the Tribe's opposition.  W&C cannot credibly claim that it reasonably and in good faith interpreted the

Court's order as requiring anything other than "an answer."

The Tribe respectfully requests that the Court order W&C to comply with the Court's August 20, 2018 order and answer the Tribe's counterclaims, and consider the imposition of appropriate sanctions.

## II.   THE TRIBE HAS ARTICLE III STANDING

Article III standing requires that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  W&C moves to dismiss the Tribe's counterclaims by arguing that the Tribe failed to plead injury-in-fact and causation.  Mem. at 5-9.  The Tribe, however, has adequately pled each element required to establish Article III standing.

### A.   The Tribe Has Sufficiently Pled Injury-In-Fact

Article III standing requires that the plaintiff establish an "injury in fact," that is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Adan v. Insight Investigation, Inc.*, 2018 WL 467897, at \*3 (S.D. Cal. Jan. 18, 2018) (*citing Spokeo*, 136 S. Ct. at 1548) (Curiel, J.).  Intangible injuries—such as "informational harm"—may also constitute injuries in fact.  *See id.*at \*3, 6.  Here, the Tribe has sufficiently pled "concrete" and "particularized" harms: both economic and informational.

The Tribe has alleged a slew of economic injuries that it has suffered as a result of W&C's actions: (1) the Tribe overpaid for W&C's incompetent and inefficient work on the Tribe's gaming compact negotiations at a cost of $50,000/month, *see, e.g.*, CC ¶¶ 59-63 (Breach of Fiduciary Duty), 69 (Breach of the Implied Covenant of Good Faith and Fair Dealing); (2) the Tribe incurred additional legal expenses to conclude gaming compact negotiations as a result of W&C's refusal to transmit the Tribe's case file, *see id.* ¶¶ 80-81; and (3) the Tribe has incurred additional legal expenses in response to W&C's continued refusal to return the

- 10 -

Tribe's case file and is prejudiced in its defense of this suit, *see id.* ¶ 82. These economic harms constitute the requisite injuries-in-fact. *Rovai v. Select Portfolio Servicing, Inc.*, 2017 WL 4700080, at *4 (S.D. Cal. Oct. 18, 2017) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)); *see also Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 917 (N.D. Cal. 2013) (finding that an alleged overpayment injury was sufficient for Article III standing because "palpable economic injuries have long been recognized as sufficient to lay the basis for standing") (internal citation omitted).

The Tribe also alleged that W&C has refused, and continues to refuse, to return to the Tribe its "entire case file"—for which the Tribe has already paid $400,000. CC ¶¶ 84 (Breach of Contract), 87-90 (same), 101-02 (Recoupment/Setoff). The Tribe is legally entitled to its case file. *See* Cal. Rule of Professional Conduct 3-700(D)(1). W&C has therefore deprived the Tribe of "access to information to which [it] is legally entitled and that denial of information creates a 'real' harm." *Adan*, 2018 WL 467897, at *6.

W&C fails to challenge the sufficiency of the Tribe's pleadings. Instead, W&C spends page after page arguing a handful of fact issues underlying the merits of the claims. *See, e.g.*, Mem. at 5-7. This is improper. At the pleading stage, "general factual allegations of injury … may suffice" to survive a motion to dismiss. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Tribe has accordingly met its burden to show that it has suffered an injury-in-fact for purposes of Article III.

**B.    The Tribe Has Sufficiently Pled Causation**

At the pleading stage, plaintiffs must establish that the alleged injury is "fairly traceable" to the defendant's conduct. *Pemberton v. Nationstar Mort'g LLC*, 2017 WL 4759018, at *5 (S.D. Cal. Oct. 20, 2017) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Thus to survive a motion to dismiss for lack of Article III standing, a plaintiff need only establish a "line of causation" between the defendant's action and the alleged harm that is "more than 'attenuated.'" *Center for Biological Diversity v.*

*U.S. Bureau of Land Management*, 2018 WL 3004594, at *5 (C.D. Cal. June 8, 2018) (citing *Maya*, 658 F.3d at 1070).

