UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; ROSETTE, LLP; QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; and DOES 1 THROUGH 100,<br><br>　　　　　　　　　　Defendants. | Case No.: 17-CV-01436-GPC-MSB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND DENYING PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT**<br><br>**[ECF No. 219]** |

Before the Court is Plaintiff/Counter-Defendant Williams & Cochrane's ("W&C") motion for reconsideration of the Court's Order on Defendant/Counter-Plaintiff Quechan Tribe of Fort Yuma Indian Reservation's ("Quechan" or "the Tribe") motion to dismiss Plaintiff's counterclaim in reply, and W&C's motion for entry of final judgment. ECF No. 219. Quechan filed an opposition on October 25, 2019. ECF No. 236. Plaintiff filed a reply on November 1, 2019. ECF No. 237. Based on the reasoning below, the Court **DENIES** Plaintiff's motion for reconsideration and for entry of final judgment.

1

## PROCEDURAL BACKGROUND

On December 10, 2018, W&C filed a "reply claim" [1] (ECF No. 179) in response to several counterclaims raised by Quechan in Quechan's Answer to the First Amended Complaint (ECF No. 94). On December 31, 2018, Quechan filed a motion to strike and dismiss. ECF No. 184. On September 10, 2019, this Court granted, with prejudice, Quechan's motion to dismiss on the following bases: (1) the individual Tribe members (Keeny Escalanti and Willie White) are not parties to the agreement at issue; (2) W&C's counterclaim in reply for tortious breach of contract relies on communications that are protected by litigation privilege. ECF No. 216.

## FACTUAL BACKGROUND

The parties are familiar with the factual background, which is described at length in the Court's prior order (ECF No. 216) and does not bear repeating here.[2]

In brief and in most relevant part, W&C represented Quechan in negotiations with the State of California with respect to payments owed by Quechan to the State. ECF No. 94 ¶ 22. In September 2016, Quechan hired W&C for representation in these negotiations and signed an Attorney-Client Fee Agreement on September 29, 2016. *Id.* ¶ 23. On June 26, 2017, the Quechan President Keeny Escalanti sent a letter to W&C terminating the firm ("June 26th letter"). *Id.* ¶ 44. The June 26th letter stated that W&C had been "grossly overcompensated" given its failure to "produce better-than-boilerplate terms in your negotiations so far with the State," and therefore Quechan's payment of fees to date was "more than fair." ECF No. 179 at 3-4. The letter also stated, "We strongly advise you against pressing your luck further out of concern for the reputation of

---

[1] In the Court's prior order, the Court interpreted W&C's "reply claim" as a counterclaim in reply. ECF No. 216 at 10.
[2] The Court draws on the factual allegations asserted in the "reply counterclaim" (properly, "counterclaim in reply") (ECF No. 179) but notes that the operative complaint is now the fourth amended complaint, which was filed on September 25, 2019. ECF No. 220.

2

your firm in Indian Country and in the State of California." *Id.* In this letter, Escalanti also asked W&C to transmit the Tribe's entire case file and most recent draft compact to its new counsel, Rosette LLP. ECF No. 94 ¶ 44.

On June 30, 2017, the Quechan Executive Secretary sent W&C a letter that was also signed by Escalanti ("June 30th letter"). The June 30th letter included the following statement: "Should you continue your obstruction of the Tribe's interests, the Tribe will be left with no other choice than to pursue the legal remedies available to it. We trust that the Firm will see the wisdom in promptly complying with these demands." ECF No. 179 at 5.

## DISCUSSION

W&C argues that it should be permitted to pursue its tortious breach of contract counterclaim in reply, and that the Court should reconsider its opinion, citing two California Court of Appeals cases. W&C further requests that in the event that the Court declines to reconsider its prior order, then the Court should enter final judgment on the counterclaim in reply under Federal Rules of Civil Procedure ("Rule") 54(b) since the issue of litigation privilege is severable from the remainder of issues in this litigation. The Court will address each issue in turn.[3]

### I. MOTION FOR RECONSIDERATION

A motion for reconsideration, under Federal Rule of Civil Procedure 59(e), is "appropriate if the district court (1) is presented with newly discovered evidence; (2) clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County, Or. V. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also Ybarra v. McDaniel,* 656 F.3d 984, 998 (9th

---

[3] Quechan argues that Plaintiff has not moved for reconsideration of the Court's order dismissing the individual defendants Mark White and Keeny Escalanti, and therefore Plaintiff's motion for reconsideration is a motion for partial reconsideration of the Court's prior order. The Court agrees.

