1  MATTHEW W. CLOSE (S.B. #188570)
   mclose@omm.com
2  BRITTANY ROGERS (S.B. #274432)
   brogers@omm.com
3  KATE M. IKEHARA (S.B. #313431)
   kikehara@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, California  90071-2899
   Telephone:   (213) 430-6000
6  Facsimile:    (213) 430-6407
7
8  Attorneys for Defendants Robert Rosette,
   Rosette & Associates, PC, and Rosette, LLP
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; and ROSETTE, LLP,<br><br>　　　　　Defendants. | Case No. 17-CV-01436 GPC MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ROSETTE DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11 AND 28 U.S.C. § 1927**<br><br>[Notice of Motion and Declaration of Matthew W. Close Filed Concurrently]<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Date: March 13, 2020<br>Time: 1:30 PM |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND PROCEDURAL BACKGROUND ......................... 1

II. ARGUMENT ................................................................................................ 3

    A.  W&C Should Be Sanctioned for Violating Rule 11 Because the 4AC Is Frivolous and Was Filed for an Improper Purpose .................. 3

        1.  W&C's Sole Remaining Claim Is Frivolous .............................. 3

        2.  The 4AC Was Filed to Harass the Rosette Defendants ............. 7

    B.  W&C Unreasonably and Vexatiously Multiplied the Proceedings ................................................................................... 10

III. CONCLUSION AND REQUESTED RELIEF ............................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bishop v. City of Henderson*,
    49 F. App'x 706 (9th Cir. 2002) ................................................................... 9

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ..................................................................... 3

*Corrigan v. Dale*,
    401 Fed. App'x. 233 (9th Cir. Oct. 27, 2010) ............................................. 7

*Estate of Blue v. County of L.A.*,
    120 F.3d 982 (9th Cir. 1997) ....................................................................... 3

*Hoatson v. New York Archdiocese*,
    2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) ................................................. 9

*In re Keegan Mgmt. Co. Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) ....................................................................... 10

*Johnson v. GMRI, Inc.*,
    2007 WL 1758849 (E.D. Cal. June 18, 2007) ............................................ 9

*Lockheed Martin Energy Sys., Inc. v. Slavin*,
    190 F.R.D. 449 (E.D. Tenn. 1999) .............................................................. 9

*Ltd. v. Compal Elecs. Inc. Grp.*,
    2015 WL 11570939 (S.D. Cal. Dec. 11, 2015) ......................................... 11

*Metz v. Unizan Bank*,
    655 F.3d 485 (6th Cir. 2011) ....................................................................... 9

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
    210 F.3d 1112 (9th Cir. 2000) ................................................................... 10

*Rey v. Countrywide Home Loans, Inc.*,
    2011 WL 4103704 (D. Haw. Sept. 13, 2011) ............................................. 9

*Smith v. Hunt & Henriques*,
    2013 WL 6141456 (N.D. Cal. Nov. 21, 2013) ............................................ 3

# TABLE OF AUTHORITIES

**Page**

*Stewart v. City of Chicago*,
   622 F. Supp. 35 (N.D. Ill. 1985) .......................................................................... 11

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) ...................................................................... 2, 3, 7

*Ultracashmere House, Ltd. v. Nordstrom, Inc.*,
   123 F.R.D. 435 (S.D.N.Y. 1988) ........................................................................ 10

*Watkins v. Smith*,
   2013 WL 655085 (S.D.N.Y. Feb. 22, 2013), *aff'd,* 561 F. App'x 46
   (2d Cir. 2014) ........................................................................................................ 4

*Zlotnick v. Hubbard*,
   572 F. Supp. 2d 258 (N.D.N.Y. 2008) .................................................................. 9

**Statutes**

28 U.S.C. § 1927 ............................................................................................... 10, 11

**Rules**

Fed. R. Civ. P. 11(b) ................................................................................................. 6

## I. Introduction and Procedural Background

For over two years, Plaintiff Williams & Cochrane, LLP ("W&C") has exploited this judicial forum to launch false and legally baseless attacks against Robert Rosette, former defendant Richard Armstrong, and the law firm that Mr. Rosette founded. W&C ostensibly seeks to recover a contingency fee under an Attorney Fee Agreement with the Quechan Tribe of the Fort Yuma Indian Reservation ("Quechan"), but it has weaponized this simple fee dispute to smear the Rosette Defendants and Mr. Armstrong.[1] W&C is suing Quechan for fees, Quechan is suing W&C for breaching its professional duties and committing legal malpractice, and the Rosette Defendants are only here because W&C continues to make the demonstrably false and totally unsubstantiated claim that the Tribe's termination of W&C resulted from a phrase in Mr. Rosette's biography, rather than Quechan's obvious dissatisfaction with W&C's work. This Court long ago recognized that "W&C could not and still cannot plausibly [allege] that Rosette's actions proximately caused Quechan to terminate the attorney-client contract, since termination could have resulted from any number of issues with the firm's performance." (Dkt. No. 217 at 28–29 (dismissing RICO claim).)

