1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  WILLIAMS & COCHRANE, LLP,              Case No.:  17-CV-01436-GPC-MSB

12                           Plaintiff,    **ORDER GRANTING IN PART AND**
                                           **DENYING IN PART MOTION FOR**
13  v.                                     **JUDGMENT ON THE PLEADINGS**

14  ROBERT ROSETTE; ROSETTE &
    ASSOCIATES, PC; ROSETTE, LLP;          **[ECF No. 235];**
15  QUECHAN TRIBE OF THE FORT
    YUMA INDIAN RESERVATION, a             **GRANTING MOTION TO FILE**
16  federally-recognized Indian tribe; and **DOCUMENTS UNDER SEAL**
    DOES 1 THROUGH 100,
17
                             Defendants.   **[ECF No. 221];**
18
19                                         **DENYING MOTION FOR**
20                                         **SANCTIONS**
21
22                                         **[ECF No. 254].**

23       Before the Court is Plaintiff/Counter-Defendant Williams & Cochrane's ("W&C")

24  motion for judgment on the pleadings of Defendant/Counter-Plaintiff Quechan Tribe of

25  Fort Yuma Indian Reservation's ("Quechan" or "the Tribe") counterclaims in the answer

26  to Plaintiff's fourth amended complaint.  ECF No. 235.  W&C filed an opposition on

27

28                                         1

January 3, 2020.  ECF No. 248.  Plaintiff filed a reply on January 17, 2020.  ECF No. 258.  Based on the reasoning below, the Court **DENIES** the motion.

Additionally, before the Court is Defendant/Counter-Plaintiffs Robert Rosette, Rosette & Associates, Rosette, LLP (collectively, "Rosette") motion for sanctions against W&C.  ECF No. 254.  W&C filed an opposition on February 14, 2020.  ECF No. 267.  Rosette filed a reply on February 28, 2020.  ECF No. 268.  Based on the reasoning below, the Court **DENIES** the motion.[1]

## FACTUAL BACKGROUND

The parties are familiar with the factual background, which is described at length in the Court's prior orders (e.g., ECF No. 216) and does not bear repeating here.[2]

In most relevant part, W&C represented Quechan in negotiating a new gaming compact with the State of California.[3]  ECF No. 231 ¶ 1.[4]  In September 2016, Quechan hired W&C for representation in these negotiations and signed an Attorney-Client Fee Agreement ("Fee Agreement") on September 29, 2016.  *Id.* ¶ 23.  The Tribe alleges that W&C misrepresented what it would be able to achieve and misrepresented the status of negotiations with the State.  *Id.* ¶¶ 2-3.

---

[1] W&C has also filed a motion to seal portions of the 4AC and exhibits 10 through 19.  ECF No. 221. W&C states that "the redacted allegations and exhibits in the Fourth Amended Complaint all fall within the three categories of protected information the Court already found to be worthy of protection," and also notes that these allegations and exhibits have been filed previously under seal in connection with the third amended complaint in this case.  ECF No. 221 at 2.  The Court previously granted the motion to seal with respect to the first, second and third amended complaints and accompanying exhibits on the basis that the information therein was related to either attorney-client privileged and/or confidential information, attorney work product, and/or confidential negotiation communications with the State of California.  ECF Nos. 142, 158, 177.  Accordingly, the Court again **GRANTS** W&C's motion to seal.
[2] The Court draws on the factual allegations asserted in the "answer counterclaim" (properly, "counterclaim in reply") (ECF No. 179) but notes that the operative complaint is now the fourth amended complaint, which was filed on September 25, 2019.  ECF No. 220.
[3] The factual allegations recited herein are taken from Quechan's Counterclaims.  ECF No. 231.
[4] Unless otherwise noted, the paragraph numbers refer to the paragraphs in the Counterclaims section of Quechan's answer to the fourth amended complaint, which begins on ECF No. 231 at 27.

2

1      In June 2017, the Tribe hired Rosette to represent the Tribe in the negotiations

2  process.  *Id.* ¶ 43.  On June 26, 2017, the Quechan President Keeny Escalanti sent a letter

3  to W&C terminating the firm ("June 26th letter").  *Id.* ¶ 44.  Following the termination,

4  W&C did not give the Tribe or Rosette the Tribe's full case file.  *Id.* ¶ 46.  In August

5  2017, Rosette concluded negotiations with the State on behalf of the Tribe.  *Id.* ¶ 52.

6      The instant lawsuit was filed by W&C alleging that the Tribe had breached the Fee

7  Agreement by refusing to pay W&C's contingency fee, alleging fraud and intentional

8  interference claims against the Quechan Defendants.  *Id.* ¶ 53.

