UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, et al.,<br><br>Defendants.<br><br>AND ALL RELATED COUNTER CLAIMS | Case No.: 17cv1436-GPC (MSB)<br><br>**ORDER RE: WILLIAMS & COCHRANE AND ROSETTE DEFENDANTS' JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE [ECF NO. 297]** |

On May 5, 2020, Plaintiff Williams & Cochrane, LLP ("W&C" or "Plaintiff") and Defendant and Counter Claimant the Quechan Tribe of the Fort Yuma Indian Reservation ("the Tribe") filed a joint motion to address W&C's dissatisfaction with the Tribe's objections and responses to W&C's second set of interrogatories.  (ECF No. 297.) The Court finds this motion suitable for resolution on the pleadings and without oral argument.  See CivLR 7.1(d)(1).

## I.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial to be discoverable. Id. District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Federal Rule of Civil Procedure 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

An interrogatory may relate to any matter that may be inquired of under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The responding party must answer each interrogatory by stating the appropriate objection(s) with specificity or, to the extent the interrogatory is not objected to, by "answer[ing] separately and fully in writing under oath." Id. at 33(b). The responding party has the option in certain circumstances to answer an interrogatory by specifying responsive records and making those records available to the interrogating party. Id. at 33(d).

## II.   DISCUSSION

The interrogatories at-issue in this dispute request specific information regarding "email accounts used by all QUECHAN Tribal Council members who held office from September 1, 2016 through June 26, 2017 [("Tribal Accounts")] to send or receive any emails on behalf of QUECHAN." (See ECF No. 297 at 2 (quoting Interrogatory No. 1, whose response is not subject of the instant dispute, because the disputed "interrogatories all reference or build" from it).) Regarding the Tribal Accounts, Plaintiff seeks two basic types of information: (1) which accounts were accessible and reviewed by the Tribe for responsive documents pursuant to the Plaintiff's Requests for

Production (RFPs), and (2) how the Tribe conducted its search for responsive documents.

It appears that this set of interrogatories was born from an exchange between counsel during a meet and confer call, which led Plaintiff's counsel to believe that certain email accounts that might have sent or received relevant emails were no longer accessible and not included in the Tribe's document production.  (See ECF No. 297-1 at 2-3.[1])  Through the Tribe's responses to the interrogatories here at-issue, it has been confirmed that

> The Tribe's email exchange server stores data for active email addresses but does not archive emails once an email address has been deactivated. Pursuant to the Tribe's routine data management procedures, the personalized email addresses based on Tribal Councilmember's names are deactivated when Councilmembers leave office.  When this occurs, email associated with those personalized email addresses are not preserved on the email exchange server.  For example, when former Councilmembers Montague, Comet, and Uribe left office in March 2017—long before this litigation was anticipated—the email addresses j.montague@quechanttribe.com, j.comet@quechantribe.com, and c.uribe@quechantribe.com, were deactivated and their email data was not preserved on the email exchange server.  Additionally, when a Tribal Councilmember leaves office, his or her Microsoft Surface Tablet issued by the Tribe for Tribal Council business, including for sending and receiving emails on behalf of the Tribe, is restored to factory default settings in order to reissue those devices to incoming Councilmembers."

(ECF No. 297 at 8-9.)

Before addressing the specific issues and objections briefed in the motion, the Court will address recurrent arguments from the instant motion.  Generally, Plaintiff contends that the information it now seeks regarding "potential spoliation issues" should have been provided in response to Plaintiff's October 10, 2019 first requests for

---

[1] The Court notes that this background explanation provided by Plaintiff is not supported by declarations or other admissible evidence, but nevertheless notes Plaintiff's assertion for context.  This topic was discussed by counsel at the April 16, 2020 Discovery Hearing.

production ("RFPs"), which instructed the Tribe that "if any document falling under these requests 'once existed, but has been lost, destroyed, no longer exists, or is no longer in the possession, custody, or control of Quechan' that [the Tribe] must 'identify each such document and separately state the details concerning the loss or destruction of the document . . . .'" (Id. at 2; see also ECF No. 297-3 at 8, ECF No. 297-4 at 8.) Because of this, Plaintiff asserts that the Tribe has waived any right to object to the current interrogatories. (ECF No. 297-1 at 6.) However, Plaintiff cites no authority for this position. Even if the Court agreed that a failure to follow Plaintiff's own instructions amounted to a waiver, Plaintiff fails to demonstrate to the Court at this time that the Tribe was aware of any responsive documents that no longer existed to trigger the instruction. Therefore, the Court finds the Tribe did not waive its objections to the instant interrogatories as Plaintiff claims.

