UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP,<br><br>         Plaintiff,<br><br>v.<br><br>ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; ROSETTE, LLP; QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; and DOES 1 THROUGH 100,<br><br>         Defendants. | Case No.:  17cv1436-GPC-DEB<br><br>ORDER DENYING MOTION FOR RECONSIDERATION<br><br>[ECF No. 292] |

Before the Court is Plaintiff Williams & Cochrane's ("W&C") motion asking this Court to reconsider the Honorable Magistrate Judge Michael S. Berg's Order (ECF No. 284) on April 17, 2020 ("April 17 Order").  ECF No. 292.[1]  Quechan Tribe ("Quechan")

---

[1] The case has since been reassigned to Magistrate Judge Daniel E. Butcher for all further Magistrate Judge proceedings.

1

and Rosette LLP ("Rosette") (collectively, "Defendants") filed an opposition. ECF No. 311. For the reasons stated below, the Court **DENIES** Plaintiff's motion for reconsideration.

## I. PROCEDURAL BACKGROUND

On March 2, 2018, W&C filed their First Amended Complaint ("FAC") against Quechan and Rosette. ECF No. 39. In their FAC, W&C alleged breach of contract and breach of the implied covenant of good faith and fair dealing claims against Quechan; a RICO claim against Rosette and RICO conspiracy claim against all Defendants; and a negligence/breach of fiduciary duty claim against Rosette. *Id.*

On June 21, 2018, Quechan filed an Answer to the FAC and Counterclaims. ECF No. 94. This Court held that the following six counterclaims would survive W&C's subsequent motions to strike and dismiss: (1) breach of fiduciary duty; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) breach of contract; (5) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) an entitlement to offset any damages that W&C may be entitled to from its affirmative claims against Quechan. ECF No. 173.

On December 6, 2018, W&C filed their Third Amended Complaint ("TAC") in which they reasserted claims for breach of contract, breach of the covenant of good faith and fair dealing, a Lanham Act violation, and two RICO conspiracy claims. ECF No. 174. In response to Defendants' answer and counterclaims to the TAC (ECF No. 182),

W&C filed a "reply claim" for tortious breach of contract against Quechan.  ECF No. 179.  On December 31, 2018, Quechan filed a motion to strike and dismiss W&C's "reply claim" pursuant to Rule 12(f) and 12(b)(6).  ECF No. 184.  In their motion, Quechan relied on California Civil Code Section 47(b) to assert the litigation privilege applies to termination letters sent by Quechan to W&C.  ECF No. 184-1 at 17.

On September 10, 2019, this Court granted (1) Rosette's motion to dismiss the TAC's RICO conspiracy claims and (2) Quechan's motion to dismiss W&C's "reply claim" for tortious breach of contract against Quechan.  ECF Nos. 216, 217.  On September 24, 2019, W&C filed a motion for reconsideration of the September 10, 2019 Order.  ECF No. 219.  In their motion, Plaintiff relied on case law regarding the scope of California state privilege law.  *Id* at 5.  On December 12, 2019, this Court denied W&C's motion for reconsideration of the foregoing order as the termination letters were related to Quechan's request for their case file and falls within the scope of the litigation privilege.  ECF No. 247.

On September 25, 2019, W&C filed a fourth amended complaint.  ECF No. 220.  On October 8, 2019, Quechan filed an answer to the fourth amended complaint.  ECF No. 231. On October 22, 2019, W&C filed a pleading captioned as "[Amended]" Motion for Judgment on the Pleadings.  ECF No. 235 at 1.  On April 22, 2020, this Court issued an order granting Plaintiff's motion with respect to Quechan's fifth and sixth counterclaims

for unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*. and recoupment and/or setoff. ECF No. 285.

The following claims remain in this lawsuit: W&C's claims for (1) breach of contract against Quechan, (2) breach of the implied covenant of good faith and fair dealing against Quechan, and (3) violation of the Lanham Act (15 U.S.C. § 1051 et seq.) against Rosette. ECF No. 220. Also remaining in this lawsuit are Quechan's claims against W&C for (1) breach of fiduciary duty; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; and (4) breach of contract. ECF No. 285. All of the foregoing claims are state law claims with the exception of W&C's federal Lanham Act claim against Rosette. ECF No. 220. W&C's Lanham Act claim is premised on Robert Rosette's representation on his firm's website that he "successfully litigated a case saving the Pauma Band of Luiseno Mission Indians over $100 Million in Compact payments allegedly owed to the State of California against then Governor Schwarzenegger." ECF No. 220 ¶ 220.

On March 5, 2020 and March 18, 2020, the parties filed Joint Motions for Determination of Discovery Dispute regarding Quechan's and Rosette's privilege claims over communications listed in their privilege logs. ECF Nos. 271, 272, 274. On April 16, 2020, Magistrate Judge Michael S. Berg held a discovery hearing with the parties to address their joint motions. ECF No. 284. During the hearing, Plaintiff raised the issue that federal privilege law, rather than California state privilege law, should govern

Defendants' privilege claims in this federal question case. ECF Nos. 287, 292-2, Ex. A. In relevant part, Magistrate Judge Berg overruled Plaintiff's objections. *Id.* Magistrate Judge Berg applied California state privilege law to analyze Defendants' attorney-client privilege claims because (1) Federal Rule of Evidence 501 provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision;" (2) the only federal claim in this case is the Lanham Act claim while state claims outweigh the federal claim; and (3) Plaintiff had failed to address the issue when the parties submitted their briefs. ECF No. 287 at 4-7.

