MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
BRITTANY ROGERS (S.B. #274432)
brogers@omm.com
KATE M. IKEHARA (S.B. #313431)
kikehara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendants Robert Rosette,
Rosette & Associates, PC, and Rosette, LLP

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| WILLIAMS & COCHRANE, LLP, | Case No. 17-CV-01436 GPC DEB |
|---|---|
| Plaintiff, | **DECLARATION OF ROBERT ROSETTE IN SUPPORT OF ROSETTE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; and ROSETTE, LLP, | Date:      December 4, 2020<br>Time:     1:30 pm<br>Judge:    Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Trial Date:  Not Set |
| Defendants. | [Notice of Motion; Memorandum of Points & Authorities; Separate Statement of Undisputed Material Facts; Rogers Declaration; Escalanti Declaration; White Declaration; Deschene Declaration Filed Concurrently] |
| AND ALL RELATED COUNTER CLAIMS | |

I, Robert Rosette, declare as follows:

1. I am an active member in good standing of the State Bar of California and the State Bar of Arizona. I have personal knowledge of the facts set forth below and, if called upon, could and would testify to the truth of the following.

2. I submit this declaration in support of Defendants Robert Rosette, Rosette & Associates PC, and Rosette, LLP's (collectively, "Rosette") Motion for Summary Judgment.

3. I previously submitted a declaration in this matter, which I signed and executed on February 8, 2018. *See* Dkt. No. 52-2. I have reviewed that declaration and confirmed that those statements remain true and correct to the best of my recollection, except that the number of attorneys Rosette currently employs has increased since February 8, 2018 and has been updated in Paragraph 7, *infra*. I incorporate the statements from my February 8, 2018 declaration here. I have not had my deposition taken in this litigation.

4. I am an enrolled member of the Chippewa-Cree Tribe, Rocky Boy Indian Reservation. I grew up in a town bordering the reservation, and after attending college in New Mexico, I earned both my juris doctor and MBA from Arizona State University in 1996.

5. I have represented at least two dozen tribes in successfully negotiating various compacts, compact provisions, compact amendments, binding compact interpretations, and California Gambling Control Commission compact rule promulgations.

6. Rosette currently employs 24 attorneys across 5 offices, from Sacramento, California, to Washington, D.C., and exclusively represents tribes or tribal entities.

7. As the founder and managing partner of Rosette, LLP and President, Director, and founding member of Rosette & Associates, I have been responsible

for supervising or managing dozens of attorneys who have been employed by my law firms.

8. In most of my client engagements, I work with my partners and associates and often delegate legal tasks to other attorneys to handle under my supervision. My clients hold me accountable for the quality of work and the outcome of all engagements.

## PAUMA LITIGATION

9. The Pauma Band of Luiseño Mission Indians ("Pauma") retained me in 2007 to negotiate with state and local governments about tribal gaming.

10. Pauma hired me in 2008 to resolve its dispute with the State of California over the 2004 amendment to Pauma's 1999 compact, based on earlier work I had performed for Pauma.

11. Pauma's goal had been to build a state-of-the-art casino, but that aspiration dimmed when the global financial markets collapsed and development stalled.

12. On September 4, 2009, Rosette & Associates filed a complaint on behalf of Pauma against the State of California alleging that the State misrepresented the number of available licenses under the 1999 compact, in the action styled *Pauma Band of Luiseno Missions Indians v. California*, No. 09-01955 (S.D. Cal.) (the "Pauma Litigation").

13. I developed the legal strategy and case theories for the Pauma Litigation, using my knowledge of the history of tribal-state gaming compacts in California, Pauma's factual and legal situation, and recent trends in federal and state law, which resulted in Pauma obtaining a preliminary injunction against the State of California.

14. I led pre-lawsuit meetings with the State of California regarding Pauma's compact, and on January 13, 2009, explained the strategy to challenge the

validity of Pauma's 2004 amendment: it was a nullity because the State had misrepresented the total number of available machine licenses.

15. My firm hired Ms. Williams and Mr. Cochrane in February 2009.

16. The legal theory of the Pauma Litigation that I created was unorthodox; I had to persuade Ms. Williams and others that the claims were worth asserting.

17. I was the partner in charge of the Pauma relationship and the Pauma Litigation after Ms. Williams and Mr. Cochrane were hired.

18. Pauma trusted me to staff an appropriate team for the Pauma Litigation and to supervise and direct the team's work.

19. I relied on Ms. Williams, Mr. Cochrane, and other associates to do supportive legal research and draft documents that implemented my directives.

