Cheryl A. Williams (Cal. Bar No. 193532)
Kevin M. Cochrane (Cal. Bar No. 255266)
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
125 S. Highway 101
Solana Beach, CA 92075
Telephone: (619) 793-4809

Attorneys for Plaintiff
WILLIAMS & COCHRANE, LLP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAMS & COCHRANE, LLP**;<br><br>vs.<br><br>**ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; ROSETTE, LLP; RICHARD ARMSTRONG; QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION**, *a federally-recognized Indian tribe*; *and* **DOES 1 TO 100**. | Case No.: 17-CV-01436 GPC DEB<br><br>**WILLIAMS & COCHRANE'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56 AGAINST QUECHAN TRIBE OF FORT YUMA INDIAN RESERVATION ON FOURTH AMENDED COMPLAINT AND ANSWER TO FOURTH AMENDED COMPLAINT AND COUNTERCLAIMS, AND MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56 AGAINST ROSETTE DEFENDANTS ON THIRD CLAIM FOR RELIEF IN FOURTH AMENDED COMPLAINT**<br><br>Date:      December 4, 2020<br>Time:      1:30 p.m.<br>Dept:      2D<br>Judge:     The Honorable Gonzalo P. Curiel |

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with the Motion for Summary Judgment section of this Court's Civil Pretrial & Trial Procedures, Williams & Cochrane, LLP hereby submits its separate statement setting forth all material facts that the moving party contends are undisputed.

| CLAIMED UNDISPUTED MATERIAL FACT | EVIDENCE |
|---|---|
| 1. The Indian law field, particularly in California, is a niche market in which a limited number of law firms participate. | Dkt. No. 285, p. 2 |
| 2. Rosette, LLP is a national law firm that represents Indian tribes, including in gaming compact negotiations under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, and complex litigation related thereto. | Declaration of Cheryl A. Williams ("Williams Decl."), Ex. 9 at P0071-0072 |
| 3. Williams & Cochrane, LLP is a boutique law firm that represents Indian tribes, including in gaming compact negotiations under IGRA and complex litigation related thereto. | Williams Decl., Ex. 9 at P0071-0072 |
| 4. Rosette, LLP and Williams & Cochrane, LLP are direct competitors. | Williams Decl., Ex. 9 at P0071-0072 |
| 5. The head partner of Rosette, LLP – Robert A. Rosette – does not perform actual litigation work, but rather "ha[s] employees that work for [him] that conduct research, draft, make court appearances, and so on and so forth." | Williams Decl., Ex. 53 at P1233-1234 |
| 6. Robert A. Rosette hired the two partners of Williams & Cochrane, LLP – Cheryl A. Williams and Kevin M. Cochrane – as litigation associates at his firm Rosette & Associates, P.C. (which later reorganized into Rosette, LLP) on or about February 2009. | Dkt. No. 233, ¶ 120 |
| 7. On September 4, 2009, Rosette & Associates, P.C. filed a complaint on behalf of the Pauma Band of Mission Indians | *Pauma v. California*, No. 09-01955, Dkt. No. 1 |