Here, the Tribe has alleged that the aforementioned injuries are "fairly traceable" to W&C's conduct: (1) W&C acted in bad faith to extend its representation to maximize fees, at a cost of $50,000/month to the Tribe, *see* CC ¶¶ 4, 34, 58-59, 70-71; (2) the Tribe incurred additional legal expenses to conclude gaming compact negotiations as a direct result of W&C's refusal to transmit the Tribe's case file, *see id.* ¶ 80; and (3) W&C's continued refusal to return the Tribe's case file also caused the Tribe to incur additional legal expenses, and has prejudiced the Tribe, in its defense of this suit, *see id.* ¶ 82. Further, W&C's repeated refusal to transmit the case file has caused the Tribe to suffer the informational harm discussed *supra* II.A.

W&C attempts to confuse the issue by, again, inappropriately arguing the merits. Mem. at 8-9. What's more, W&C also seeks to equate causation for the purposes of Article III standing with the proximate cause required to establish negligence. *Id.* at 8. This is plainly incorrect. *See Brill v. Chevron Corp.*, 2017 WL 76894, at *3 (N.D. Cal. Jan. 9, 2017) (citing *Maya*, 658 F.3d at 1070). In the Ninth Circuit, as discussed above, the Tribe need not establish "proximate cause" (although it has). The Tribe need only meet the standard required to establish standing under Article III—it has done so here. W&C's motion must therefore be denied.

## III. THE TRIBE HAS SUFFICIENTLY PLED A CLAIM FOR BREACH OF FIDUCIARY DUTY

The relationship between attorney and client is a fiduciary relation of the very highest character. *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 189 (1971). To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate (1) the existence of a fiduciary relationship, (2) breach of that duty, and (3) damages. *See Charnay v. Cobert*, 145 Cal. App. 4th 170, 182 (2006). As an initial matter, the Tribe has unquestionably pled that W&C entered into a fiduciary relationship with the Tribe when the Tribe retained W&C as counsel.

CC ¶ 57.  W&C does not dispute this allegation.  *See generally* Mem.

## A. The Tribe Has Pled Facts Sufficient To Show W&C Breached Its Fiduciary Duty To The Tribe

The Tribe has also adequately pled that W&C breached its fiduciary duty. Specifically, the Tribe has alleged that "W&C knowingly acted against the Tribe's interests … by failing to perform under the Fee Agreement in exchange for the $50,000/month flat fee that it collected, and by dragging out negotiations to extend its representation and collect additional monthly fixed fee payments from the Tribe." CC ¶ 58.  The underlying factual allegations are also replete with acts sufficient to show that W&C breached its fiduciary duty, which includes duties of loyalty and confidentiality.  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). For example, the Tribe alleges that W&C sat on the initial discussion draft compact that the State provided in December 2016 for over four months, sending back only very minor edits in April 2017, *see id.* ¶¶ 4, 35; that another month went by with only one more exchange of drafts with the State, *id.* ¶¶ 4, 36; and that none of the limited drafts submitted by W&C ever addressed the Tribe's most significant concern—its $4 million underpayment to the State—so that W&C could stretch out the life of its representation and receive its flat monthly fee.  *Id.* ¶ 38.  By themselves, these allegations are sufficient to show that W&C breached its duty under Rule 8.

And the Tribe further alleged that W&C made misrepresentations regarding its work for the Tribe.  *Id.* at ¶¶ 2-3, 60-61.  To the extent the specific allegations in paragraphs 2, 3, 5, 29, 33, 34, 37, and 61 about W&C's misrepresentations to the Tribe are subject to Rule 9, they have satisfied that standard—i.e. alleging the who, what, when, where, and how.  Mem. at 10.  For example, the Tribe alleges that on June 9 (when), Mr. Cochrane (who) emailed Mr. Montague (how and where), the CEO of the Tribe's casinos, to inform Mr. Montague that the compact would be ready to sign as of June 16 or within the following week (what)—which was not true. *Id.* ¶ 37.  Further, the Tribe alleges that Ms. Williams sent a letter to the current

1  Tribal Council in early April 2017 that W&C had "done its 'best to buy time' to keep

2  the December 6, 2016 draft compact offer 'on the table,'" but that the Tribe believes

3  this is essentially untrue. *Id.* ¶ 34.  The Tribe also alleges that when it first met with

4  Ms. Williams and Mr. Cochrane, it was promised a near certain multi-million-dollar

5  recovery from the State. *Id.* ¶ 2.