3

Cir. 2011). The Court has discretion in granting or denying a motion for reconsideration. *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original). It is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.*

W&C argues that the Court should reconsider its order since the June 26th and June 30th letters are not communicative and should not be protected by litigation privilege, citing two California Court of Appeals cases: *Mancini & Assocs. v. Schwetz*, 39 Cal. App. 5th 656, 661 (Ct. App. 2019), *as modified on denial of reh'g* (Sept. 30, 2019); *People v. Toledano*, 249 Cal. Rptr. 3d 100 (Ct. App. 2019), *review denied and ordered not to be officially published* (Oct. 23, 2019). ECF 219-1 at 3-9.

In *Mancini*, the plaintiff law firm had successfully litigated sexual harassment and other claims on behalf of its client and sought to collect money owed to it by the judgment debtor, the client's former employer. The judgment debtor rekindled his social relationship with the law firm client, and they eventually executed a settlement releasing the judgment debtor from his payment obligations to the law firm. The law firm brought a claim against the judgment debtor alleging, *inter alia*, intentional interference with contract, citing his settlement communications with the client. The judgment debtor argued that his communications with the client were protected by litigation privilege, but the California Court of Appeal disagreed, noting that the "threshold issue" in determining the application of the litigation privilege is whether the defendant's conduct was communicative or noncommunicative." *Id.* at 661. Although the judgment debtor's execution of the settlement agreement was communicative, the Court found that the debtor undertook several noncommunicative acts that were not protected by litigation

privilege – *e.g.*, contacting the client to ascertain whether she had hired a judgment collections attorney. Here, the June 26 and June 30 letters – including the disputed excerpts – are plainly communicative. Therefore, *Mancini* does not support reconsideration of the Court's prior order.

*Toledano* is similarly inapposite. In *Toledano*, an attorney threatened to disclose a witness' extra-marital affair with his client unless the witness paid $350,000 in a case where the witness was seeking to obtain a restraining order against the client. The attorney argued that his threat should be protected by litigation privilege. The *Toledano* court held that these communications were insufficiently related to the underlying litigation and therefore not privileged, but ultimately reaffirmed the principle that litigation privilege applies regardless of whether the communication was made with malice or intent to harm, and whether the alleged conduct was fraudulent, perjurious, unethical, or even illegal. *Toledano*, 249 Cal. Rptr. 3d at 110 (citing *Blanchard v. DIRECTV, Inc.* 123 Cal.App.4th 903, 919-920 (2004)). Based on this well-established legal principle, the *Toledano* court noted that the lawyer's other statements – *i.e.*, that he had information that would "blow" the witness' case against his client "out of the water," and his threat to reveal personal information about the witness unless the witness withdrew her request for a restraining order – would be protected by litigation privilege. *Id.* at 111.

As mentioned above, this line-drawing exercise is based on well-established legal principles regarding privileged communications and does not constitute an intervening change in controlling law as required by Rule 59(e) and therefore does not form the proper basis for a motion for reconsideration. Nevertheless, even considering this case and its implications, the Court finds that the June 26th and June 30th letters are sufficiently related to the underlying litigation. Plaintiff argues that Quechan's statement in the June 30th letter ("We strongly advise you against pressing your luck further out of

concern for the reputation of your firm in Indian Country and the State of California") bears no connection to the ongoing litigation and therefore falls outside the scope of privileged communication. Specifically, W&C argues that Quechan's statement arises earlier in the letter than Quechan's repudiation of the Attorney-Client Fee Agreement, is designed to "silence Williams & Cochrane," and is an "open-ended and unrestricted threat." ECF 219-1 at 10. The Court disagrees. The June 30 letter was plainly a follow-up request for the transfer of the Tribe's materials to Rosette LLP, intending to communicate that if W&C failed to do so, the Tribe would pursue litigation. The letter describes W&C's performance as the Tribe's attorney, the Tribe's termination of W&C, and the Tribe's request for the transfer of their case materials. The letter indicates that the Tribe will pursue legal remedies for any continued obstruction of the Tribe's interests – including, the failure to transfer case materials to Rosette LLP. Unlike the attorney's threat in *Toledano*, which was separate and apart from the attorney's other statements related to the litigation, this statement in the June 30th letter is directly related to specific, contemplated litigation as described by the rest of the letter.