W&C has taken advantage of every opportunity to harass the Rosette Defendants as they were dragged along in the eight different pleadings that W&C has filed or tried to file in this case. Each pleading recited irrelevant, reckless, and false allegations designed to maximize reputational damage. Among other things, without any factual basis W&C has accused Mr. Rosette of malpractice, self-dealing, homophobia, election interference, criminal threatening, witness tampering, theft from tribal clients, criminal fraud of various kinds, and inciting armed rebellion on tribal lands (twice). These salacious allegations—which remain on the docket and are repeated by news outlets and competitors—follow Mr.

---

[1] The "Rosette Defendants" refers to Robert Rosette, Rosette & Associates, PC, and Rosette, LLP, now that Richard Armstrong is no longer a defendant.

- 1 -

MEM. ISO MOT. FOR SANCTIONS
17-CV-01436 GPC MSB

Rosette and Rosette, LLP wherever they go.  And that is precisely what Plaintiff intends and evidently was its plan from the outset.  Many of the allegations were stricken by the Court, "only to have them reappear in successive complaints."  (*Id.* at 2.)  The Court also threw out W&C's RICO claims and allegations, "only to find them return in the next complaint."  (*Id.*)  Time and again, W&C reasserted irrelevant and false allegations, strictly out of malice.

The Fourth Amended Complaint ("4AC") is no different.  All that remains of W&C's case against the Rosette Defendants is a Lanham Act claim for false advertising, but the 4AC is still littered with allegations that the Court ordered be removed.  (*Compare* Dkt. No. 217 at 27 (ordering that allegations about "attempts to settle the Pauma Tribe compact dispute in 2011 . . . be removed from the operative pleadings"), *with* 4AC ¶¶ 151–64 (allegations about "Tortious Interference at Pauma" in 2011).)  Like the complaints that came before it, the 4AC also persists in making unfounded claims that are foreclosed by existing evidence.

The Rosette Defendants do not move for sanctions eagerly, but W&C's conduct in this litigation has left them with no alternative; sanctions appear to be the only way to curb these abusive litigation tactics.  Members of the bar are not permitted to simply make things up, even under a liberal pleading standard, and even on information and belief.  Nor are they permitted to ignore available evidence and maintain patently false claims.  A litigant's irrational claims are not protected against Rule 11, even if paranoia or narcissism lead that litigant to believe things subjectively that the facts and law demonstrate to be objectively without merit.  *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (explaining that Rule 11 analysis is objective, not subjective).

This case against the Rosette Defendants has been an abuse of process from the beginning.  And after sworn evidence was filed with the Court on February 9 and April 6, 2018 by Quechan's then-President, Keeny Escalanti, Sr., Tribal Councilmember Mark William White II, Robert Rosette, and Joginder Dhillon, it

was beyond any doubt that W&C's claim lacked factual or legal merit. (*See* Dkt. Nos. 29-2, 29-3, 31-2, 50-2, 50-3, 50-4, 52-2, 52-3.) W&C's recent discovery responses confirm this: W&C never had any evidence to support its farfetched theory. The Rosette Defendants respectfully request, in light of the severity of W&C's misconduct, that the Court sanction W&C for its disregard for the Court's orders and repeated violations of Rules 1, 8 and 11, and 28 U.S.C. § 1927.

**II.    Argument**

    **A.    W&C Should Be Sanctioned for Violating Rule 11 Because the 4AC Is Frivolous and Was Filed for an Improper Purpose**

Rule 11 permits the Court to impose sanctions on parties and counsel (here, one and the same) "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). Frivolousness "is a shorthand" that the Ninth Circuit "has used to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Townsend*, 929 F.2d at 1362. If a pleading is both frivolous *and* filed for an improper purpose, more severe sanctions are warranted. *Id.* at 1362 (upholding heightened sanctions where allegations were frivolous and lawyer's "outward behavior manifested an improper purpose"— vindictiveness). Here, the allegations against the Rosette Defendants in the 4AC are frivolous and the case history demonstrates that W&C's attorneys obviously acted with an improper purpose when filing it.