9                          **PROCEDURAL BACKGROUND**

10      Quechan first filed its counterclaims in its answer to the first amended complaint

11  on June 21, 2018.  ECF No. 94.  Quechan brought the following counterclaims: (1)

12  breach of fiduciary duty; (2) breach of implied covenant of good faith and fair dealing;

13  (3) negligence; (4) breach of contract; (5) unfair competition under Cal. Bus. & Prof.

14  Code § 17200 et seq.; (6) recoupment and/or setoff.  *Id.*  W&C filed a motion to strike on

15  June 22, 2018.  ECF No. 95.  The Court denied the motion to strike under Rule 12(f) on

16  August 20, 2018.  ECF No. 135.

17      On September 4, 2018, W&C filed a motion to dismiss Quechan's answer to

18  Plaintiff's first amended complaint and counterclaims under Rule 12(b)(1) and Rule

19  12(b)(6).  The Court denied this motion to dismiss and noted that Rule 12(g)(2) weighed

20  in favor of denying W&C's motion to dismiss since it failed to raise its arguments in its

21  prior Rule 12(f) motion.

22      On September 25, 2019, W&C filed a fourth amended complaint.  ECF No. 220

23  ("4AC").  On October 8, 2019, Quechan filed an answer to the fourth amended

24

25

26

27

28

1   complaint.  ECF No. 231 ("Answer").  On October 22, 2019, Plaintiff filed a pleading

2   captioned as an "[Amended]" Motion for Judgment on the Pleadings.  ECF No. 235 at 1.[5]

3                                **DISCUSSION**

4   **I.      MOTION FOR JUDGMENT ON THE PLEADINGS**

5           **a.  Rule 12(g)(2)**

6           The Court has elected to decide W&C's motion on the merits notwithstanding the

7   limitations on further motions contained in Rule 12(g)(2).  W&C addresses the Court's

8   prior order denying W&C's prior motion to dismiss the counterclaims under Rule

9   12(b)(6) (ECF No. 173) and argues that motions made under Rule 12(c) are exempt from

10  the Rule 12(g) consolidation requirement.  ECF No. 235-1 at 16.  However, "Rule 12(g)

11  is written in broad terms and requires consolidation of Rule 12 defenses and objections

12  whenever a party makes a motion under 'this rule.'"  Wright & Miller § 1388 Application

13  of Rule 12(g).

14          Further, in its prior order, the Court stated it did not believe that "round after round

15  of Rule 12 motions for claims and counterclaims is an efficient use of the Court's

16  resources, when those motions could have been consolidated into one motion."  ECF No.

17  173 at 13-14. Nevertheless, the Court will address the arguments for this motion on the

18  merits to narrow the issues and provide further guidance to the parties in their ongoing

19  litigation of the case.

20          **b.  Legal Standard**

21           "After the pleadings are closed—but early enough not to delay trial—a party may

22  move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). A motion for judgment on

---

[5] The Court initially struck this pleading on the basis that W&C had not previously petitioned the Court for leave to amend.  ECF No. 238.  On December 5, 2019, the Court struck its prior order, recognizing that the pleading was not an amended motion, but instead a new standalone motion in response to the fourth amended complaint, and reinstated ECF No. 235 as the operative motion for judgment on the pleadings.  ECF No. 244.

1    the pleadings under Rule 12(c) is evaluated under a "substantially identical" standard to

2    that of a Rule 12(b)(6) motion to dismiss, "because, under both rules, a court must

3    determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to

4    a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation

5    and internal quotation marks omitted); *see also Hason v. Los Angeles Cty.*, 2013 WL

6    12377029, at *1 (C.D. Cal. 2013).

7         Consequently, a judgment on the pleadings is proper when the moving party

8    clearly establishes on the face of the pleadings that no material issue of fact remains to be

9    resolved and that it is entitled to judgment as a matter of law. *Doleman v. Meiji Mut. Life*

10   *Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). If "the defendant raises an affirmative

11   defense in his answer it will usually bar judgment on the pleadings." *Gen. Conference*

12   *Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887

13   F.2d 228, 230 (9th Cir. 1989) (hereinafter "*Seventh-Day Adventist*"). When considering a

14   motion under Rule 12(c), the court "must accept all factual allegations in the complaint as

15   true and construe them in the light most favorable to the non-moving party." *Fleming v.*

16   *Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).[6]

17

18 _____

19 [6] The Court first notes that the counterclaims from Quechan's answer to Plaintiffs' first amended complaint are still the operative counterclaims. Plaintiff's answered these counterclaims on December

20   10, 2018. ECF No. 179. Quechan noted that it re-filed the identical counterclaims "[o]ut of an abundance of caution, to ensure compliance with Local Rule 15-1." ECF No. 231 at 27. Local Rule 15-