In support of its interrogatories, Plaintiff contends that the information it seeks is necessary to understand why the Tribe has produced only six emails from twelve tribal council members for the nine-month period that Plaintiff represented the Tribe, and what criteria the Tribe used to isolate the produced documents. (ECF No. 297-1 at 3-5.) The Tribe takes issue with Plaintiff's representation that the Tribe has only produced six emails from the Tribal Accounts, and explains that for the period that Plaintiff represented the Tribe, the Tribe produced approximately 237 emails and attachments that were sent or received by council members, 133 emails and attachments sent or received by the tribal council secretary, 189 emails and attachments sent or received by the executive secretary, and 80 emails and attachments sent to or received by Charles Montague. (ECF No. 297-6 at 3-4; see also ECF No. 297-7 at 3.) The Tribe points to Plaintiff's counsel's declaration to explain the discrepancy, wherein she explains that she "'**did not include** emails to or from [W&C] or emails that were already copied to [W&C] during its representation of the Tribe,' as well as emails that, in W&C's estimation 'did not contain any or much substance.'" (ECF No. 297-6 at 4 (emphasis in original, citing ECF No. 297-2 at 2-3).)

A witness from the Tribe, who served on the Tribal Council continuously from 2015 to May 18, 2017, when he assumed his current position of Vice President of the Tribe, explained in his declaration that "email is not, and has not been, the primary method of communication between and among members of the Tribal Council" and "email was not frequently used by members of the Tribal Council to communicate with other members of the Tribal Council." (ECF No. 297-9 at 2.)  Plaintiff argues that "the veracity of this statement is completely undercut by the fact that [the Tribe's] privilege log details twelve emails (i.e. more than six) between the Quechan Tribal Council and another attorney . . . on June 1, 2017." (ECF No. 297 at 5.)  The Court does not see how Plaintiff's example undermines the Trial Council Vice President's statement.  In the first instance, whether the Tribe exchanged emails with its attorneys is irrelevant to the issue of whether Tribal Councilmembers used email to discuss issues between themselves.  Presumably, that is why Plaintiff excluded the emails between the Tribe and Plaintiff from its appraisal of the Tribe's email production to date, as previously discussed.  Nevertheless, the Court agrees with the Tribe that Plaintiff's selectively narrow interpretation of the discovery to date is not helpful to the Court's appraisal of this dispute.

### A.   Adequacy of Meet and Confer

At the outset, the Tribe argues that this motion should be denied because W&C did not meet and confer regarding the Tribe's Amended Responses prior to filing the instant motion. (ECF No. 297-6 at 2.)  Specifically, counsel for the Tribe says that on April 15, 2020, he met and conferred with Plaintiff's counsel regarding the Tribe's April 13, 2020 responses to Plaintiff's Second Set of Interrogatories and agreed to amend the Tribe's interrogatory responses. (ECF No. 297-7 at 2.)  On April 29, 2020, Counsel for the Tribe served its Amended Objections and Responses. (Id.)  Without requesting to meet and confer regarding the Tribe's amended responses, Plaintiff's counsel sent Plaintiff's portion of the instant motion to counsel for the Tribe. (Id.)  Plaintiff essentially concedes that there was no meet and confer subsequent to the Tribe's amended

responses, stating "the parties met about *all* of [W&C's] interrogatories on Wednesday, April 29, 2020,[2] and counsel for Quechan either refused to amend the responses (as was the case with interrogatory number two) or amended in such a way that did not address [W&C's] concerns in *any* manner (as was the case with interrogatory numbers three through five, the responses for the latter two of which simply ended up citing to Quechan's production of documents for a response)." (ECF No. 297 at 5-6, 11, 18, 22 (emphasis in original).) Plaintiff refers to the entire history of discovery in this case, claiming that because Plaintiff and the Tribe have had conflicts about the sufficiency of the Tribe's document production for more than six months, the Tribe's claim that Plaintiff failed to meet and confer "is preposterous." (Id.)