On April 17, 2020, Magistrate Judge Berg issued an order finding, in relevant part, (1) Quechan and Rosette had not waived any attorney-client privilege asserted in their privilege logs through their counterclaims, affirmative defenses, or damages requests, and (2) portions of the challenged communications in Quechan's and Rosette's privilege logs are protected by the attorney-client privilege. ECF No. 284 at 2, 4.

On April 28, 2020, Plaintiff filed the instant motion for reconsideration of Magistrate Judge Berg's April 17 Order. ECF No. 292. Plaintiff challenges portions of the April 17 Order that address two discovery motions W&C filed to compel the production of communications between Quechan and Rosette over which Quechan had asserted the attorney-client privilege. ECF Nos. 271, 272, 311. On June 5, 2020, Quechan and Rosette filed a joint opposition to W&C's motion for reconsideration. ECF 311.

## II.    FACTUAL BACKGROUND

The parties are familiar with the factual background, which is described at length in the Court's prior orders.  ECF Nos. 216, 247.

In most relevant part, Quechan hired W&C to represent them in negotiations with the State of California regarding a new gaming compact and signed an Attorney-Client Fee Agreement on September 29, 2016.  ECF No. 231 ¶ 1.  Quechan alleges that W&C misrepresented what it could achieve and sought to prolong negotiations.  ECF No. 94 ¶¶ 2, 11.  On June 26, 2017, Quechan sent a letter to W&C terminating the firm and asking them to transmit their entire case file to its new counsel, Rosette, LLP.  *Id.* ¶ 5. W&C filed the instant lawsuit alleging Quechan had breached the Attorney-Client Fee Agreement by refusing to pay W&C's contingency fee as well as alleging fraud and intentional interference claims.  ECF No. 231 ¶ 53.  W&C also alleged a false advertising claim under the federal Lanham Act against Rosette for representations Robert Rosette made on his law firm's website.  ECF No. 220 ¶ 220.

## III.    DISCUSSION

### A.    Legal Standard

The district court may reconsider a magistrate judge's decision on pretrial matters where the order is "clearly erroneous or is contrary to law."  28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to

6

law."). Under the "clearly erroneous" standard, the district court should overturn a magistrate judge's decision when the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). However, the "contrary to law" standard "permits independent review of purely legal determinations by the magistrate judge." *F.D.I.C. v. Fid. & Deposit Co. of Maryland*, 196 F.R.D. 375, 378 (S.D. Cal. 2000).

**B.  Analysis**

First, W&C asserts that federal privilege law should apply to Defendants' privilege claims because this case falls in the category of a federal question action with pendant state claims. ECF No. 292-1 at 7. W&C argues that applying federal law to federal claims and state law to the state claims in this case would create an "unworkable result." *Id.* Moreover, W&C asserts that California state privilege law should not be applied "to documents that also concern Arizona work by an Arizona firm for an Arizona tribe." *Id.* at 7. Defendants counter that Magistrate Judge Berg correctly applied California state privilege law. ECF No. 311 at 3.

Here, W&C asserts only one claim for relief against Rosette under the federal law (i.e., the Lanham Act claim); all remaining claims for relief are brought under California state law against Quechan. ECF No. 311 at 4. In the instant discovery dispute, W&C seeks to compel the production of communications between Quechan and Rosette over which Quechan has asserted the attorney-client privilege. *Id.* Defendants argue that the

challenged communications relate to W&C's state-law contract claims against Quechan rather than W&C's federal Lanham Act claim against Rosette. *Id.*  On this basis, the Magistrate Judge's applied California state privilege law to Defendants' privilege claims since the challenged communications relate only to claims for which state law provides the rule of decision, i.e. W&C's state-law contract claims. *Id.*  Defendants also note that any error in applying California state privilege law was "harmless" because the outcome would have been the same under federal privilege law. *Id.*

Second, W&C assert they first had notice the Magistrate Judge may apply California state privilege law to Defendants' privilege logs was on April 16, 2020 during the Discovery Hearing. *Id.*  In a footnote, W&C also objects to the Magistrate Judge's finding that neither Quechan nor Rosette waived their privilege claims. *Id.* at 8.

The Court addresses each argument in turn.