20. Following my direction and approach, Ms. Williams and Mr. Cochrane and others worked on the Pauma complaint.  I drafted portions of the Pauma complaint and reviewed and revised the Pauma complaint and other filings.

21. On April 12, 2010, the Court granted Pauma's motion for preliminary injunction, which prevented the State of California from enforcing the higher payments required of Pauma by the 2004 amendment and allowed Pauma to pay under the 1999 compact terms.  The preliminary injunction gave Pauma the immediate relief it needed and provided what should have been a bargaining chip for negotiations with the State.

22. The preliminary injunction obtained by Rosette would save Pauma approximately $100 million over the life of the 2004 amendment and the hope had been that it would pressure the State to renegotiate.  $100 million is an estimate of the difference between Pauma's going-forward obligations under the 2004 amendment and the 1999 compact terms.

- 3 -

ROSETTE DECL. ISO
ROSETTE DEFS' MSJ
17-CV-01436 GPC DEB

23. On or about June 13, 2010, Pauma's General Council voted to terminate my firm and hire a new firm founded by Ms. Williams and Mr. Cochrane, W&C.

24. My firm continued to perform other legal work for Pauma after its termination from the Pauma Litigation.

25. The statement about the Pauma Litigation that appeared in my attorney biography describes the preliminary injunction that my firm obtained for Pauma in April 2010, and attributes savings of approximately $100 million to the preliminary injunction.

26. I wrote the statement because I was proud of my and my firm's role in helping Pauma achieve approximately $100 million in savings through the preliminary injunction.

27. In the statement about the Pauma Litigation that appeared in my attorney biography, I did not take credit or responsibility for events in the Pauma Litigation after I no longer represented Pauma in that case.

28. I removed the statement from my attorney biography after the Court denied Rosette's motion to dismiss W&C's Lanham Act claim.

29. Before filing this case, W&C never complained about the statement to me or to anyone at the Rosette firm to my knowledge.

30. On October 26, 2010, I provided deposition testimony in a case styled *Pauma Band of Luiseno Mission Indians of the Pauma Yuima Reservation, Cal. v. Harrah's Operating Co.*, No. GIC847406 (San Diego County Sup. Ct.). In that case, I testified with regard to the complaint filed by Rosette & Associates, PC in the Pauma Litigation, that I was "the first drafter . . . of the rough draft that put a lot of [the] ideas and concepts together and facts[.]" (Rogers Decl. Ex. 12 at 94:14–20.) I also testified that "all of the . . . strategy or ideas behind the litigation were my idea." (*Id.*) I never heard from Pauma or its lawyers after that deposition that anyone at Pauma or working for Pauma thought my testimony was wrong,

inaccurate, or misleading.

## QUECHAN'S ENGAGEMENT OF ROSETTE

31. As I stated in my February 8, 2018 declaration, I attended a breakfast meeting with Quechan President Escalanti and Councilman Mark William White II on June 16, 2017. The purpose of the meeting was to discuss Arizona compact negotiations and gaming issues affecting rural Arizona tribes.

32. Prior to this meeting, I had never met or spoken to President Escalanti or Councilman White. I did not provide President Escalanti or Councilman White with my attorney biography or any Rosette marketing materials at or prior to the June 16, 2017 meeting.

33. The subject of Quechan's California negotiations was introduced later in the June 16, 2017 meeting by President Escalanti.

34. When President Escalanti and Councilman White asked me about the cost of conducting the Arizona and California compact negotiations, I said that I could do the work for both the Arizona and California compacts for a flat fee of $10,000 per month.

35. During the June 16, 2017 meeting, we did not discuss my litigation experience. We also did not discuss Pauma, the Pauma Litigation, Rosette's or my representation of Pauma, or Rosette's or my involvement in the Pauma Litigation.

36. On June 19, 2017, my colleague, Richard Verri, and I made a presentation about Rosette and the legal services Rosette was offering at a Quechan Tribal Council meeting.

37. During the June 19, 2017 Tribal Council meeting, we did not discuss Pauma, the Pauma Litigation, Rosette's or my representation of Pauma, or Rosette's or my involvement in the Pauma Litigation.

38. Quechan leadership told me at the June 19 meeting that they were represented by W&C in the California dispute, and that they were not pleased with the fees being charged by W&C or recent requests from W&C to increase the

1 | monthly retainer to hire a lobbyist.

2 | 39. Quechan retained Rosette on June 23, 2017 to represent the Tribe in connection with the California compact dispute and negotiations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 9, 2020, in Chandler, Arizona.

*[signature]*

Robert Rosette