| | |
|---|---|
| ("Pauma" or "Tribe") against the State of California ("State") in the United States District Court for the Southern District of California to rescind an amended compact between the tribe and the State. | (S.D. Cal. Sept. 4, 2009); Dkt. No. 233, ¶ 1 (also applies to facts numbered 8-24, *infra*) |
| 8. The attorney who signed and submitted the complaint on behalf of Pauma was Cheryl A. Williams. | *Pauma v. California*, No. 09-01955, Dkt. No. 1 (S.D. Cal. Sept. 4, 2009) |
| 9. On March 29, 2010, Rosette & Associates, P.C. filed a motion for preliminary injunction (amended) requesting the district court to "prevent the State from enforcing the payment provisions of the [amended compact]" until the legal issues in the case were resolved. | *Pauma v. California*, No. 09-01955, Dkt. No. 34 (S.D. Cal. Mar. 29, 2010) |
| 10. The attorney who signed and submitted the motion for preliminary injunction on behalf of Pauma was Cheryl A. Williams. | *Pauma v. California*, No. 09-01955, Dkt. No. 34 (S.D. Cal. Mar. 29, 2010) |
| 11. The district court held a hearing on Pauma's motion for preliminary injunction on April 5, 2010. | *Pauma v. California*, No. 09-01955, Dkt. Nos. 42 & 56 (S.D. Cal. April 6, 2010 & May 13, 2010) |
| 12. The attorneys appearing at the hearing on behalf of Pauma were Cheryl A. Williams and Kevin M. Cochrane. | Williams Decl., Ex. 53 at P1234; *Pauma v. California*, No. 09-01955, Dkt. No. 42 (S.D. Cal. April 6, 2010) |
| 13. On April 12, 2010, the district court issued an order granting Pauma's motion for preliminary injunction, explaining therein that it was requiring Pauma to "pay only | *Pauma v. California*, No. 09-01955, Dkt. No. 44 (S.D. Cal. April 12, 2010) |

| | |
|---|---|
| those payments required under the terms of the original compact between the parties prior to the execution of the [amended compact]." | |
| 14. On or about May 15, 2010, both Cheryl A. Williams and Kevin M. Cochrane departed Rosette & Associates, P.C. and the Pauma case remained with Rosette & Associates, P.C. | Dkt. No. 233, ¶ 122; *Pauma v. California*, No. 10-55713, Dkt. No. 10 (9th Cir. 2010) |
| 15. After the State appealed the injunction order, Rosette & Associates, P.C. filed a brief – its first since the departure of Cheryl A. Williams and Kevin M. Cochrane – with the United States Court of Appeals for the Ninth Circuit opposing the State's motion to stay the preliminary injunction pending appeal on June 11, 2010. | *Pauma v. California*, No. 10-55713, Dkt. No. 14 (9th Cir. 2010) |
| 16. The Ninth Circuit granted the State's motion for a stay. | *Pauma v. California*, No. 10-55713, Dkt. No. 39 (9th Cir. 2010) |
| 17. The General Council of Pauma voted to terminate Rosette & Associates, P.C. on June 13, 2010 (just two days after the filing of the opposition brief), and the firm was replaced as counsel of record in the case by Williams & Cochrane, LLP on or about June 15, 2010. | Williams Decl., Ex. 9 at P0168; *Pauma v. California*, No. 10-55713, Dkt. No. 17 (9th Cir. 2010) |
| 18. On August 17, 2010, Williams & Cochrane filed an emergency motion on behalf of Pauma with the Ninth Circuit, requesting that the Court either reconsider its order granting the stay of the preliminary injunction or clarify the meaning of the order and enjoin the State from acting outside the scope of it for the pendency of the appeal. | *Pauma v. California*, No. 10-55713, Dkt. No. 51 (9th Cir. 2010) |

| | |
|---|---|
| 19. On August 23, 2010, the Ninth Circuit issued an order granting Pauma's emergency motion in full and thereby retroactively denying the State's original motion to stay the preliminary injunction pending appeal. | *Pauma v. California*, No. 10-55713, Dkt. No. 55 (9th Cir. 2010) |
| 20. On November 30, 2010, the Ninth Circuit issued a dispositive order for the appeal in which it kept the preliminary injunction in effect pending any further consideration by the district court. | *Pauma v. California*, No. 10-55713, Dkt. No. 64 (9th Cir. 2010) |
| 21. Following remand, Williams & Cochrane filed an amended complaint on behalf of Pauma on September 9, 2011 that included a new tenth claim for relief based upon misrepresentation under the Restatement and other general principles of federal contract law. | *Pauma v. California*, No. 09-01955, Dkt. No. 130 (S.D. Cal. Sept. 9, 2011) |
| 22. On March 18, 2013, the district court granted summary judgment in favor of Pauma based on the misrepresentation claim in the amended complaint and – in that and subsequent orders – awarded the Tribe rescission of the amended compact and repayment of approximately $36.3 million in heightened revenue sharing fees. | *Pauma v. California*, No. 09-01955, Dkt. No. 227 (S.D. Cal. Mar. 18, 2013) |
| 23. The Ninth Circuit affirmed the judgment of the district court on October 26, 2015. | *Pauma v. California,* 813 F.3d 1155 (9th Cir. 2015) |
| 24. The judgment ultimately took effect on June 28, 2016 with the issuance of the formal mandate after the Supreme Court of the United States denied the parties' cross-petitions for writs of certiorari. | *Pauma v. California*, No. 09-01955, Dkt. No. 316 (S.D. Cal. June 29, 2016) |
| 25. On September 9, 2016, Governor Edmund G. Brown, Jr. signed and thereby approved Senate Bill 1187 in order to | Dkt. No. 220, ¶ 44; *California Legislative* |