6  **B.    W&C's Misrepresentations Are Actionable Statements**

7  In its Motion to Dismiss, W&C ignores almost every allegation the Tribe made

8  regarding the many acts constituting W&C's breach of fiduciary duty and ties its

9  entire argument to the allegation that W&C erroneously told the Tribe in June 2017

10  that the Tribe would have a final signed compact by the end of June. *See* Mem. at 9-

11  11.  But, as described above, this is far from the only allegation underpinning the

12  Tribe's breach of fiduciary duty claim; the thrust of the Tribe's claim is based on

13  W&C's conduct.

14  Nevertheless, W&C argues that allegation is an opinion about a future event

15  that is not an actionable misrepresentation.  Mem. at 11.  But the case that W&C cites

16  to support this proposition also states "there are exceptions to this rule: . . . ***where the***

17  ***opinion is by a fiduciary or other trusted person*** . . ."  *Cohen v. S & S Constr. Co.*,

18  151 Cal. App. 3d 941, 946 (1983) (emphasis added).  The only other case W&C cites

19  to support this argument, *Graham v. Bank of America., N.A.*, 226 Cal. App. 4th 594

20  (2014), is inapposite as it is a case involving the appraisal value of a property and

21  does not fall within the exception identified above.

22  The exception to the rule is directly applicable here.  The Tribe alleged that

23  W&C was retained by the Tribe, and therefore W&C owed the Tribe "a fiduciary

24  relation of the very highest character." *Neel*, 6 Cal. 3d at 189.  W&C's

25  misrepresentations about whether the Tribe would have a signed compact by the end

26  of June are actionable because the misrepresentation was knowingly false and

27  designed to avoid termination by the Tribe, which extended the length of W&C's

28  representation and increased the amount of fees it charged the Tribe.

### C.      The Tribe Properly Alleged Harm

Finally, as discussed *supra* II, the Tribe has properly pled harm.  The Tribe specifically alleged that it overpaid for W&C's incompetent and inefficient work on the Tribe's gaming compact negotiations at a cost of $50,000/month.  CC ¶¶ 59-63. These allegations are sufficient to satisfy Rule 8.

W&C's arguments to the contrary are all improperly based on disputed facts rather than the sufficiency of the Tribe's allegations and should therefore be disregarded.

\* \* \*

Accordingly, because the Tribe has properly pled a claim for breach of fiduciary duty, W&C's motion must be denied.

## IV.     THE TRIBE HAS SUFFICIENTLY PLED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In California, to state a claim for breach of the implied covenant a plaintiff "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Careau & Co. v. Security Pac. Bus. Credit, Inc*., 272 Cal. Rptr. 387, 399-400 (Ct. App. 1990).

W&C does not address whether the Tribe's claim lacks the requisite plausibility required under Rule 8.  And, even if it had made such an effort, W&C would fail.  The Tribe has alleged, for example, that: (1) the parties entered into the Fee Agreement for W&C to represent the Tribe in gaming compact negotiations, CC ¶¶ 1, 65; (2) W&C consciously and deliberately, and in bad faith, sought to "drag[] out negotiations in an effort to" "maximize its fees," *see id.* ¶¶ 11, 33-35, 67-70; (3) W&C's breach "deprived the Tribe from receiving the benefits of the Fee

Agreement—i.e. [] efficient and competent representation…," *id.* ¶¶ 4, 67, 70; and (4) the Tribe was harmed by W&C's breach, *see id.* ¶¶ 67, 71.  This is plainly sufficient under Rule 8.