In their reply W&C argues that the consequences of Quechan's communications – rather than the substance – are determinative and reiterates their prior argument that there is no connection between Quechan's statement and the litigative process. ECF No. 237. In support W&C cites three cases where courts have held that a defendant has failed to meet their burden under California's anti-SLAPP statute (Cal. Code Civ. Proc., § 425.16): *Miller Marital Deduction Tr. v. Zurich Am. Ins. Co.*, 41 Cal. App. 5th 247 (Ct. App. 2019); *Sifuentes v. Subrogation Div., Inc.*, 2019 WL 4670150 (Cal. Ct. App. Sept. 25, 2019); and *Appel v. Wolf*, No. 3:18-CV-814-L-BGS, 2019 WL 4534540 (S.D. Cal. Sept. 19, 2019). To the extent that these cases touched on the question of whether the conduct at issue was protected by the litigation privilege, they rely on the established standard under California law, as discussed above. *See Appel*, 2019 WL 4534540, at *5

6

17-CV-01436-GPC-MSB

(litigation privilege did not apply to libelous statements from defendant to plaintiffs' counsel and additional counsel third-party counsel since these statements were not functionally related to the ongoing action and inaccurately described plaintiff's prior conduct); *Sifuentes*, 2019 WL 4670150 at *9 (litigation privilege did not apply to defendants' extortion since defendants were not seriously contemplating litigation against the plaintiffs in good faith).[4] The June 26th and June 30th letters are distinguishable from the communications considered in both the aforementioned cases, given the letters' direct connection to the Tribe's request for their case file.

The Court therefore **DENIES** W&C's motion for reconsideration.

## II. MOTION FOR ENTRY OF FINAL JUDGMENT

W&C seeks partial judgment on its counterclaim in reply on the issue of litigation privilege, arguing that the litigation privilege issue is separable from the remainder of the litigation.

In evaluating whether dismissal of one or more claims under Rule 54(b) is appropriate, the "district court must first determine that it is dealing with a 'final judgment.'" *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 7 (1980). For a judgment to be "final," it must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). Once this element is satisfied, the district court must evaluate "whether there is any just reason for delay." *Id.* at 8. The Supreme Court has made clear that "[n]ot all final judgments on individual claims should be immediately appealable." *Id.* For this reason, "[i]t is left to the sound judicial discretion of the district court to determine the 'appropriate time' when

---

[4] The *Miller* court's analysis and the excerpts quoted by W&C in its reply address the requisite burden under the anti-SLAPP statute. The *Miller* court did not ultimately issue a holding as to litigation privilege.

each final decision in a multiple claims action is ready for appeal." *Id.* Evaluation of whether there are just reasons to delay "must take into account judicial administrative interests as well as the equities involved." *Id.* "Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' " *Id.* (quoting *Sears, Roebuck,* 351 U.S. at 438). In this vein, the district court may properly consider "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.*

Plaintiff requests that the final judgment be entered in the issue of litigation privilege since it separable from the remainder of the litigation. Defendants counter that partial judgment would be inappropriate since the claim relies on the same set of facts that form the basis for W&C's remaining claim against the Tribe and the Tribe's pending counterclaims against W&C. The Court agrees. Any inquiry into the remaining claims would be interconnected with the question of litigation privilege and would not "streamline the ensuing litigation." *Noel v. Hall,* 568 F.3d 743, 747 (9th Cir. 2009) (citation omitted).

Accordingly, W&C's motion for partial entry of final judgment on the question of litigation privilege is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 11, 2019

Hon. Gonzalo P. Curiel
United States District Judge

8

17-CV-01436-GPC-MSB