        **1.    W&C's Sole Remaining Claim Is Frivolous**

When evaluating whether a complaint is frivolous, courts conduct "a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Smith v. Hunt & Henriques*, 2013 WL 6141456, at *2 (N.D. Cal. Nov. 21, 2013) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). Filing an amended complaint that is

1  "objectively unreasonable as either a factual or legal matter" or "making factual
2  allegations that are utterly lacking in evidentiary support" are grounds for Rule 11
3  sanctions. *Watkins v. Smith*, 2013 WL 655085, at *10 (S.D.N.Y. Feb. 22,
4  2013), *aff'd,* 561 F. App'x 46 (2d Cir. 2014).  W&C's total lack of factual support
5  for essential elements of its claim, and repetition of allegations that are foreclosed
6  by sworn testimony show that its false advertising claim is frivolous.

7        W&C's Lanham Act claim is based on a series of guesses that lacked any
8  evidentiary support when W&C filed the 4AC.  According to W&C, a statement
9  buried at the bottom of Mr. Rosette's attorney biography is supposedly false or
10 misleading.  (*See* 4AC ¶ 220.)  The Rosette Defendants are prepared to defend
11 against that assertion, even though they maintain that W&C does not adequately
12 allege that the statement is false or misleading, and a full factual record will prove
13 that the statement is not.  But W&C's case crosses into sanctionable territory when
14 the 4AC alleges that those words buried in a biography caused Quechan's new
15 leadership to (i) sour on W&C, (ii) evaluate how to avoid paying an incredibly high
16 contingency fee, (iii) decide that Quechan needed new legal representation, and
17 (iv) ultimately ask Rosette, LLP to take over the engagement for a tiny fraction of
18 what W&C was charging so that Rosette could quickly and efficiently obtain a new
19 gaming compact with the State of California before the Legislature adjourned in a
20 few months.  The crux of W&C's theory is that Quechan's President and
21 Councilmember White saw the challenged statement in the biography, were
22 deceived by the statement, and this caused the Tribe to fire W&C, thereby
23 depriving W&C of a $6.3 million fee it that claims it would have earned had it not
24 been fired.  (*See id.* ¶ 223.)

25       Recent discovery confirmed that W&C had no evidence that any of these
26 events actually occurred—other than W&C's firing—when it filed this case.  It has
27 no evidence now, either.  W&C has no evidence that any decision-makers at
28 Quechan reviewed, heard, or were deceived by the statement before they fired

- 4 -    MEM. ISO MOT. FOR SANCTIONS
          17-CV-01436 GPC MSB

W&C.  (*See* Ex. A at 19–21, Response to Rog No. 3; Ex. B at 58–59, Response to RFP No. 2.)  W&C has no evidence that the Rosette Defendants sent a copy of the challenged statement to Quechan's then-President or Councilmember White.  (*See* Ex. A at 34–37, Response to Rog No. 11; Ex. B at 68–72, Response to RFP Nos. 8–9.)  W&C has no evidence that Mr. Rosette said anything related to the challenged statement when he met with President Escalanti and Councilmember White.  (*See* Ex. A at 37–39, Response to Rog No. 12; Ex. B at 68–72, Response to RFP Nos. 8–9.)  In fact, W&C has no evidence that anyone else—***anywhere***—reviewed, heard, or was moved to act or refrain from acting by the challenged statement.  (*See* Ex. A at 22–23, Response to Rog No. 4; Ex. B at 58–59, Response to RFP No. 2.)

W&C also lacked any evidence of causation or damages when it filed the 4AC.  W&C has no evidence—other than its self-serving allegations—for its claim that the firm was days from executing a new compact when it was terminated.  (*See* Ex. A at 26–32, Response to Rog Nos. 8–9; Ex. B at 65–66, Response to RFP No. 6.)  W&C has no evidence that it was terminated by Quechan because of the statement.  (*See* Ex. A at 39–43, Response to Rog No. 13; Ex. B at 68–72, Response to RFP Nos. 8–9.)  W&C cannot identify a single client or prospective client that fired W&C, limited the scope of W&C's work, or declined to hire W&C because of the challenged statement.  (*See* Ex. A at 23–24, Response to Rog No. 5; Ex. B at 58–59, Response to RFP No. 2.)  W&C does not have evidence that it suffered ***any*** damages because of the challenged statement.  (*See* Ex. A at 43–44, Response to Rog No. 14; Ex. B at 72–73, Response to RFP No. 10.)  W&C's wholesale lack of evidence underscores the baselessness of this lawsuit.