21   1 states, "Every pleading to which an amendment is permitted as a matter of right or has been allowed by court order, must be complete in itself without reference to the superseded pleading." L. Civ. R. 15-

22   1. The Court appreciates Quechan's abundance of caution, but notes that the counterclaims from the answer to the first amended complaint (ECF No. 94) are still the operative counterclaims since an

23   amended complaint does not moot the counterclaims filed in the answer to the original complaint. The Court has explained as much in this very case: "A plaintiff's filing of an amended complaint does not

24   moot a counterclaim alleged within an answer to the original complaint." *Williams & Cochrane, LLP v.*

25   *Quechan Tribe of Fort Yuma Indian Reservation*, 2018 WL 3970094, at *7 (S.D. Cal. Aug. 20, 2018)

26   (citing *Hayden v. Ariz. Pool & Fountain Guys, LLC*, 2016 WL 9456363, at *1 (D. Ariz. Aug. 2, 2016)

27   (because "[w]hile an amendment to a complaint requires revisions to answer, it does not necessitate revisions to a counterclaim," counterclaims are not "mooted by [an] Amended Complaint")).

28

### c. Breach of fiduciary duty

Quechan's allegations center on W&C's representation of the Tribe between September 2016, when the parties executed the Attorney-Client Fee Agreement ("Fee Agreement"), and June 2017, when Quechan terminated W&C. Throughout this period of representation, Quechan alleges that W&C breached its fiduciary duty by acting against the Tribe's interest while representing the tribe in negotiations with the State – namely, by failing to effectively negotiate with the State, by dragging out negotiations to continue to collect the $50,000 monthly payments, and by making false representations to the Tribe about its performance of duties. W&C moves to dismiss this claim on the basis that Quechan has failed to meet the requisite pleading standard.

The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995). "The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity." *California Self-Insurers' Sec. Fund v. Superior Court*, 19 Cal. App. 5th 1065, 1071 (Ct. App. 2018) (internal citations omitted). "The dealings between practitioner and client frame a fiduciary relationship. The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests. Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud." *Steel v. Stoddard*, 2013 WL 12064547, at *2 (S.D. Cal. May 3, 2013) (citing *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 188-89 (1971)).

In *Wolk v. Green*, the plaintiff alleged that the attorney breached his fiduciary duty by "charging for services he never intended to provide, and in fact, did not provide, and by demanding increasing sums and failing to take any useful action on her behalf." 516

17-CV-01436-GPC-MSB

F. Supp. 2d 1121, 1130 (N.D. Cal. 2007).  Similarly, Quechan alleges that W&C purposefully delayed the process of negotiating with the State in order to stretch out its representation – specifically, by sitting on "the initial discussion draft compact that the State provided . . . for over four months" – in order to continue to receive the flat monthly fee, and that ultimately W&C failed to address the Tribe's most significant concern – the issue of the $4 million underpayment to the State.  ECF No. 248 at 17-18.  Quechan further alleges that W&C made misrepresentations regarding its work on behalf of Quechan, and that these misrepresentations are actionable statements.  *Id.* at 18-19.  On the question of harm, Quechan states that it sustained harm by overpaying W&C for its "incompetent and inefficient work" on the compact negotiations at the cost of $50,000 per month.  ECF No. 248 at 19.

W&C counters that these allegations are non-actionable since they constituted opinions pertaining to future events rather than a past or present state of affairs, and the Attorney-Client Fee Agreement ("Fee Agreement") between W&C and Quechan expressly disclaimed promises.  ECF No. 245-1 at 19.  In support, W&C cites *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594 (2014).  The *Graham* court held that property appraisals did not constitute fraudulent concealment since they are merely opinions.  However, as Quechan points out, the *Graham* court noted that in the instant case "there is no fiduciary relationship between the borrower and lender."  *Graham*, 225 Cal. App. 4th at 607.  On the other hand, here, W&C owed a fiduciary duty to Quechan as its client.

Ultimately, "[a]n attorney's wilful failure to render the service for which he was retained and his assumption of a position contrary to his client's interests violates his duty of fidelity to his client."  *Wolk*, 516 F. Supp. 2d at 1130.  Quechan's allegations, if proven, show such a willful failure by W&C.  Plaintiff has therefore sufficiently alleged a breach of fiduciary duty.