Several different rules require litigants in this district to meet and confer regarding discovery disputes before calling upon the Court to resolve the parties' disagreements. Federal Rule of Civil Procedure 37(a)(1) provides that a party filing a motion to compel must certify "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). This Court's October 9, 2019 Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings directed counsel to "promptly and in good faith meet and confer with regard to all discovery disputes in compliance with Local Rule 26.1(a)." (ECF No. 232 at 3.) The same requirement is reiterated in Judge Berg's Civil Chambers Rule IV.A. Civil Local Rule 26.1(a) states that "[t]he Court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues. . . . If counsel have offices in the same county, they are to meet and

---

[2] The Court notes that the parties submit that the sole meet and confer occurred on different dates, and that the Tribe's contention is supported by the declaration of counsel, while Plaintiff's is not. Nevertheless, because both parties' statements indicate that the meet and confer preceded the Tribe's amended responses, the Court need not resolve this factual dispute to address the sufficiency of the meet and confer for purposes of this motion.

confer in person. If counsel have offices in different counties, they are to confer by telephone. Under no circumstances may the parties satisfy the meet and confer requirement by exchanging written correspondence." S.D. Cal. Civ. L.R. 26.1(a).

The purpose of a meet and confer requirement is for the parties to engage in a meaningful dialogue about their respective positions on disputed issues to see whether they can resolve them without court intervention, saving time and money for the litigants and the court system. See California v. Iipay Nation of Santa Ysabel, No. 14CV2724 AJB (NLS), 2015 WL 2449527, at *6 (S.D. Cal. May 22, 2015) ("A purpose of a meet and confer requirement is to resolve issues without the need for further action."); Eusse v. Vitela, Case No.: 3:13-cv-00916-BEN-NLS, 2015 WL 9008634, at *3 (S.D. Cal. Dec. 14, 2015) ("This process, when successful, 'obviates the need for unnecessary motion practice, which, in turn, conserves both the Court's and the parties' resources.'") (internal citation omitted). To "serve [this] purpose, parties must 'treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of discovery disputes.'" U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd., No. 2:12-cv-00231-KJD-CWH, 2013 WL 5278523, at *2 (D. Nev. Sept. 17, 2013) (internal citation omitted).

The Court finds that Plaintiff's admitted failure to meet and confer after receiving the Tribe's amended interrogatory responses ran afoul of the Court's meet and confer requirement. While it would be reasonable to deny the instant motions based on this failure, see, e.g., Rogers v. Giurbino, 288 F.R.D. 469, 477 (S.D. Cal. 2012) ("A court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion."), the Court will instead reach the parties' other arguments.

**B.  Interrogatory No. 2**

Interrogatory number two asks the Tribe to, "[f]or each e-mail account identified in response to Interrogatory Number 1, identify the number of e-mails sent from and received by each account on a daily basis from the latter of the date of creation identified in Interrogatory Number 1 or September 1, 2016 to August 31, 2017." (ECF

No. 297 at 2.) The Tribe objected, claiming the interrogatory was overbroad, unduly burdensome, sought irrelevant information, and contained multiple discrete subparts. (Id. at 2-9.) Subject to these objections, the Tribe explained that it had conducted a reasonable search of emails of custodians likely to have discoverable evidence, including available emails from the individuals described in Interrogatory Number 1, however the Tribe is not aware of the total number of emails sent or received by the relevant email accounts. (Id. at 3.) The Tribe's response directed Plaintiff to its previous document productions for "the number of relevant, available emails." (Id.)