   **1.   Choice of Law**

Federal Rule of Evidence ("Rule") 501, in relevant part, provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Thus, state law claims brought into federal court pursuant to the court's diversity jurisdiction are governed by state privilege law.  *See* Fed. R. Evid. 501; *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y. 2003) (finding state law governs attorney-client privilege claim in diversity action).  In federal question civil cases and criminal cases, however,

8

federal privilege law, rather than state privilege law, generally governs claims of privilege.  *E.g., United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009); *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law."); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (applying federal common law to attorney-client privilege claim in federal question civil case).  The legislative history of Rule 501 shows that Congress was concerned with the question of whether the jurisdictional basis for a given action should determine whether state or federal law should apply:

> The Justice Department objected to the House formulation of Rule 501 on the ground that it would defeat procedural uniformity in cases in which the government was a party by requiring the application of state privilege law in federal question cases where state substantive law was applied; the Department cited the example of the Federal Tort Claims Act which requires application of state substantive law. The Senate Judiciary Committee thought that the intent of the House was to make state privilege rules applicable only in diversity cases, but that the language chosen was ill-suited for this purpose because it could be construed to require the use of state privilege where state substantive law was being employed in a federal question case. Accordingly, it proposed and the Senate adopted an amendment that would have made the privilege question turn on the jurisdictional basis for the suit.

*Crowe v. Cty. of San Diego*, 242 F. Supp. 2d 740, 747 (S.D. Cal. 2003) (citing 23 WRIGHT & GRAHAM § 5433, at 854–55).  The proposed amendment ultimately failed, and Congress ultimately explained that "in nondiversity jurisdiction civil cases, federal privilege law will generally apply." *Id.*

a. <u>Federal Question Actions with Pendent State Claims</u>

In the absence of textual guidance in Rule 501, federal courts have split in their approach. A majority of federal courts have applied federal privilege law to claims of privilege in federal question actions with pendent state law claims. *See, e.g., Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 813 (S.D. Cal. 2003); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978); *J. P. Foley & Co. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y. 1974). Other courts, however, have held that both federal and state privilege law should apply in a federal question action with pendent state claims and have applied federal privilege law to federal claims and state privilege law to state claims. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 492 (C.D. Cal. 1981). Still others have applied state privilege law in federal question actions with pendent state claims where the predominant nature of all the claims are based on state law. *See Platypus Wear, Inc. v. K.D. Co.*, 905 F. Supp. 808, 812 (S.D. Cal. 1995) (finding "where the evidence sought can be relevant only to state law claims, the state law privilege should be applied consistent with the express language of Rule 501.").

Defendants argue that California state privilege law was correctly applied to Quechan's claim of attorney-client privilege because the challenged communications relate to W&C's state law contract claims against Quechan, claims for which state law provides the rule of decision, rather than W&C's federal Lanham Act claims against Rosette. ECF No. 311. As discussed, W&C's false advertising claim under the federal

Lanham Act is premised on representations Robert Rosette made on his law firm's website.  ECF No. 220 ¶ 220.

As the legislative history of Rule 501 suggests, the jurisdictional basis of an action will generally determine whether a district court will apply federal or state privilege law to the parties' claims of privilege.  *See* 23 WRIGHT & GRAHAM § 5433, at 854–55. While this Court has federal question jurisdiction and courts have applied federal privilege law where federal claims are present, the question the Court must consider here is whether the Magistrate Judge's decision to apply California state privilege law to Defendants' claims of privilege is clearly erroneous or contrary to law.

"When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cty., Georgia*, No. 17-1618, 2020 WL 3146686 at *3 (U.S. June 15, 2020).  Here, there is nothing in the statutory text of Rule 501 that states a district court must apply federal privilege law to claims of privilege in a federal question case with pendent state claims.  Further, as Defendants observed, the Ninth Circuit has not decided "whether, in federal question cases, state or federal privilege law governs the admissibility of evidence that relates exclusively to state law claims." *Wilcox v. Arpaio 753 F.3d 872*, 876, n.3 (9th Cir. 2014).  Accordingly, the Court holds that the Magistrate Judge's decision is neither clearly erroneous nor contrary to law because, frankly, the law in this context is unclear and courts have adopted a

multiplicity of approaches.  Moreover, given that this litigation is mostly centered on California based contract claims, it is fair, logical and reasonable to apply Californiia privilege law to the disputed raised herein.  The Court concludes that the Magistrate Judge's decision finding that California privilege law will apply to Defendants' claims of privilege was neither clearly erroneous or contrary to law.

2. Notice

W&C asserts they first had notice that Magistrate Judge Berg may apply California state privilege law to Defendants' claims of privilege on April 16, 2020 during the Discovery Hearing.  ECF No. 292-1 at 6.  The Court disagrees.  Before W&C filed this instant motion, both parties had relied on California state privilege law to assert their claims.  On December 31, 2018, Quechan had relied on California Civil Code Section 47(b) to assert the litigation privilege to termination letters sent by Quechan to W&C in their motion to strike Plaintiff's "reply claim." ECF No. 184-1 at 17.  On January 18, 2019, W&C, too, had relied on case law regarding the scope of California state privilege law (e.g. *Nguyen v. Proton Tech. Corp.*, 69 Cal. App. 4th 140, 148 (1st Dist. 1999)).  ECF No. 190 at 27.  The record shows that Plaintiff had sufficient notice the Magistrate Judge may use California state privilege law to assess Defendants' claims of privilege.

/ / /

/ / /

/ / /

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for reconsideration.  ECF No. 292.

**IT IS SO ORDERED.**

Dated:  June 23, 2020

Hon. Gonzalo P. Curiel
United States District Judge