| | |
|---|---|
| appropriate "[t]he sum of… $36,320,286.61… to pay the judgment and any applicable interest in Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. State of California, et al. (United States District Court for the Southern District, Case No. 09CV1955)." | *Information,* SB-1187 Claims against the state: appropriation, *available at* http://leginfo.legislature.ca.gov (use Quick Bill Search function) |
| 26. Robert A. Rosette testified during a deposition on October 26, 2010 that he did not know the status of the *Pauma* case as of that date – approximately three months after his termination and two-and-a-half years before the district court would enter judgment in the Tribe's favor. | Williams Decl., Ex. 53 at P1233 |
| 27. Nevertheless, from at least May 31, 2017 through July 1, 2017, Robert A. Rosette advertised on his Rosette, LLP website that "Mr. Rosette also successfully litigated a case saving the Pauma Band of Luiseno Mission Indians over $100 Million in Compact payments alleged owed to the State of California against then Governor Schwarzenegger." | Williams Decl., Ex. 9 at P0167 |
| 28. Moreover, an "Executive Assistant at Rosette, LLP" named Christian Cienfuegos who is responsible for "manag[ing] the creation and distribution of the firm's marketing materials" filed a declaration earlier in this case on April 6, 2018 in which she explained "Rosette, LLP often commissions the printing and distribution of marketing brochures," and attached as Exhibit 1 one such "marketing brochure maintained in the ordinary course of business at Rosette, LLP" that was "scanned and added to Rosette LLP's shared drive on May 9, 2011." | Williams Decl., Ex. 14, ¶¶ 4, 6-7 |

| | |
|---|---|
| 29. That marketing brochure attached to the foregoing Cienfuegos declaration contains a profile for Robert A. Rosette that states "Mr. Rosette also successfully litigated a case saving the Pauma Band of Luiseno Mission Indians over $100 Million in Compact payments allegedly owed to the State of California against then-Governor Schwarzenegger." | Williams Decl., Ex. 14 at P0231 |
| 30. More than a year after his termination from the *Pauma* suit, on June 26 and 27, 2011, Robert A. Rosette and his firm instigated a series of e-mail communications with the State's then compact negotiator in an attempt to settle the litigation without Williams & Cochrane's knowledge, even though he admittedly did not represent the Tribe. | Williams Decl., Ex. 54 |
| 31. These e-mail communications only came to light after the Deputy Attorney General assigned to represent the State in the *Pauma* suit became concerned about the ethicality of the situations and contacted Cheryl A. Williams. | *Pauma v. California*, No. 09-01955, Dkt. No. 118-2 (S.D. Cal. Aug. 15, 2011) |
| 32. Williams & Cochrane had to move for and – on May 23, 2012 – obtain a protective order that controlled settlement discussions in the matter. | *Pauma v. California*, No. 09-01955, Dkt. No. 183 (S.D. Cal. May 23, 2012) |
| 33. On May 31, 2015, Robert A. Rosette e-mailed various individuals affiliated with the Pauma tribe that had fired him years earlier to inform them "[i]t appears that the Tribe's litigation attorneys [*i.e.*, Williams & Cochrane] have renewed their effort to seek a protective order through the Court," and requested "letters clearing my good name." | Williams Decl., Ex. 55 |
| 34. On May 31, 2015, Williams & Cochrane was, in fact, | *Pauma v. California*, |