W&C also argues that the Tribe's good faith and fair dealing claim fails because its "decision-making process … was legitimate."  Mem. at 13. But this argument does not bear on the sufficiency of the Tribe's allegations and is based on inapposite case law.  S*ee, e.g.*, *In re Sizzler Rests. Int'l*, 225 B.R. 466 (Bankr. C.D. Cal. 1998) (granting summary judgment where it was undisputed that franchisor exercised good cause in business decisions); *Oil Express Nat'l, Inc. v. Burgstone*, 958 F. Supp. 366 (N.D. Ill. 1997) (discussing good faith and fair dealing claim under Illinois law).  W&C further argues the merits of whether eight months is an unreasonably long time (or a "contractually awesome" time) to conclude gaming compact negotiations and whether it was required to do any work at all under the Fee Agreement.  Mem. at 15-16.

Both of these arguments are based on issues of fact not appropriately considered on a 12(b)(6) motion.  *See, e.g., Nguyen v. Radient Pharm. Corp.*, 2011 WL 5041959, at *7 (C.D. Cal. Oct. 20, 2011) (holding "considerations of fact" are inappropriate on a 12(b)(6) motion).  They each depend on the extent to which W&C was fulfilling its obligation to act in good faith.  If, for example, as alleged by the Tribe, W&C could have easily wrapped up negotiations in four months had it acted with the diligence required of a fiduciary, then it does not matter if the Fee Agreement allowed for payment in the event that W&C worked little or no time in a month.  The Fee Agreement does ***not*** say that W&C was entitled to sit back and do no work for $50,000 a month when there was plenty of work it could and should have been doing, which is what the Tribe alleges here.

Accordingly, because the Tribe has stated a plausible claim for breach of the implied covenant of good faith and fair dealing, W&C's motion must be denied.

# V.    THE TRIBE HAS STATED A CLAIM FOR NEGLIGENCE

To state a claim for professional negligence, a plaintiff must show: (a) a duty of an attorney to "use such skill, prudence and diligence as members of the profession commonly possess"; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) damages.  *Wolk v. Green*, 516 F. Supp. 2d 1121, 1129 (N.D. Cal. 2007).  These elements, except for the question of the attorney's duty of care, are "generally factual" and should therefore not be challenged on a motion to dismiss.  *Osornio v. Weingarten*, 124 Cal. App. 4th 304, 319-20 (2004).  The Tribe has sufficiently alleged each element and the Court should therefore deny W&C's motion.

## A.    The Tribe Has Sufficiently Pled The Existence Of A Duty

An attorney owes a duty of care to a client with whom the attorney stands in privity of contract.  *See Borissoff v. Taylor & Faust*, 33 Cal. 4th 523, 529–30 (2004) (citations omitted).  The Tribe satisfies this element by alleging that the parties entered into the Fee Agreement for W&C to represent the Tribe in gaming compact negotiations with the State.  CC ¶ 74.

## B.    The Tribe Has Sufficiently Pled That W&C Breached Its Duty

Breach of duty in a professional negligence situation is the failure of an attorney to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise.  *See Osornio*, 124 Cal. App. 4th at 319.

W&C does not argue that the Tribe failed to plead facts sufficient to show that W&C breached its duty of care.  Nor could it.  Instead, W&C again improperly attacks the merits of the claim to argues that (1) a breach of the California Rules of Professional Conduct cannot be the "sole basis" for a negligence claim, and (2) it did not breach its duty because the Tribe's replacement firm never issued a "formal file request" for the Tribe's case file.  Mem. at 17.  But W&C either misstates or ignores the Tribe's allegations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*First*, W&C's violation of Rule 3-700(D)(1) is only *one* of the ways—not the "sole basis"—in which it breached its duty.  The Tribe has alleged a laundry list of ways sufficient to show W&C did not act with the requisite "skill, prudence, and diligence" that other attorneys possess.  For example, the Tribe alleged that: W&C was not "diligently pursuing negotiations," CC ¶ 4; that W&C failed to provide a draft compact on behalf of the Tribe in response to the State's initial draft for over four months, *see id.* ¶¶ 4, 33, 35; and that W&C failed to address the Tribe's underpayment issue in the limited number of drafts it produced, *see, e.g.*, *id.* ¶ 38.  The Tribe also specifically incorporated by reference paragraphs 1-72, which include allegations that W&C did not perform its obligations under the Fee Agreement in good faith or act in the Tribe's best interests.  *See, e.g.*, *id.* ¶¶ 4, 33-35, 67-70.  Allegations that an attorney breached "ethical duties of good faith and fidelity" are also actionable as negligence.  *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1621 (1994).