Worse still, W&C has continued to make these unsubstantiated allegations after multiple witnesses—including Quechan's President, Councilmember White, and the State's lead negotiator—offered sworn testimony directly contradicting W&C's speculation.  Rule 11 provides for sanctions against litigants and lawyers who persist in making unsupported allegations after learning that they are

1  unwarranted or no longer tenable.  *See* Fed. R. Civ. P. 11(b) Advisory Committee's
2  Note (1993) (sanctions appropriate for "reaffirming to the court and advocating
3  positions . . . after learning that they cease to have any merit").  Here,
4  Councilmember White and President Escalanti provided declarations explaining
5  that before firing W&C, Quechan was: (i) frustrated with the pace and cost of
6  W&C's services, (ii) actively seeking new representation, and (iii) "was impressed
7  with Rosette's experience in negotiating compacts in California," and the fact that
8  he "was willing to work on both the Arizona and California compacts for 1/5 or less
9  of the monthly fees [Quechan was] paying to [W&C] without any additional
10 contingency fee."  (*See* Dkt. No. 29-2 at ¶¶ 4–15; *see also* Dkt. No 29-3.)  Neither
11 Ms. Williams nor Mr. Cochrane witnessed these events, and they have no evidence
12 to undermine Councilmember White's and President Escalanti's testimony.  They
13 filed the 4AC anyway, reasserting their groundless allegations that W&C's
14 termination had something to do with Mr. Rosette's attorney biography.

15     W&C's prayer for damages, which amounts to three times the disputed
16 contingency fee from Quechan, also lacks factual and legal support.  W&C claims
17 that its former client was on the brink of executing a new compact with the State of
18 California, and likewise that W&C was on the brink of receiving a windfall
19 contingency fee of over $6 million when it was fired.  (*See, e.g.*, 4AC ¶ 3.)  Not so.
20 Well before W&C filed the 4AC, the Court had already ruled that W&C *was not*
21 *entitled to the fee* when it was terminated.  (*See* Dkt. No. 89 at 15 ("The Court
22 cannot agree with W&C that at the time Quechan discharged W&C, Quechan was
23 'entitled'—under any understanding of that term—to any of the net recovery it
24 obtained as a result of the compact it signed with California.").)  And W&C was
25 not days away from closing on a new compact.  The Declaration of Joginder
26 Dhillon—the State's lead compact negotiator and now a Superior Court judge—
27 specifically explained that when W&C was terminated, "there were significant
28 unresolved substantive and procedural issues relating to the compact" and that the

1  draft compact had not yet been reviewed in detail by the State's Indian Gaming
2  Law Section or even the Tribe. (Dkt. No. 50-4 at ¶ 19.)[2] One of those significant,
3  unresolved issues, was Quechan's cessation of revenue sharing payments to the
4  tune of $4 million. (*See id.* ¶¶ 9, 19.)

Based on its discovery responses, it is apparent that W&C had no evidence linking the challenged statement to any concrete injury when it initiated this case. It subsequently learned that no link could be established, but W&C continued to assert its frivolous false advertising claim regardless of the facts or the law.

### 2. The 4AC Was Filed to Harass the Rosette Defendants

W&C's outward conduct, both throughout the litigation and in filing the 4AC attests to its objective bad faith and improper purpose. "Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Townsend*, 929 F.2d at 1362. When a complaint is at issue, frivolousness is a prerequisite for finding an improper purpose, *id.*, and as explained above, that test is more than met here.

Other evidence of bad intent abounds. First and foremost, W&C has repeatedly violated this Court's orders by reasserting allegations that the Court struck or ordered be removed from the pleadings—which is grounds for sanction by itself. *See Corrigan v. Dale*, 401 Fed. App'x. 233, 234 (9th Cir. Oct. 27, 2010) (affirming sanctions for harassing filing of "successive complaints based on previously-rejected propositions"). The Court identified this pattern when assessing the adequacy of the Third Amended Complaint. It highlighted multiple instances when W&C reasserted identical claims and allegations that the Court already rejected. (*See, e.g.*, Dkt. No. 217 at 2 (noting Court has "stricken some of [W&C's] allegations only to have them reappear in successive complaints"); *see*

---

[2] The Tribe's President had the same understanding. (*See* Dkt. No. 29-2 at ¶ 19.)