/ / /

17-CV-01436-GPC-MSB

### d. Breach of implied covenant of good faith and fair dealing

Quechan alleges that W&C breached the implied covenant of good faith and fair dealing by failing to perform under the Fee Agreement, despite continuing to collect the monthly $50,000 fee from Quechan while deliberately elongating the negotiation process and failing to resolve critical issues in the negotiations with the state – namely, the issue of Quechan's underpayment to the state.  ECF No. 231 ¶ 69.  Rather than accepting these factual allegations as true, W&C improperly raises a number of factual disputes with regard to Quechan's allegations claiming that (1) the repayment issue was not an issue during the term of W&C's representation; and (2) the length of the contract term and W&C's productivity during this term do not constitute a breach.

" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' "  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992) (citing Rest. 2d Contracts, § 205).  "This covenant [of good faith and fair dealing] not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose."  *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960) (citing *Bewick v. Mecham*, 26 Cal. 2d 92, 99 (1945)).  "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."  *Carma Developers*, 2 Cal. 4th at 373.

Quechan alleges that W&C could have finished its negotiations within four months "had it acted with the diligence of a fiduciary" and not deliberately dragged out negotiations to maximize its fees.  ECF No. 248 at 20-21.  Neither party has cited, and the Court has not found, any prior cases applying this covenant of good faith and fair dealing doctrine to an agreement between an attorney and her client.  However, applying the general standard to the case, the Court finds that the facts as alleged by Quechan in its

17-CV-01436-GPC-MSB

1    counterclaims plausibly make out a claim that W&C failed to follow through on its "duty

2    to do everything that the contract presupposes that [it] will do to accomplish its purpose."

3    *Harm*, 181 Cal. App. 2d at 417.

4         **e. Negligence**

5         Quechan alleges that W&C's conduct as described above also forms the basis for a

6    negligence claim.  "The failure to provide competent representation in a civil or criminal

7    case may be the basis for civil liability under a theory of professional negligence."

8    *Filbin v. Fitzgerald*, 211 Cal. App. 4th 154, 165 (2012).  "The elements of a legal

9    malpractice action are: (1) the duty of the attorney to use such skill, prudence, and

10   diligence as other members of his profession commonly possess and exercise; (2) a

11   breach of that duty; (3) a proximate causal connection between the negligent conduct and

12   the resulting injury; and (4) actual loss or damage resulting from the attorney's

13   negligence." *Steel v. Stoddard*, 2013 WL 12064547, at *2 (S.D. Cal. May 3, 2013)

14   (citations omitted).  "To prevail in a legal malpractice action, simply showing the

15   attorney erred is not enough." *Filbin*, 211 Cal. App. 4th at 166 (2012).  "The plaintiff

16   must also establish that but for the alleged malpractice, settlement of the underlying

17   lawsuit would have resulted in a better outcome." *Id.*  The purpose of the "but for"

18   requirement is "to safeguard against speculative and conjectural claims." *Viner v. Sweet*,

19   30 Cal. 4th 1232, 1241 (2003).  "It serves the essential purpose of ensuring that damages

20   awarded for the attorney's malpractice actually have been caused by the malpractice." *Id.*

21        On duty, Quechan has sufficiently alleged – and neither party disputes – that W&C

22   owed Quechan a duty as its attorney. *See Borisoff v. Taylor*, 33 Cal. 4th 523, 529-30

23   (2004).  W&C largely disputes the remaining prongs of the negligence test with respect

24   to Quechan's claims regarding the return of the case file; however, Quechan incorporated

25   a wider universe of allegations into its claim regarding negligence.  ECF No. 231 ¶ 74.

26   Specifically, Quechan alleges that W&C failed to diligently pursue negotiations on its

27

28

behalf, filed to provide a draft compact on Quechan's behalf for over four months, failed to address the underpayment issue, and failed to transmit the case file after Quechan's request.  ECF No. 248 at 22-23.  Quechan argues that "but for" W&C's negligence, Quechan would not have incurred the legal fees and costs it did during the course of W&C's representation and that Quechan continues to be damaged as a result of W&C's continued refusal to transmit the case file to Quechan and that it has incurred legal expenses as a result of W&C's refusal.  ECF No. 248 at 24.

A plaintiff claiming negligence against her attorney need only "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."  *Ortega v. Kmart Corp.*, 26 Cal.4th 1200, 1205 (2001).  Again, W&C raises issues related to potential factual disputes – namely, whether W&C issued a "formal file request" to W&C and whether the documents that W&C sent to Quechan were sufficient.  However, on this motion, the Court is required to consider the facts in the light most favorable to the non-moving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (when considering a motion under Rule 12(c), the court accepts all factual allegations in the complaint as true).  Here, considering the facts in favor of Quechan and disregarding W&C's factual claims, the Court finds that Quechan has offered sufficient evidence that it would not have incurred the financial costs that it did but for W&C performance with respect to negotiations with the State and W&C's case file.