In the motion now before the Court, Plaintiff argues that "a complete response to this interrogatory should be compelled to prove that neither Quechan's response to the spoliation issue nor its document production are complete, thus enabling W&C to seek appropriate discovery sanctions against the Tribe." (Id. at 4.) Plaintiff argues that it should be able to ascertain the total number of emails sent or received by the relevant accounts to gauge whether the Tribe's email production was reasonable. (Id. at 5.) On the other hand, the Tribe maintains its objections that the information sought is "categorically irrelevant and disproportionately burdensome." (Id. at 6.) In support of its argument that the information requested is overly burdensome, the Tribe submits the declaration of its "MIS Director of Information Technology," which states that the Tribe does not keep records of the number of emails sent from and received by official Tribal email addresses on a daily basis." (ECF No. 297-8 at 2.) Additionally, such information is impossible to obtain for email accounts that have been deactivated and would require a time consuming, manual process of isolating and counting emails for which the Tribe lacks administrative resources. (Id.)

The party seeking to compel discovery bears the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Plaintiff has not met its burden to demonstrate that the requested discovery is relevant. Plaintiff contends it can use the raw number of emails associated with the Tribal Accounts to infer that the Tribe withheld emails from

its document production. (See, e.g., ECF No. 297 at 11 ("Quite obviously, gauging whether a six e-mail production was reasonable could occur if Quechan simply complied with these very interrogatories and disclosed the number of e-mails sent from and received into these email accounts.")) But the number of emails sent or received on any given day, without regard to the subject matter of those emails, will not inform Plaintiff or the Court whether the Tribe failed to disclose relevant, responsive documents or whether potentially relevant emails were lost or destroyed. Nor does the requested information have any bearing on any of the claims or defenses in this case. "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." Murphy v. Deloitte & Touche Grp. Ins. Plan, 619 F.3d 1151, 1163 (10th Cir.2010); U.S. ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 237 (S.D. Cal. 2015). The requested information is not relevant, and the Court therefore **DENIES** Plaintiff's request to compel a further response to Interrogatory Number 2 on that basis and will not address the Tribe's objection based on burden.

C. **Interrogatory No. 3**

For each Tribal Account, Plaintiff asks the Tribe to "indicate with a yes or no whether any emails sent from or received by the account during the date range specified in Interrogatory Number 2 have been deleted or otherwise spoiled, and if yes, detail the complete circumstances surrounding such deletion(s) or spoliation(s) by identifying, amongst any and all other material information, the dates of such deletion(s) and or spoliation(s), the number of emails affected on each such date, the subject matter(s) of each affected email, and the efforts taken by both [the Tribe] and [its counsel in this litigation] to recover said emails." (ECF No. 297 at 7.) The Tribe objected to this interrogatory, asserting that it is vague and ambiguous, overbroad and seeking irrelevant information, creates an undue burden, contains discrete subpart and seeks information protected by attorney-client privilege and work product doctrine. (Id. at 7-8.) Subject to these objections, the Tribe offered the following substantive response:

> The Tribe has taken reasonable steps to preserve and collect documents, including email, from custodians reasonably likely to have discoverable evidence. This includes, but is not limited to, emails from individuals and email accounts listed above in the Tribe's response to Interrogatory No. 1 that the Tribe understands are most relevant to the facts underlying the claims, counterclaims, and defenses in this litigation, specifically—but not exclusively—including email accounts associated with former President Escalanti, Vice President Smith, former Councilmember (and current President) Joaquin, former Councilman White, and Mr. Charles Montague. The Tribe is unaware of any loss of documents or ESI from these email accounts, via routine document production or otherwise.
>
> The Tribe's email exchange server stores data for active email addresses but does not archive emails once an email has been deactivated. Pursuant to the Tribe's routine data management procedures, the personalized email addresses based on Tribal Councilmember's names are deactivated when Councilmembers leave office. When this occurs, emails associated with those personalized email addresses are not preserved on the email exchange server.

(Id. at 8.) The response goes on to specify that the email addresses of former Councilmembers Montague, Comet, and Uribe were deactivated when they left office in March 2017, after which their email was not preserved on the email exchange server. (Id. at 8-9.) Councilmembers' tablets issued for Tribal Council business are restored to factory settings to be issued to incoming Councilmembers. (Id. at 9.) The Tribe explains that it also searched email accounts that are assigned to specific offices and job descriptions (specifically, quechanpresident@quechantribe.com, vicepresident@quechantribe.com, tribalsecretary@quechantribe.com, and executivesecretary@quechantribe.com). (Id.) These emails are preserved on a host computer, and all email from these accounts was retained and searched for responsive documents. (Id.)