| | |
|---|---|
| not seeking another protective order, as the district court case was over by that point in time and the attorneys were preparing for the Ninth Circuit hearing on July 10, 2015. | Nos. 14-56104 & 14-56105 (9th Cir. filed July 9, 2014) |
| 35. During the second half of August 2016 and the first part of September 2016, multiple newspapers in California – including the San Diego Union-Tribune and Sacramento Bee – reported on Governor Brown signing Senate Bill 1187 that would pay Pauma its $36.3 million judgment. | Williams Decl., Ex. 16; Dkt. No. 220, ¶ 48 |
| 36. On August 24, 2016, the Chief Executive Officer of the Quechan Tribe of the Fort Yuma Indian Reservation's California gaming facility Charles Montague sent an e-mail to tribal President Michael Jackson in which he linked to the Sacramento Bee article on the *Pauma* case and suggested "the tribe should pursue a new compact that could lead to a material change in transfers to the tribe." | Williams Decl., Ex. 16 |
| 37. Quechan was once a signatory to the initial form gaming compact in the State of California ("1999 Compact"), and, since it did not engage in class III gaming before the execution of this agreement, it only had to pay revenue sharing into the Revenue Sharing Trust Fund on a schedule that required annual per-machine fees of $0 on machines 0-700 and $900 on machines 701-1100. | Williams Decl., Ex. 19 |
| 38. On June 28, 2006, Quechan executed an amended gaming compact with the State of California ("2006 Amendment") that replaced the foregoing revenue sharing structure with one that required, *inter alia*, a base payment of 10% of the first $50 million in annual net win. | Williams Decl., Ex. 20 at P0273 |

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| 39. The 2006 Amendment took effect on January 17, 2007, the date of publication in the Federal Register. | 72 Fed. Reg. 2007 (Jan. 17, 2007) |
| 40. By replacing the financial terms of the 1999 Compact with those in the 2006 Amendment, Quechan paid an additional $39,732,774 in revenue sharing between January 17, 2007 and July 2016. | Williams Decl., Ex. 26; *see also* Williams Decl., Exs. 19-20 |
| 41. On or about July 31, 2016, Quechan stopped paying revenue sharing altogether under its 2006 Amendment. | Williams Decl., Ex. 26; Dkt. No. 231, ¶ 53 |
| 42. Section 4.3.3 of the 2006 Amendment explains that the "[f]ailure to make timely payments shall be deemed a material breach of this Amended Compact," and requires the "Tribe [to] cease operating all Gaming Devices until full payment is made" if a single revenue sharing payment is overdue for more than 60 days, and to "cease operating all Gaming Devices for an additional 30 days after full payment of all outstanding amounts" if two or more revenue sharing payments are overdue for more than 60 days. | Williams Decl., Ex. 30 at P0275-0276 |
| 43. In September 2016, President Jackson spoke with the attorneys of Williams & Cochrane about representing his tribe in connection this perceived dispute over the 2006 Amendment that had required his tribe to pay the State $39,732,744 in excess revenue sharing fees vis-à-vis its 1999 Compact. | Williams Decl., Exs. 16-18; Dkt. No. 231, ¶¶ 49, 55 |
| 44. Williams & Cochrane and Quechan executed an Attorney-Client Fee Agreement on September 29, 2016 to address the dispute over the 2006 Amendment – one that contains a hybrid fee structure that was negotiated and | Williams Decl., Exs. 17-18, 69 |