*Second,* W&C tries to hide the ball by claiming the Tribe's replacement firm did not later issue a "formal file request."  Mem. at 17-18.  To do so, W&C relies on a June 27, 2017 email from Rosette purportedly stating that a "formal file request" was forthcoming, which is attached to W&C's supporting declaration.  ECF No. 138-2; Ex. 2.  But this email is outside the pleadings and, at best, attempts to create a fact issue that is not appropriate for resolution at the motion to dismiss stage.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007) (In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a Court may consider "exhibits attached to the complaint," "matters properly subject to judicial notice," or documents necessarily relied on by the complaint whose authenticity no party questions.); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  W&C does not request that the document be judicially noticed (it cannot), or otherwise explain its basis for attempting to reference such a document in a 12(b)(6) motion apart from a vague statement that the

"text" of the email is "referenced" in—but not attached to—the FAC.[2]  Regardless, W&C's argument ignores the Tribe's allegations that W&C refused the Tribe's request for its "entire case file" in its June 26, 2017 letter terminating W&C.  CC ¶¶ 76-77.  And it ignores the allegations that W&C has refused additional subsequent requests from the Tribe, Rosette LLP, and the Tribe's current litigation counsel, WilmerHale.  *Id.* ¶¶ 78–79.

Accordingly, the Tribe has pled facts sufficient to show that W&C breached its duty of care to the Tribe to support its negligence claim.

### C.  Proximate Cause/Causation

In negligence cases, "the crucial causation question is what would have happened if the defendant attorney had not been negligent."  *Viner v. Sweet*, 30 Cal. 4th 1232, 1242 (2003).  The plaintiff therefore "need only introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."  *Id.* at 1244.

The Tribe has, in fact, provided a "reasonable basis" to show "what would have happened if [W&C] had not been negligent."  *Viner*, 30 Cal. 4th at 1242-43; *see also* CC ¶ 80.  That is, ***but for*** W&C's failure to transmit the case file and failure to act in the best interest of the Tribe, the Tribe would not have incurred certain additional "legal fees" and "increased [] costs" to conclude the gaming compact negotiations.  CC ¶¶ 80-81.  The Tribe also alleged that it continues to be damaged in this action—as a result of W&C's continued refusals—from the "prejudice of not having the information that would be relevant to, and assist the Tribe in, preparing its

---

[2]   This email is just one of several examples in which W&C improperly attempts to rely on facts outside the pleadings. Exhibit 1 attached to the Williams Declaration, for instance, is an anonymous, handwritten note purportedly calculating WilmerHale's fees at just over $1.2 million.  WilmerHale's fees are completely irrelevant.  But on top of that, the note is not judicially noticeable, nor is it remotely reliable.  Indeed, it is wildly inaccurate.  Inexplicably, and without any basis whatsoever, W&C then takes this already exaggerated $1.2 million amount and increases it to $1.5 million in its opening brief.  See Mem. at 1.

defense….” *Id.* ¶ 82.  These allegations, which must be construed in the light most favorable to the Tribe, are accordingly sufficient to show that it is "more likely than not" that W&C's conduct was a "cause in fact" of the extended negotiations and associated costs in concluding gaming compact negotiations, and continuing prejudice to the Tribe.  *See Belinda K. v. Cty. of Alameda*, 2012 WL 1535232, at *20 (N.D. Cal. Apr. 30, 2012) (citing *Viner*, 30 Cal. 4th at 1242).

Again, to support this argument, W&C argues fact issues not appropriate for a motion to dismiss.  *See Nguyen*, 2011 WL 5041959 at *7.  It claims that, because it sent to Rosette and the Tribe the June 21, 2017 draft compact, it "provided exactly what [Rosette] requested," attributing the cause of any "supposed negligence" to Rosette.  Mem. at 19.  W&C claims that a "more reasonable inference" from the allegations is that Rosette had to "get up to speed with a matter" with which it was "unfamiliar."  *Id.*  But Rule 8 requires only that the Tribe plead factual content that allows a court to draw the "reasonable inference" that W&C is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 678.  The Tribe has done so here.