*also id.* at 25 n.4.)  And it ordered that W&C "refile their complaint omitting [the stricken] allegations as well as the . . . claims that have been dismissed." (*Id.* at 37.)

W&C did not heed those warnings and specific directives.  Allegations related dismissed claims—and those claims alone—again appear in the 4AC.  For example, the Court specifically directed W&C to remove allegations about the Rosette Defendants' assistance to the Pauma Tribe in 2011.  (*Id.* at 27.)  Those allegations reappear in the 4AC.  (*See* 4AC ¶¶ 151–64.)  The Court dismissed all claims against former defendant Richard Armstrong with prejudice (Dkt. No. 217 at 37), and he is not alleged to have had *any* role in the events associated with W&C's Lanham Act claim.  Yet the 4AC repeatedly accuses him of wrongdoing, including that he supposedly "conspired and committed to interfere with any and all future contracts secured by Cheryl Williams and Kevin Cochrane [. . .] through the use of fraudulent means."  (4AC ¶ 124; *see also* ¶¶ 154, 156.)  The 4AC also reasserts allegations about the Rosette Defendants' dealing with LaPena Law, even though there is no connection between those allegations and W&C's Lanham Act claim.  (*See id.* ¶¶ 141–50 (alleged "Tortious Interference at La Pena Law").)  Even W&C admits that its allegations about Ms. LaPena are irrelevant to its claim.  (*See* Ex. B at 75–76, Response to RFP No. 12 (objecting that communications related to Ms. LaPena or the LaPena Law Corporation "are not relevant to any party's claims or defenses").)  And the 4AC continues to refer to a vague conspiracy involving online lending (*see* 4AC ¶ 169), despite the Court's repeated rejection of RICO claims based on W&C's unsubstantiated accusations on the subject.  (*See, e.g.*, Dkt. No. 217 at 36 n.5.)[3]

---

[3] As the Court previously explained, the alleged "conspiracy is kind of like a witch's brew of sorts which combines a bunch of allegations of vile behavior on the part of Mr. Rosette, and that this conspiracy becomes the convenient place to dump it all." (Dkt No. 169 at 39.)

Sanctions are proper in situations like these, when counsel attempts to "revive[] dismissed and struck claims and allegations" in violation of a court's order. *Johnson v. GMRI, Inc.*, 2007 WL 1758849, at *6 (E.D. Cal. June 18, 2007) (imposing $5,000 sanction on plaintiffs' counsel where amended complaint "contained word-for-word identical dismissed and struck claims and allegations"); *see also Rey v. Countrywide Home Loans, Inc.*, 2011 WL 4103704, at *4 (D. Haw. Sept. 13, 2011) (awarding Rule 11 sanctions for reasserting previously dismissed claims); *Metz v. Unizan Bank*, 655 F.3d 485, 487 (6th Cir. 2011) (affirming Rule 11 sanctions for refiling dismissed claims in contravention of court order).

W&C's vicious tone and "campaign of personal attacks" is yet another reason to sanction Ms. Williams, Mr. Cochrane, and their eponymous firm.[4] *See Lockheed Martin Energy Sys., Inc. v. Slavin*, 190 F.R.D. 449, 458 (E.D. Tenn. 1999) (levying sanctions and ordering a written apology for filing "pleadings and other motions and papers [that] contain vicious personal and uncivil attacks against opposing counsel and Plaintiff, [which] were motivated by an intent to harass, and were filed in bad faith"); *see also Bishop v. City of Henderson*, 49 F. App'x 706, 708 (9th Cir. 2002) (holding that sanctions should be issued for "continued personal attacks" and "the unnecessary filing of frivolous motions"); *Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 275 (N.D.N.Y. 2008) (finding scurrilous allegations that were irrelevant to legal claims at issue to violate Rule 11); *Hoatson v. New York Archdiocese*, 2007 WL 431098, at *15–16 (S.D.N.Y. Feb. 8, 2007) (sanctioning attorney under Rule 11 for including irrelevant and inflammatory allegations);

---

[4] During the early pendency of this case, the Ninth Circuit put W&C on notice in one of its cases for Pauma that the aggressive tone of its written filings is not within the bounds of permissible advocacy. *See, e.g.*, Video of November 9, 2017 Oral Argument in *Casino Pauma v. NLRB* (9th Cir. CV No. 16-70397) at 14:09 (the Hon. Marsha A. Berzon describing the tone of W&C's appellate brief as "disturbing"), *available at* https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000012498, last accessed November 23, 2019.