## f.  Breach of contract

To properly plead breach of contract, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant."  *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (citing *Progressive West Ins. Co. v. Super. Ct.,* 135 Cal.App.4th 263, 281, 37 Cal.Rptr.3d 434 (2005)).  Here, Quechan alleges that W&C breached the Fee

10

1    Agreement based on its performance, specifically noting that Section 12 of the Fee

2    Agreement states that the "Client may have access to the Client's case file upon request

3    at any reasonable time.  At the end of the engagement, Client may request the return of

4    Client's case file."  ECF No. 231 ¶ 85.  W&C argues that Quechan repudiated the

5    contract prior to requesting the case file, that this breach was immaterial, and that

6    Quechan's damages are not recoverable since they were unforeseeable, uncertain, and

7    were avoidable.  Specifically, W&C notes that President Escalanti mailed the notice of

8    termination prior to Rosette's request for the "last compact" and noting that the "formal

9    file request is forthcoming."  ECF No. 235-1 at 28.  W&C argues that Quechan did not

10   sustain any harm since Quechan obtained the "full benefit of the Fee Agreement" and

11   spent less on paying for Rosette's legal services than it "withheld" from W&C during the

12   final month of W&C's term of representation.  *Id.*  However, this factual dispute that

13   W&C raises is "ordinarily a question for the trier of fact" and therefore would not be

14   appropriately considered on a motion for judgment on the pleadings.  *Whitney Inv. Co. v.*

15   *Westview Dev. Co.*, 273 Cal. App. 2d 594, 601 (Ct. App. 1969).  Considering the facts in

16   the light most favorable to Quechan, the Court finds that Quechan has adequately plead

17   this claim to survive W&C's motion.

18            **g.  Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq.**

19            Quechan alleges that W&C has breached the California Unfair Competition Law

20   ("UCL") § 17200.  In order to state a claim for a violation of UCL, Quechan must allege

21   that W&C committed a business act that is either "fraudulent, unlawful, or

22   unfair."  *Vargas v. HSBC Bank USA, N.A.*, 2012 WL 3957994, at *8 (S.D. Cal. Sept. 10,

23   2012) (citing *Levine v. Blue Shield of Cal.,* 189 Cal.App.4th 1117, 1136 (2010)).  The

24   purpose of the law is "to protect both consumers and competitors by promoting fair

25   competition in commercial markets for goods and services."  *Kasky v. Nike, Inc.,* 45 P.3d

26   243 (Cal. 2002).

27

28

1    W&C argues that (1) Quechan does not have standing to make this claim; (2)

2    Quechan's allegations are not sufficiently particular; (3) the safe harbor provision

3    applies; (4) the monetary remedies are unavailable; and (5) that equity bars relief.  The

4    Court finds Quechan does not have standing and has not provided sufficiently particular

5    allegations to support a Section 17200 cause of action.

6    As to standing, Section 17204 provides that a claim may be brought by "a person

7    who has suffered injury in fact and has lost money or property as a result of the unfair

8    competition."  UCL § 17204.  Meanwhile, Section 17201 defines "person" as "natural

9    persons, corporations, firms, partnerships, joint stock companies, associations, and other

10    organizations of persons."  UCL § 17201.  California courts have held that Section 17200

11    does not apply to governmental entities even when those entities are acting in a

12    nongovernmental capacity.  *See People for Ethical Treatment of Animals, Inc. v.*

13    *California Milk Producers Advisory Bd.*, 125 Cal. App. 4th 871 (Cal. App. 2005).  Indian

14    tribes enjoy the status of a sovereign whose sovereignty substantially predates the

15    Constitution.  *United States v. Oregon*, 657 F.2d 1009, 1013 (9th Cir.1981) In common

16    usage, the term 'person' does not include the sovereign, statutes employing the phrase are

17    ordinarily construed to exclude it. *United States v. Cooper Corp.*, 312 U.S. 600, 604

18    (1941).

19    To support their position that the Quechan tribe is a "person", Quechan directs the

20    Court's attention to an unpublished decision, *Sonoma Falls Developer, LLC v. Dry Creek*

21    *Rancheria Band of Pomo Indians*, No. 3:01-cv-04125-VRW (N.D. Cal. filed July 24,

22    2002), which itself cites *Chemehuevi Indian Tribe v. California State Bd. of Equalization*,

23    757 F.2d 1047, 1054 (9th Cir. 1985).  *Chemehuevi* is distinguishable in that it decided a

24    tribe was a "person" under a tobacco tax law and not Section 17200.  Moreover, the

25    definition of "person" under that tax law is far more expansive then the definition

26    provided by the UCL. The applicable tax law in *Chemehuevi* states:

27

28

12

17-CV-01436-GPC-MSB

> "Person" includes any individual, firm, partnership, joint venture, limited liability company, association, social club, fraternal organization, corporation, estate, trust, business trust, receiver, trustee, syndicate, *this state, any county, city and county, municipality, district, or other political subdivision* of the state, or any other group or combination acting as a unit.