In the instant motion, Plaintiff claims that the Tribe's response is incomplete as it does not explain the status of the email accounts for "two others who served" prior to

the election of 2017,[3] whether there was "*any* spoliation of emails from the Chairman and Vice Chairman accounts,"[4] or what, if any, efforts were made to recover the lost emails. (Id. at 9-10.) Plaintiff asserts that a complete response is needed to permit Plaintiff to move for spoliation sanctions. (Id. at 10.) Based on privilege log entries listing 12 emails between the Tribe and a non-party attorney on a single day, Plaintiff argues, somewhat inexplicably: "[t]hat translates to more than 1,000 e-mails over the course of a nine month period." (Id. at 11.) The Court understands this to mean that Plaintiff infers from the twelve emails with another attorney that there should be more responsive emails than the Tribe has provided to Plaintiff.

The Tribe argues that it has provided "a particularized answer to the relevant aspects of the interrogatory" that is sufficient, based on its collection of ESI from custodians and other sources it "believed to be the most reasonable sources of relevant information, based on the numerous iterations of W&C's complaint and the Tribe's defenses and counterclaims, which is what is required under the Rules." (Id. at 15, 12 (citations omitted).) According to the Tribe,[5] because Plaintiff refused to enter into an ESI stipulation at the outset of the case, and failed to discuss custodians for document production, providing the information the Tribe deemed relevant was all that the Tribe was required to do. (Id. at 12.) Further, the Tribe asserts that Plaintiff makes no showing of relevance or proportionality to support compelling a further response to Interrogatory Number 3. (Id.) The Tribe argues that because "the majority of the

---

[3] The Court is not certain precisely which email accounts Plaintiff is referring to. It seems Plaintiff could be referring to Virgil Smith and Aaron Brown, or alternatively to Michael Jackson and Michael Jack from the table of council people provided by Plaintiff in its motion, (see, e.g., ECF No. 297 at 4), Plaintiff's argument, and the Tribe's responses as previously described.

[4] Again, the Court is uncertain what accounts Plaintiff is referring to, as chairman and vice chairman accounts are not listed in the Tribal Accounts as summarized in Plaintiff's table, (see, e.g., ECF No. 297 at 4), or in the Tribal Accounts as provided in the Tribe's Amended Objections and Responses to Williams & Cochrane, LLP's Second Set of Interrogatories, (ECF No. 297-5 at 8-10).

[5] The Court notes that the Tribe does not provide any citation or evidentiary support for its claim that Plaintiff refused to enter an ESI stipulation or discuss ESI search.

former Councilmembers about which W&C complains in this motion are not named at all in W&C's operative complaint . . . there is no basis to demand a further response regarding the individual email accounts of numerous additional individuals not reasonably or proportionally required to be custodians in the first place." (Id.) Furthermore, according to the declaration of the Tribe's Vice President (and Councilmember since 2015), on the infrequent occasion that the Tribal Council communicated internally via email, "the entire Tribal Council would likely be included, and the Tribal Council Secretary and Executive Secretary would often be copied." (Id. at 14; see also ECF No. 297-9 at 2-3.)  This suggests that any emails that might have been in deactivated Tribal Accounts would likely have also existed in searched accounts.

Though the parties drift into arguments regarding whether the Tribe spoiled any evidence in this case, this interrogatory does not require the Court to address that issue, or the appropriateness of the Tribe's document production in any way.  Instead, the Court must decide whether the Tribe should be compelled to respond to Interrogatory Number 3, which asks whether the Tribal Accounts (which Plaintiff has defined as those belonging to Councilmembers during the time Plaintiff represented the Tribe) are maintained and accessible to the Tribe, when deactivated accounts became unavailable, and for some information about the unavailable emails if such information exists.  The Court finds that this inquiry is within the bounds of Rule 26(b)(1).  See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("A portion of present Rule 26(b)(1) is omitted from the proposed revision.  After allowing discovery of any matter relevant to any party's claim or defense, the present rule adds: 'including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.'  Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples. The discovery identified in these examples should still be permitted under the revised rule when relevant and proportional to the needs of the case.")  This inquiry is sufficiently focused

and proportional to the case and will help Plaintiff assess whether the Tribe's deactivation of Tribal Accounts might indicate spoliation.[6] It is also relevant and proportional for the Tribe to describe what steps, if any, the Tribe and its counsel have taken to recover the deactivated or otherwise unavailable email accounts. The Tribe's incomplete responses, addressing only some of the Tribal Accounts, is inadequate and lacks clarity.