| | |
|---|---|
| specifically requested by the Tribe. | |
| 45. Section 4 of the Attorney-Client Fee Agreement details the monthly flat fee and explains in pertinent part that "[c]lient agrees to pay a flat fee of $50,000 per month for Firm's services under this Agreement" and "[t]his fee is fixed and does not depend on the amount of work performed or the results obtained." | Williams Decl., Ex. 17, § 4 |
| 46. Section 5 of the Attorney-Client Fee Agreement details the contingency fee and explains in pertinent part that the "[f]irm's contingency fee will be fifteen percent (15%) of the net recovery" – a term that "include[s] any credit, offset, or other reduction in future compact payments to the State in a successor compact (whether new or amended) as a result of excess payments made under Client's tribal/State compact amended in 2006 in lieu of or in addition to a monetary 'net recovery'" – "if the representation matter is resolved through settlement or negotiations… before the filing of a lawsuit or within 12 months thereof." | Williams Decl., Ex.  17, § 5 |
| 47. Section 11 then details what happens if Williams & Cochrane is discharged in good faith before the contingency fee definitively attaches, which is that the "Firm will be entitled to be paid by Client a reasonable free for the legal services provided in lieu of the contingency fee set forth in paragraph 5 of this Agreement," and "[s]uch fee will be determined by considering the following factors," the first of which is "[t]he amount of the fee in proportion to the value of the services performed." | Williams Decl., Ex. 17, § 11 |

Case No.: 17-CV-01436 GPC DEB
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| 48. On October 12, 2016, Williams & Cochrane sent the California Office of the Governor a request to renegotiate the 2006 Amendment and thereby obtain a compact that "provides the Tribe with full value for all of the excess illegal payments it has made under the 2006 Amendment." | Williams Decl., Ex. 21 |
| 49. Just five days later, on October 17, 2016, the State's Senior Advisor for Tribal Negotiations Joginder Dhillon responded, indicating that "[t]he State agrees to enter into negotiations for a new tribal state gaming compact[.]" | Williams Decl., Ex. 22 |
| 50. On October 25, 2016, President Jackson, on his own volition, sent a letter to Mr. Dillon to explain the 2006 Amendment "caused a terrible financial burden on our Tribe" and that "we look forward to settling the differences" through renegotiations. | Williams Decl., Ex. 23 |
| 51.  On December 6, 2016, the Office of the Governor sent a draft compact to Quechan care of Williams & Cochrane that, according to the cover letter from Mr. Dhillon, "would reduce the Quechan Tribe's existing payment obligations by approximately $4 million annually" for the duration of the twenty-five- plus-year agreement. | Williams Decl., Exs. 24-25 |
| 52. Late in the winter of 2016, Quechan had an election for all five of the biannual Councilmember seats on the seven-person Tribal Council. | Williams Decl., Exs. 12-13, ¶ 2; Dkt. No. 220, ¶ 75 |
| 53. The initial vote tally indicated that challengers won four of the five Councilmember seats, and the Tribe spent the ensuing months mired in infighting over the election results. | Williams Decl., Exs. 12-13, ¶ 2; Dkt. No. 220, ¶ 75 |
| 54. The Tribal Council – including the four challengers for | Williams Decl., Exs. 12- |

Case No.: 17-CV-01436 GPC DEB
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| the Tribal Councilmember seats – was sworn into office on or about March 3, 2017, after which President Jackson and the tribal Vice President stepped down in short order. | 13, ¶ 2; Dkt. No. 220, ¶ 76 |
| 55. On April 27, 2027, one of the Councilmembers who had assumed office on March 3, 2017 named Mark William ("Willie") White II e-mailed an attorney named Wilson Pipestem to see if there was a way out of the Attorney-Client Fee Agreement, possibly by claiming "the Tribe… was under duress at the time of signing this agreement." | Williams Decl., Ex. 49 at P1219 |
| 56. Out of this e-mail, on May 5, 2017, Mr. Pipestem sent the new tribal President Keeny Escalanti a legal proposal to review "whether the law and facts present opportunities for negotiation of fees paid to [Williams & Cochrane]." | Williams Decl., Ex. 49 at P1221 |
| 57. Both President Escalanti and Councilmember White filed declarations earlier in this case testifying they "decided not to pursue a relationship with [Wilson Pipestem]." | Williams Decl., Exs. 12-13, ¶ 7 |
| 58. Shortly after May 19, 2017, the CEO of Quechan's gaming facility Charles Montague called Cheryl A. Williams to inform her that the Tribal Council had re-voted on how to handle the compact dispute and had once again decided to resolve it through negotiations using her firm | Williams Decl., Ex. 67; Dkt. No. 220, ¶ 81 |
| 59. Williams & Cochrane had a final compact negotiation session with the State of California on June 14, 2016. | Williams Decl., Exs. 37-40 |
| 60. Later that afternoon, Cheryl A. Williams called the CEO of Quechan's gaming facility Charles Montague to relay the outcome of the meeting and the process for winding up the negotiations over the final sixteen days in June 2016. | Williams Decl., Exs. 37, 67 |