### D.    The Tribe Has Sufficiently Pled Damages

As discussed *supra* II, the Tribe has pled damages.  The Tribe specifically alleged that it incurred "legal fees and increased [] costs" as a result of W&C's negligence and failure to transmit the Tribe's case file.  CC ¶¶ 80-81.  And the Tribe alleged that it has incurred "further legal expenses" in an effort to obtain its case file and continues to be "damaged in this action because it is prejudiced in its defense" as a result of not having the "information that would be relevant to … preparing its defense." *Id.* ¶ 82.  These allegations are plainly sufficient to satisfy Rule 8.

W&C's hodge-podge of arguments to the contrary must be disregarded given that they all improperly rest on fact issues rather than the sufficiency of the Tribe's allegations.  The Tribe accordingly has satisfied the damages element of its negligence claim.

*   *   *

OPPOSITION

1    For the reasons discussed above, the Tribe has stated a claim for negligence

2    and W&C's motion should be denied.

3    **VI.    THE TRIBE HAS STATED A CLAIM FOR BREACH OF CONTRACT**

4    The Tribe has pled facts sufficient to show, under Rule 8, that W&C is "liable

5    for the misconduct alleged"—*i.e.* breaching the Fee Agreement. *See Iqbal*, 556 U.S.

6    at 678. W&C's only response to these allegations is to, again, improperly argue a

7    litany of fact issues—again, not appropriate on a motion to dismiss—to claim that the

8    Tribe's request for its case file was somehow sent the day after the Tribe terminated

9    W&C, and that, therefore, the Tribe had already "repudiated" the Fee Agreement;

10   that W&C's admitted failure to return the case file to the Tribe was immaterial; and

11   that the Tribe's damages are not recoverable because they are unforeseeable,

12   uncertain, and avoidable. Mem. at 20-21. Not only are these arguments not properly

13   before the Court, they fail as a matter of law.

14   W&C's argument that the Tribe somehow "repudiated" the Fee Agreement is

15   without merit. As an initial matter, W&C conflates its termination with the idea that

16   the Tribe repudiated the Fee Agreement. Repudiation of a contract occurs when a

17   party announces an intention not to perform prior to the time due for performance.

18   *See Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 231 Cal. App. 4th

19   1131, 1150 (2014). That is not what happened here. The Fee Agreement expressly

20   provided that the Tribe could terminate W&C "at any time." *See* FAC, Ex. 2. And

21   pursuant to that contract, the Tribe terminated the Fee Agreement, and has now

22   brought an action for damages against W&C—which it is permitted to do. *Id.*; *see*

23   *also* CC, Ex. A § 15. Moreover, W&C bases its argument on the same

24   (impermissible) fact issues it raises in an effort to dismiss other claims. *See id.* But

25   as discussed *supra* II.A, the Tribe alleged that it requested its "entire case file" on

26   June 26, 2017 in the letter terminating W&C—pursuant to sections 11 and 12 of the

27   Fee Agreement.

28   W&C's remaining arguments likewise fail. W&C first argues that its breach

- 21 -

was "immaterial."  Mem. at 21.  But, as with W&C's other arguments, the

determination of whether a material breach has occurred is generally a question of

fact (not appropriate on a 12(b)(6) motion).  *See Aliya Medcare Finance, LLC v.*

*Nickell*, 2015 WL 4163088, at *17 (C.D. Cal. July 8, 2015); *Plotnik v. Meihaus*, 208

Cal. App. 4th 1590 (2012).  W&C next argues the merits of whether the Tribe's

damages are recoverable, claiming that the Tribe's damages are unforeseeable,

uncertain and avoidable.  Mem. at 21-22.  But this argument, too, fails to address the

actual allegations in the Tribe's counterclaims.  *See, e.g.*, CC ¶¶ 80-82.  In sum, as

pled, the Tribe's allegations are sufficient to establish that W&C breached the Fee

Agreement and W&C's motion should therefore be denied.