*Ultracashmere House, Ltd. v. Nordstrom, Inc.*, 123 F.R.D. 435, 437 (S.D.N.Y. 1988) (awarding Rule 11 sanctions after party filed "voluminous papers . . . that indulge[d] in repeated personal attacks on the respondent and its counsel."). The Rosette Defendants will not repeat all of W&C's insults again here, but it is difficult to find a filing in this case that does not include some irrelevant aspersion on the Rosette Defendants, Mr. Armstrong, or counsel in this case.[5] This approach to litigation is inconsistent with Ms. Williams' and Mr. Cochrane's professional obligations, and it is inconsistent with Rule 11.

### B. W&C Unreasonably and Vexatiously Multiplied the Proceedings

Sanctions under Section 1927 or the Court's inherent authority are also appropriate in light of W&C's unreasonable and vexatious multiplication of these proceedings. *See* 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.*

The conduct described above is equally sufficient to meet the Ninth Circuit's test for a finding of bad faith, improper motive, or reckless disregard for W&C's duty to the court. *See Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000); *see also In re Keegan Mgmt. Co. Sec. Litig.*, 78

---

[5] *See, e.g.*, SAC ¶ 105, TAC ¶ 105, 4AC ¶ 105 (alleging that Mr. Rosette has a "well-documented history of exacerbating intra-tribal strife"); *see also* TAC ¶¶ 123, 228(a), 228(2nd a) (accusing Mr. Rosette and Mr. Armstrong of maligning Mr. Cochrane on the basis of sexual orientation); Dkt. No. 74 at 10 (alleging that Mr. Rosette conspired to "oust" W&C from Quechan "through deception, extortion/threats to reputation, false attribution of accomplishments, scheming to set up an illegal payday lending operation using the Tribe as a shield from liability, and a reckless disregard for the interests of the [] Quechan tribal members"); Dkt. No. 74 at 20 (accusing Mr. Rosette of having a "personal vendetta"); Dkt. No. 151 at 8 (describing Mr. Rosette as an "unhinged individual"); Dkt. No. 207-1 at 26 (calling Mr. Rosette a "fraudster").

F.3d 431, 436 (9th Cir. 1996) (holding that counsel's conduct is in bad faith if it is both reckless and frivolous). Simply put, there should have been no need for this Motion. The Court's instructions were clear about what W&C was to include and exclude from the 4AC, just as the Court's instructions were clear in previous orders, but still ignored by W&C. And, like Rule 11 sanctions, Section 1927 sanctions are appropriate when an attorney "persist[s] in pressing the same deficient allegations" in an amended complaint. *Stewart v. City of Chicago*, 622 F. Supp. 35, 37 (N.D. Ill. 1985). Courts also routinely exercise their discretion to award Section 1927 sanctions against attorneys who extend the proceedings after it is clear that their allegations are meritless and there is "no evidence to support [the] claims." *Ltd. v. Compal Elecs. Inc. Grp.*, 2015 WL 11570939, at *6 (S.D. Cal. Dec. 11, 2015). W&C's filing of the 4AC violates Section 1927, just as it violates Rule 11.

### III. Conclusion and Requested Relief

The Rosette Defendants respectfully request that the Court award sanctions against Ms. Williams, Mr. Cochrane, and their law firm under Rule 11, 28 U.S.C. § 1927, or the Court's inherent authority. The Rosette Defendants request sanctions in the form of a written apology, a $25,000 total donation by W&C, Ms. Williams, and Mr. Cochrane, to the Native American Rights Fund or another charitable organization with a similar mission, and monetary sanctions to compensate the Rosette Defendants for the fees and costs they incurred in preparing this Motion. If awarded, the Rosette Defendants will submit a separate application for fees and costs. The Rosette Defendants also request that the Court order W&C to refile the 4AC without the allegations referenced in this Motion.

Dated: January 10, 2020

Respectfully Submitted,

MATTHEW W. CLOSE
BRITTANY ROGERS
KATE M. IKEHARA
O'MELVENY & MYERS LLP


By: */s/ Matthew W. Close*
      Matthew W. Close

Attorneys for Defendants Robert Rosette, Rosette & Associates, PC, Rosette, LLP
Email: mclose@omm.com