Cal. Rev. & Tax. Code § 30010 (emphasis added).  The definition of "person" in this tobacco tax law explicitly encompasses "this state, any county…or other political subdivision."  In addition, the definition uses the expansive modifier "includes" which is one of enlargement, not of limitation.  *Chemehuevi*, 757 F.2d at 1054.  Based upon the sovereign status of an Indian Tribe and the California courts' interpretation of "person" under Section 17200, the Court finds that the Quechan Tribe lacks standing to proceed on a UCL claim.

Further, on the particularity of allegations, "[a] plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Quechan has alleged that W&C has (1) violated California Rules of Professional Conduct 3-700(D)(1), and (2) breached its fiduciary duties to Quechan by, *inter alia*, dragging out negotiations in order to maximize monthly fees.  Quechan also alleges that it is entitled to injunctive relief and restitution due to W&C's refusal to transmit the case file.

As to the violation of the Rules of Professional Conduct ("Rules"), Quechan does not offer any authority which relies on the Rules as a basis for a UCL claim under the "unlawful" prong.  The express purpose for the Rules is "to regulate professional conduct of lawyers through discipline" (Rule of Professional Conduct 1.0(a)) and a "violation of a rule does not itself give rise to a cause of action for damages caused by failure to comply with the rule."  Rule of Professional Conduct 1.0(b)(3).  Because the Rules are not designed to be a basis for civil liability, a violation of a rule does not itself give rise to a

17-CV-01436-GPC-MSB

1  cause of action for enforcement of a rule or for damages caused by failure to comply with
2  the rule. *Stanley v. Richmond* 35 Cal.App.4th 1070, 1097 (1995).

3        In *Khoury*, the court held that the plaintiff's allegations "did not explain the
4  manner in which defendant's business practice was 'unlawful,' and the facts did not
5  involve monopolistic or anticompetitive practice." *Khoury v. Maly's of California, Inc.*,
6  14 Cal. App. 4th 612, 614 (1993).  Similarly, here, Quechan has alleged that W&C has
7  violated the Rule of Professional Conduct and breached its fiduciary duties, but has not
8  specified how this conduct involves monopolistic or anticompetitive business practices.
9  The motion for judgment on the pleadings is therefore GRANTED with respect to
10 Quechan's unfair competition claim.

11       **h.  Recoupment and/or Setoff**

12       Quechan seeks damages to recoup and/or setoff any damages that W&C may be
13 entitled to under Section 11 of the Fee Agreement, which provides a 10-factor test to
14 determine whether and to what extent W&C is entitled to any post-termination fee.
15 W&C counters that a recoupment and/or set off claim may only be asserted as an
16 affirmative defense and even if Quechan were able to make such a defense, such a claim
17 should be nevertheless be denied since Quechan may not seek an equitable remedy.

18       "[R]ecoupment is in the nature of a defense arising out of some feature of the
19 transaction upon which the plaintiff's action is grounded." *Bull v. United States*, 295 U.S.
20 247, 262 (1935).  *See also* Annotation to *United States v. National City Bank*, 106 A.L.R.
21 1241 ("Recoupment, however, is in the nature of a common-law defense, and differs
22 from set-off and counterclaim mainly in that the claim upon which it is based must grow
23 out of the very same transaction which furnishes the plaintiff's cause of action").  The
24 doctrine of recoupment therefore reflects "the Court's recognition that when one party
25 asserts a claim against another based on a single transaction, principles of equity require

14

the court to consider the transaction in all its aspects."  Mark S. Franklin, *State Application of the Doctrine of Equitable Recoupment*, 40 BRANDEIS L.J. 781, 787 (2002).

Quechan argues that it is not seeking recovery for recoupment in any other matter and therefore, the case that W&C cites in support – *City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029, 1034 (9th Cir. 2003) – does not apply.  In *City of Saint Paul*, the lower court held that the plaintiff was barred from bringing affirmative claims based on the applicable statute of limitations.  However, once the defendant brought counterclaims, the plaintiff raised identical allegations as defenses.  The lower court ultimately rejected the plaintiff's defenses on the merits, but the Ninth Circuit held that the plaintiff's affirmative defenses were barred by the applicable statute of limitations:

> "To hold otherwise would permit plaintiffs, through a sort of jurisdictional jujitsu, to evade the limitations statutes by bringing a time-barred declaratory judgment action, waiting for the defendant to assert its interests in the form of a counterclaim, and then raising the identical time-barred claims as defenses."