Therefore, Plaintiff's motion to compel further response to Interrogatory Number 3 is **GRANTED**. The Tribe is **ORDERED** to provide a supplemental response to this Interrogatory, explaining specifically which of the accounts identified in response to Interrogatory Number 1 have been deactivated or are no longer available to the Tribe, providing the date and circumstances of such deactivation, describing the number and subjects of the unavailable emails (if accessible), and identifying any steps that the Tribe or its counsel has taken to recover the unavailable emails.

**D.    Interrogatory No. 4**

In Interrogatory Number 4, Plaintiff asks the Tribe to indicate whether its counsel reviewed each Tribal Account for "e-mails relevant to the lawsuit, and if yes, [to] detail the process by which [counsel] reviewed each account and determined whether specific e-mails therein are relevant to any of the claims and defenses" set forth in the operative pleadings in this case.  (ECF No. 297 at 15.)  The tribe objected to this interrogatory as

---

[6] The Court notes that Plaintiff's initial interrogatory was perhaps imprecisely worded insofar as it called for information about emails from the Tribal Accounts that had been "deleted or otherwise spoiled." "Deleted" may include every individual deletion of an email by any Councilmember, and would be vastly over inclusive. "Spoiled" suggests knowledge and/or culpability that may not be present in the circumstances described in the Tribe's response.  However, the Tribe has settled on a reasonable interpretation in its response by identifying the accounts that are no longer accessible and why. Plaintiff's assumption that lost email accounts contained relevant, responsive documents, and its use of accusing and conclusory language to address its concern appears to have impaired its ability to obtain useful information through the meet and confer process. (See ECF No. 297-1 at 2 (assuming that routinely deactivated emails were "spoliation issues," and noting that when Plaintiff asked counsel for the Tribe if responsive documents had been lost or destroyed, Mr. Vittor asked Plaintiff to ask in a different way—perhaps one that asked whether potential sources of records had been lost without assuming the lost records were responsive documents).)

vague and ambiguous, containing multiple discrete subparts, and to the extent that it called for information protected by attorney-client privilege or work product doctrine. (Id.) Nevertheless, the Tribe answered in relevant part that it "conducted a reasonable search, collection, review and production of emails that are relevant to this litigation using keyword search terms, including available emails from individuals listed above in Interrogatory No. 1." (Id. at 16.)

In the instant motion, Plaintiff asserts that the Tribe's response is inadequate because it does not describe the key words used for the Tribe's search. (Id. at 17.) Plaintiff argues that the Tribe should be compelled to submit a complete response so Plaintiff can assess the reasonableness of the Tribe's document production. (Id.) The Tribe maintains that it offered to negotiate with Plaintiff regarding the potential exchange of the parties' search terms, but Plaintiff did not respond. (Id. at 19.) Because there is no ESI agreement, The Tribe argues that it should not be compelled to provide search terms unless W&C discloses its search terms.

When an ESI search is required for document production, the best practice is for the parties to cooperate to reach an agreement regarding custodians and search terms to inform the document production. See, e.g., Baranco v. Ford Motor Company, Case No. 17-cv-03580-EMC, 2018 WL 9869540, at *1 (N.D. Cal. Apr. 10, 2018); Doe v. Heritage Academy, Inc., No. CV-16-03001-PHX-SPL, 2017 WL 6001481, at *13 (D. Ariz. June 9, 2017); Apple, Inc. v. Samsung Electronics Co. Ltd., No. 12-CV-0630-LHK (PSG), 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013). Of course, agreement will not always be possible, and a party may use discovery to learn about its opponent's record search parameters, either before or after the search has been conducted. See Baranco, 2018 WL 9869540, at *1.