| | |
|---|---|
| 61. Shortly after 1:38 p.m. the following day (*i.e.*, June 15, 2016), Ms. Williams had a similar phone call with the tribal Vice President Virgil Smith, who reaffirmed the Tribe's desire to conclude the compact with Williams & Cochrane. | Williams Decl., Exs. 37-39, 67 |
| 62. At 3:28 p.m. of the same afternoon, Vice President Smith sent an email to the rest of the Tribal Council to explain he just "received a call from Cheryl A. Williams" that detailed the agreement in principle reached between the parties at the negotiation session the prior day, and how the compact would be in place by "the end of June or possibly the first week of July." | Williams Decl., Ex. 39 |
| 63. The very next morning, June 16, 2017, President Escalanti and Councilmember White met Robert A. Rosette for breakfast to discuss his "experience with compact negotiations in California" and "whether [he] may be interested in assisting in Quechan's California negotiations." | Williams Decl., Exs. 12-13, ¶¶ 9-10 |
| 64. The only California compact experience detailed on the Rosette, LLP website or within its marketing brochures at the time was the *Pauma* case. | Williams Decl., Exs. 14-15 |
| 65. No one affiliated with Quechan informed Williams & Cochrane about this meeting. | Williams Decl., Exs. 37-38 |
| 66. Williams & Cochrane, LLP transmitted a final draft compact to the State of California via e-mail on June 21, 2017 that "include[d] those changes we discussed at our meeting last week" – like those related to the maximum slot machine count and number of authorized gaming facilities – and "boilerplate language from other recent compacts," | Williams Decl., Exs. 40, 67; Dkt. No. 220, ¶¶ 85-88. |

Case No.: 17-CV-01436 GPC DEB
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| which the attorneys for the parties planned on discussing on or about the "next Monday" June 26, 2017 in order to wind up the negotiations by the end of the month. | |
| 67. On June 27, 2017, and after contacting the State of California, Quechan transmitted a "Termination of Attorney-Client Relationship" letter to Cheryl A. Williams and Kevin M. Cochrane signed by putative President Keeny Escalanti – one that explained Quechan wanted the compact materials, was "terminating the services of Williams & Cochrane, LLP, effective immediately upon your receipt of this letter," that the tribe "will consider all its obligations to the Firm satisfied upon payment of a pro-rated [monthly flat] fee for your services as of the date of this letter," and that it "will not pay any contingency fee or 'reasonable fee for the legal services provided in lieu' thereof." | Williams Decl., Ex. 41; Dkt. No. 220, ¶ 91 |
| 68. The June 27th letter then explained that "we consider payment of your accrued fees for June 2017 as more than fair" and "[w]e strongly advise you against pressing your luck further out of concern for the reputation of your firm in Indian Country and in the State of California." | Williams Decl., Ex. 41 |
| 69. To date, Quechan has never paid Williams & Cochrane any portion of the monthly flat fee for June 2017, let alone for the 27 of 30 days which its attorneys worked. | Williams Decl., Ex. 56 at P1245; Dkt. No. 231, ¶ 93 |
| 70. The June 27th letter ended by instructing Williams & Cochrane to "[p]lease direct all communications regarding this matter to Robert A. Rosette." | Williams Decl. Ex. 41 |
| 71. The day after the transmission of the June 27th letter, an | Williams Decl., Ex. 44 |