## VII.   THE TRIBE HAS SUFFICIENTLY PLED A CLAIM UNDER THE UCL

The UCL "prohibits, and provides civil remedies for unfair competition, which

it defines as 'any unlawful, unfair or fraudulent business act or practice.'"  *Kwikset*

*Corp. v. Super. Ct.,* 51 Cal. 4th 310, 320 (2011).  This can "include anything that can

properly be called a business practice and that at the same time is forbidden by

law."  *Bank of the West v. Super. Ct*., 2 Cal. 4th 1254, 1266 (1992) (internal quotation

marks omitted).

### A.   The Tribe Has Standing Under the UCL

Any "person" who has suffered injury and lost money or property as a result of

unfair competition may bring a claim under the UCL.  *See* Cal. Bus. & Prof. Code §

17204.  Section 17201 broadly defines "person" as "natural persons, corporations,

firms, partnerships, joint stock companies, associations, and other organizations of

persons."  *Sonoma Falls Developer, LLC v. Dry Creek Rancheria Band of Pomo*

*Indians*, No. 3:01-cv-04125-VRW, ECF No. 40 at 8 (N.D. Cal. filed July 24, 2002).

Although case law is sparse, at least one district court in the Ninth Circuit has held

that "a tribe is 'an association [or] other organization of persons'" and thus falls within

Section 17201's "broad definition" of "person."  *Id.* at 9 (citing *Chemehuevi Indian*

*Tribe v. California State Bd. of Equalization*, 757 F. 2d 1047, 1055 (9th Cir. 1985),

*rev'd on other grounds*, 474 U.S. 9 (1985)).  Available authority therefore supports the Tribe's standing to bring the UCL claim.

### B.    The Tribe Has Alleged Particularized Facts

The Tribe alleged that W&C "committed acts of unfair competition" by (1) violating Rule 3-700(D)(1), and (2) breaching its fiduciary duties to the Tribe.  CC ¶ 93.  The Tribe also incorporates the preceding allegations in the counterclaims.  *Id.* ¶ 91.  Those allegations include detailed underlying facts concerning the ways W&C breached fiduciary duties (*e.g.*, by dragging out gaming compact negotiations in order to maximize monthly fees), *id.* ¶¶ 58-61; and W&C's negligence and associated violation of the Rules of Professional Conduct, *id.* ¶¶ 73-82.  And contrary to W&C's argument that "monetary remedies" are not available, Mem. at 24, the Tribe also properly alleged that it is entitled to injunctive relief and restitution related to the "lost money [and] property"—including, but not limited to, its case file and monthly fees paid to W&C for its inefficient and incompetent work—that it suffered as a result of W&C's unfair and unlawful business practice.  *See Kwikset*, 51 Cal. 4th at 327 (holding that, at the pleading stage, general factual allegations of injury may suffice).

These allegations, which W&C largely ignores, go far beyond W&C's passing assertion that the Tribe "offer[ed] just *one* conclusory statement stating that [W&C] 'committed acts of unfair competition.'"  Mem. at 23 (emphasis in original).  The Tribe has accordingly stated facts sufficient to plead a claim under the UCL.

### C.    The Safe Harbor Does Not Apply

W&C argues that the Tribe's unfair competition claim fails because W&C is protected by a "safe harbor" exception solely because Rule 3-700(D) "does not proscribe the conduct in question."  Mem. at 23.  W&C's argument confuses the relevant test, and its argument fails.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 961 (9th Cir. 2016), is instructive.  In *Ebner*, plaintiff-consumer brought, among other things, a UCL claim against a cosmetics manufacturer claiming that the manufacturer's

OPPOSITION

labeling practices were deceptive.  The court there held that the UCL safe harbor applied only where a plaintiff brings a claim that is "***affirmatively permitted*** by statute—the doctrine does not immunize from liability conduct that is not merely unlawful." *Id.*   Here, of course, nothing permits W&C's conduct.  Rule 3-700(D)(1) ***does*** "proscribe the conduct in question," and no other rule or law allows it.  *See supra* II and V.  W&C is therefore incorrect as a matter of law.

In any event, even if the "safe harbor" applied with respect to W&C's violation of Rule 3-700(D)(1) (which it does not), the Tribe's UCL claim is not limited to W&C's violation of Rule 3-700(D)(1).  *See supra* VII.B.  The claim, as alleged, is also founded on W&C breach of its fiduciary duties and misrepresentations to the Tribe.  *See, e.g.*, CC ¶¶ 56-63, 73-82, 91-95.  Accordingly, W&C is not protected by the UCL's safe harbor provision and the Court should deny its motion.

### D.   W&C Cannot Assert Its Fact-Based Affirmative Defenses

As best the Tribe can comprehend, W&C also seeks to dismiss the UCL claim on the basis that it is subject to equitable defenses, such as unclean hands and *in pari delicto*.  This is improper.  As with the majority of W&C's motion, its argument is based on non-judicially noticeable facts outside of the Tribe's allegations.  *See*, *e.g,* Mem. at 25 (arguing facts not alleged in the counterclaims regarding W&C termination).  Even if W&C's fact issues could be considered, the facts underlying the circumstances of W&C's termination are in dispute.  And affirmative defenses may not be raised by a motion to dismiss where they depend on disputed issues of fact, as is the case here.  *See ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper"); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  Accordingly, W&C's based on equitable defenses fail.

## VIII.  THE TRIBE HAS STATED A CLAIM FOR RECOUPMENT/SETOFF

W&C argues that the Tribe cannot bring a claim for recoupment because it

should instead be asserted as an affirmative defense.  Mem. at 25.  This is incorrect.
***First,*** plaintiffs in district court in the Ninth Circuit have brought similar claims.  *See*
*James River Ins. Co. v. W.A. Rose Constr. Co.*, 2018 WL 3023408, at *1, 4, 8-9
(N.D. Cal. June 18, 2018); *Guidiville Rancheria of California v. United States*, 2015
WL 4934408, at *5 (N.D. Cal. Aug. 18, 2015), *vacated in part on other grounds*, 704
F. App'x 655 (9th Cir. 2017) (recognizing claims for recoupment).  ***Second,*** the cases
W&C relies upon to support this proposition are inapposite.  In *City of St. Paul v.*
*Evans*, 344 F.3d 1029, 1034 (9th Cir 2003), the court was reviewing a district court's
decision on summary judgment regarding whether a time-barred defense could be
raised as affirmative recovery.  The court clearly explained that its discussion was
focused on "the respective roles of the parties in the litigation as a whole."  *Id.* at
1035.  Noting that "[i]t is important that the party asserting the defense is not,
simultaneously or in parallel litigation, seeking affirmative recovery on an identical
claim."  *Id*.  That concern is not present here.  The Tribe has not sought recovery for
recoupment in any other manner, and the line of cases discussed in *City of St. Paul*
does not apply.

   The remainder of W&C's argument is rooted in the merits of the claim—i.e.
whether the Tribe is entitled to recoupment.  Once again, this fact-based inquiry is
not a question that can be decided at this stage of pleadings.  *See Nguyen*, 2011 WL
5041959, at *7.  Accordingly, the Tribe has adequately plead a claim for recoupment.

## CONCLUSION

   W&C's motion to dismiss should be disregarded as procedurally improper.  It
violates the Court's clear order that W&C file an answer.  In any event, each of the
Tribe's counterclaims is well-pled, and is based on specific factual support.   The
Tribe therefore respectfully requests that the Court deny W&C's motion to dismiss in
its entirety.  However, in the event that the Court grants the motion to dismiss as to
any or all of the counterclaims, the Tribe requests leave to amend.

Dated:  September 28, 2018                    Respectfully submitted,

                                             */s/ Christopher T. Casamassima*
                                             Christopher T. Casamassima
                                             Rebecca A. Girolamo

                                             *Attorneys for Defendants*
                                             *Quechan Tribe of the Fort Yuma Indian*
                                             *Reservation, Keeny Escalanti, Sr., and*
                                             *Mark William White II*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail address denoted on the electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 28, 2018, at Los Angeles, California.


*/s/ Christopher T. Casamassima*
Christopher T. Casamassima