*Id.* at 1031.  In analyzing the interplay between statute of limitations and defenses, the Ninth Circuit noted that the Supreme Court had permitted an otherwise time-barred defense of "equitable recoupment" even though the applicable statute of limitations barred an independent suit based on this claim.  The court also noted, "Equitable recoupment has been allowed by state courts as well, but it has always been recognized as a defense, not a claim."  *Id.* at 1034.  The cases that Quechan cites in support of its argument that recoupment may be brought as independent claims do not prove otherwise.[7]  Therefore, in line with the reasoning as articulated by the Ninth Circuit, the

---

[7] In *James River Ins. Co. v. W.A. Rose Constr., Inc.*, 2018 WL 3023408, at *4 (N.D. Cal. June 18, 2018), the court did not address the issue of recoupment, but only issued a decision on whether or not to stay the action.  In *Guidiville Rancheria of California v. United States*, 2015 WL 4934408, at *5 (N.D. Cal. Aug. 18, 2015), *aff'd in part, vacated in part*, 704 F. App'x 655 (9th Cir. 2017), the court held that claims for recoupment "can be asserted in response to a lawsuit filed by a tribe" but does not affirmatively state that recoupment may be brought as a standalone claim.

15

17-CV-01436-GPC-MSB

1 │ Court declines to extend the basis of equitable recoupment to explicitly permit standalone

2 │ claims, rather than as providing the basis for raising a defense to a claim, and GRANTS

3 │ W&C's motion with respect to Quechan's cause of action for recoupment and/or setoff.

4 │ ## II.    MOTION FOR SANCTIONS

5 │        Rosette argues that W&C should be sanctioned because the 4AC is frivolous and

6 │ was filed for an improper purpose.  W&C counters that the Lanham Act allegations are

7 │ not frivolous and that Rosette has deliberately avoided providing relevant discovery

8 │ responses.  Rosette seeks a written apology, monetary sanctions for fees and costs

9 │ Rosette incurred by preparing this motion, and a $25,000 donation by W&C to the Native

10 │ American Rights Fund or another charitable organization with a similar mission.

11 │        ### a.  Legal Standard

12 │        Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") imposes a duty on

13 │ attorneys to certify that (1) they have read the pleadings or the motions they file, and (2)

14 │ the pleading or motion is well-grounded in fact, has a colorable basis in law, and is not

15 │ filed for an improper purpose.  *Sec. Farms. v. Int'l Bhd. Of Teamsters*, 124 F.3d 999,

16 │ 1016 (9th Cir. 1997) (citing Rule 11(b)).  Generally, sanctions are appropriately imposed

17 │ on an attorney for a filing "if either a) the paper is filed for an improper purpose, or b) the

18 │ paper is 'frivolous.' "  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th

19 │ Cir. 1990) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986)).

20 │        However, as the Ninth Circuit has recognized, a special set of considerations

21 │ pertain to Rule 11 motions directed at complaints.  "[C]omplaints are not filed for an

22 │ improper purpose if they are non-frivolous."  *Townsend v. Holman Consulting Corp.*, 929

23 │ F.2d 1358, 1362 (9th Cir. 1990).  Therefore, if a court finds that a complaint it not

24 │ frivolous, the inquiry into improper purpose is not required.

25 │        Unlike the "improper purpose" inquiry, "frivolousness" is not concerned with the

26 │ motivations of the signing attorney, and "subjective evidence of the signer's purpose is to

27 │

28 │

be disregarded" so long as the contested papers are not baseless.  *Id.*  According to the Ninth Circuit, complaints, which serve as the legal "vehicle through which [the plaintiff] enforces his substantive legal rights," should be preserved to the extent possible, since the successful vindication of "those rights benefits not only individual plaintiffs but may benefit the public." *Id.*

Frivolousness is determined objectively.  "[T]he subjective intent of the ... movant to file a meritorious document is of no moment.  The standard is reasonableness.  The 'reasonable [person]' against which conduct is tested is a competent attorney admitted to practice before the district court." *G.C. and K.B. Invest., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  At base, "[t]he issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and the law, would have concluded that the offending paper was well-founded." *Truesdell v. So. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 174 (C.D. Cal. 2002).

Cases warranting imposition of sanctions for frivolous actions are "rare and exceptional." *Operating Eng'rs Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988); *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (characterizing sanctions as "an extraordinary remedy, one to be exercised with extreme caution").  "Thus, when a court considers a request for sanctions, it must resolve all doubts in favor of the signer of the pleading or paper." *Burnette v. Godshall*, 828 F. Supp. 1439, 1447 (N.D. Cal. 1993).  "District courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1130 (S.D. Cal. 2013) (citing *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012)).

/ / /

17-CV-01436-GPC-MSB

**b. Discussion**

Rosette argues that the Lanham Act allegations regarding a statement in Robert Rosette's autobiography is sanctionable because W&C did not have sufficient basis to make these allegations. ECF No. 245-1 at 8.

In the 4AC, W&C alleges the following:

Robert Rosette has a literally false representation of fact on the website for his firm Rosette, LLP (of which Rosette & Associates, PC is a general partner), which advertises to the general public and all potential clients in the Indian law field that "Mr. Rosette… successfully litigated a case saving the Pauma Band of Luiseno Mission Indians over $100 Million in Compact payments allegedly owed to the State of California against then Governor Schwarzenegger."

4AC ¶ 220. Rosette alleges that this is sanctionable since W&C had no evidence substantiating the claim that this statement led to W&C's firing, and therefore, there is no proof of causation or damages. ECF No. 245-1 at 8-9. W&C counters that Rosette has failed to meaningfully participate in discovery on the Lanham Act claim. ECF No. 267 at 17.

In *Townsend*, the Ninth Circuit upheld the imposition of Rule 11 sanctions on the bass that the first amended complaint was frivolous since plaintiffs continued to assert a cause of action against party defendant despite undisputed evidence at hearing on motion to dismiss original complaint that party played no role in actions which gave rise to claims against other defendants, and the filing party conducted "absolutely no inquiry before filing that complaint." *Townsend*, 929 F.2d at 1366. Here, the same cannot be said of W&C which has conducted some level of inquiry – both through review of readily available materials and through discovery requests – into this claim. Accordingly, the

18

Court finds that the Lanham Act claim does not warrant the imposition of Rule 11 sanctions on the basis of frivolousness.[8]

### c. Section 1927

Rosette also alleges that sanctions are warranted under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Rosette points to W&C's failure to follow the Court's instructions to remove certain allegations – namely, paragraphs 151-164 of the 4AC allegations regarding the Rosette's relationship with the Pauma Tribe. ECF No. 217 at 27. W&C counters by vaguely stating that certain of the allegations concerning the Pauma Tribe are related to the Lanham Act claim. ECF No. 267 at 27. The Court confirms that W&C was specifically directed to remove paragraphs 151-164 from the third amended complaint (ECF No. 178 at 50-54) which are identical to the identically-numbered paragraphs in the fourth amended complaint. However, the Court also observes that W&C did make other material changes in the 4AC in response to the Court's prior order (for example at ECF No. 220-28 at 60-74). *See Kime v. Adventist Health Clearlake Hosp., Inc.,* 254 F. Supp. 3d 1071, 1079 (N.D. Cal. 2017) (declining to apply Section 1927 sanctions where plaintiff alleged some material differences between the original and amended complaint and finding that bad faith is not evident). Accordingly, the Court declines to apply Section 1927 sanctions, but nevertheless strikes paragraphs 151-164 of

---

[8] Rosette also alleges that the 4AC was filed to harass Rosette. The Ninth Circuit has held that "[w]ith regard to complaints . . . complaints are not filed for an improper purpose if they are non-frivolous." *Townsend*, 929 F.2d at 1362. Since the Court has declined to find that the Lanham Act claim was frivolous, the inquiry into improper purpose is unnecessary.

17-CV-01436-GPC-MSB

1  the 4AC which will form no part of the case moving forward.  W&C is placed on notice

2  that the continued failure to abide by Court orders may warrant remedial measures in the

3  future.[9]

4  **III.     CONCLUSION**

5          In sum, the for reasons discussed above, the Court GRANTS in part and DENIES

6  in part W&C's motion for judgment on the pleadings and DENIES Rosette's motion for

7  sanctions.

8          **IT IS SO ORDERED.**

9  Dated:  April 21, 2020

10                                               Hon. Gonzalo P. Curiel
11                                               United States District Judge

---

[9]  The level of acrimony displayed by W&C in their pleadings deserves attention.  Throughout its
pleadings, W&C clothe their legal contentions in personal and sarcastic barbs.  This creates an
unnecessary distraction and produces many pages of irrelevant material on the issues before the Court,
thereby diluting the arguments presented.  This type of lawyering is not only disrespectful to the
opposing parties and counsel, but to the Court as well.  W&C's tone and style impede engagement with
the substance of W&C's arguments, as the Ninth Circuit has previously noted with respect to W&C's
briefing.  *See* Video of November 9, 2017 Oral Argument in *Casino Pauma v. NLRB* (9th Cir. CV No.
16-70397), available at https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000012498.  The
Court understands that the case is fraught with personal and professional disagreements due to the
history between the parties.  Given that reality, W&C may wish to consider having dispassionate
counsel handle the litigation on its behalf.

20