This Court's determination of this dispute is largely dictated by the timing of Plaintiff's interrogatories. It certainly would have been preferred for Plaintiff to seek this information in advance of the document production, or at least prior to Plaintiff's deadline to file a joint motion asking to compel further documents during the meet and

confer.  However, upon receiving the document production, discovery into the adequacy of the production would certainly have been permissible.  Upon reviewing the docket, the Court notes that it held at least four lengthy informal discovery conferences with counsel for Plaintiff and the Tribe.  (See ECF Nos. 246 (December 9, 2019 conference), 252 (January 6, 2020 conference), 259 (January 13, 2020 conference), 263 (January 29, 2020 conference).)  During these conferences, Plaintiff never raised the adequacy of the search terms the Tribe used to review emails.  After the Court held a discovery conference with counsel for Plaintiff and the Tribe on December 9, 2019, it ordered the Tribe to complete its rolling document production by January 10, 2020. (ECF No. 246.)  Considering this, it appears that the Court's 30-day deadline for filing a discovery dispute motion with the Court has long passed.  See Hon. Michael S. Berg Civ. Chambers R., §IV.D.  Plaintiff has provided nothing to show otherwise.  Nothing presently before the Court provides good cause to change this deadline.

While the Court would have been inclined to consider further meet and confer regarding search terms or the disclosure of search terms when Plaintiff could still compel further production of documents, because the deadline to address the document production has passed, the requested information is no longer relevant.  Cf. Doe v. Heritage Academy, Inc., No. CV-16-03001-PHX-SPL, 2017 WL 6001481, at *13 (D. Ariz. June 9, 2017) (in ruling on parties' motion for discovery dispute resolution regarding adequacy of defendant's production of documents, court refused to order production of search terms and custodian without reviewing the RFPs and a specific showing that efforts to preserve and collect were inadequate, but ordering the parties "to meet and confer in an effort to reach agreement on a mutually-acceptable search protocol"), Apple, Inc. v. Samsung Electronics Co. Ltd., No. 12-CV-0630-LHK (PSG), 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (finding that witness subject to third-party document subpoena had the same obligation as a party to participate in "transparent and collaborative discovery," and ordering the third-party to produce search terms and custodians and then meet and confer regarding any further disputes about the

document production).  Therefore, Plaintiff's motion to compel further response to Interrogatory Number 4 is **DENIED**.

**E.     Interrogatory No. 5**

Plaintiff's final interrogatory asked the Tribe to "[i]dentify every e-mail from the e-mail accounts identified in Interrogatory Number 1 that is relevant to this lawsuit in accordance with the response to Interrogatory 4 and otherwise, but that Quechan did not produce to Williams & Cochrane during discovery by the 'to,' 'from,' and 'cc' e-mail accounts, the subject matter(s) of the e-mails, and an explanation as to why each specific e-mail is not responsive to any of the requests for production in William's & Cochrane's first or second sets of requests for production to Quechan."  (ECF No. 297 at 19.)  The Tribe objected to the interrogatory as being vague and ambiguous, contained multiple subparts, and to the extent it sought information protected by the attorney-client privilege or work product.  (Id.)  Despite its objections, the Tribe responded with a broad description of its records search process, similar to its response to Interrogatory Number 4.  (Id. at 20.)

In the instant motion, Plaintiff argues that the Tribe's response was insufficient insofar as it does not identify the keywords used to identify the emails to be searched within the Tribal Accounts.  (Id.)  The Tribe contends its response was adequate, the issue of search terms was the only issue Plaintiff raised in the meet and confer, and again reiterates that Plaintiff refused to meet and confer on that issue.  (Id. at 23.)  For the same reasons the Court denied Plaintiff's motion to compel further responses to Interrogatory number 4, Plaintiff's motion to compel further response to Interrogatory Number 5 is **DENIED**.

### III.     CONCLUSION

For the reasons detailed above, Plaintiff's requests to compel further responses to Interrogatory Numbers 2, 4, and 5 are **DENIED**.  Plaintiff's request to compel further response to Interrogatory Number 3 is **GRANTED**.  The Tribe must provide a

supplemental response to Interrogatory Number 3 as stated in section III.C, <u>supra</u>, no later than **June 1, 2020**.

**IT IS SO ORDERED.**

Dated:  May 26, 2020

Honorable Michael S. Berg
United States Magistrate Judge