13

Case No.: 17-CV-01436 GPC DEB

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| associate attorney for Rosette, LLP by the name of Cecilia Guevara-Zamora both called and e-mailed the office of California State Senator Ben Hueso "to set a brief meeting with Senator Hueso to discuss the legislative process for getting the compact ratified," which she hoped could take place the following day. | |
| 72. On July 3, 2017, Cheryl A. Williams e-mailed a copy of the June 21, 2017 final draft compact to representatives for Rosette, LLP and Quechan. | Williams Decl., Ex. 68; Dkt. No. 220, ¶ 105 |
| 73. Quechan executed its compact on August 28, 2017, after the State of California raised the tribe's "outstanding payment obligations to the State under the 2006 Amendment" after the firm switch and Quechan and the State settled "by [having the tribe] mak[e] a reduced total payment of two million dollars ($2,000,000) to the State." | Williams Decl., Ex. 45; *see also* Williams Decl, Exs. 22, 24-26, 34-36, 40 |
| 74. Quechan's 2017 compact took effect on January 22, 2018, the date of publication in the Federal Register. | 83 Fed. Reg. 3015 (Jan. 22, 2018) |
| 75. The compact executed by Quechan on August 28, 2017 and the June 21, 2017 final draft compact by Williams & Cochrane are one and the same with respect to, *inter alia*, the number of casinos, the number of slot machines, the revenue sharing structure on the initial 1,200 machines, and the term of the agreement. | Williams Decl., Ex. 40 at P0912-913, P0912, P0913-0914, P0917, P1012; Ex. 45 at P1073, P1072, P1073-1074, P1076-1077, P1084, P1169 |
| 76. Shortly after executing the compact, on October 4, 2017, President Escalanti testified before the United States Senate on Indian Affairs and stated in part, "[w]e are pleased with | Williams Decl., Ex. 46 at P1206 |

| | |
|---|---|
| the terms of our new compact, as it allows for an expansion of gaming devices while offering up more favorable revenue-sharing provisions for the Tribe that will allow it to improve its financial status and augment services that we can provide its membership." | |
| 77. On April 18, 2020, Councilmember White posted a message to his Facebook page touting the success of his Tribal Council in which he explained it was responsible for "negotiating an incredible compact." | Williams Decl., Ex. 47 |
| 78. President Escalanti and Councilmember White filed declarations earlier in this case in which they testified in unison that the Tribal Council was so satisfied with Mr. Rosette's work that he became general counsel for the tribe. | Williams Decl., Exs. 12-13, ¶ 20 |
| 79. Williams & Cochrane, LLP was paid neither the monthly flat fees for June 2017 through January 22, 2018 (i.e., the effective date of the compact) nor the 15% contingency fee for the revenue sharing reduction Quechan received under the new compact as a result of its excess payments under the amended compact. | Williams Decl., Exs. 41, 56 |
| 80. In January 2018, or just six months after the repudiation of the Attorney-Client Fee Agreement, Quechan executed a design agreement for a $5.5 million renovation of the Paradise Casino, the tribe's gaming facility on the Arizona side of the border. | Williams Decl., Ex. 48 |
| 81. Around the same time, Quechan hired WilmerHale, a firm that helped defend, in a federal action, the Tohono O'odham Tribe for in excess of $13.5 million in legal fees. | Williams Decl., Exs. 62-63; Dkt. Nos. 11-12 |

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

1    RESPECTFULLY SUBMITTED this 17th day of September, 2020

2

3                                          WILLIAMS & COCHRANE, LLP

4                                          By: */s/ Kevin M. Cochrane*

5                                          Cheryl A. Williams

6                                          Kevin M. Cochrane
                                           caw@williamscochrane.com
                                           kmc@williamscochrane.com

7                                          WILLIAMS & COCHRANE, LLP
                                           125 S. Highway 101
8                                          Solana Beach, CA 92075

9                                          Telephone: (619) 793-4809

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS