1
2
3
4
5

Cheryl A. Williams (Cal. Bar No. 193532)
Kevin M. Cochrane (Cal. Bar No. 255266)
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
125 S. Highway 101
Solana Beach, CA 92075
Telephone: (619) 793-4809

6
7

Attorneys for Plaintiff
WILLIAMS & COCHRANE, LLP

8       **IN THE UNITED STATES DISTRICT COURT**

9       **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  **WILLIAMS & COCHRANE, LLP**;            Case No.: 17-CV-01436 GPC DEB

12              vs.                          **DECLARATION OF FARRELL
                                             HOOSAVA IN SUPPORT OF
13  **ROBERT ROSETTE; ROSETTE &**            WILLIAMS & COCHRANE'S:
    **ASSOCIATES, PC; ROSETTE, LLP**;        (1) OPPOSITION TO ROSETTE
14                                           DEFENDANTS' MOTION FOR
    **QUECHAN TRIBE OF THE FORT**            SUMMARY JUDGMENT;
15  **YUMA INDIAN RESERVATION**, *a*         (2) OPPOSITION TO QUECHAN
    *federally-recognized Indian tribe*; *and*  TRIBE'S MOTION FOR
16  **DOES 1 TO 100**.                       SUMMARY JUDGMENT**

17                                           Date:      December 11, 2020
                                             Time:      1:30 PM
18                                           Dept:      2D
                                             Judge:     The Honorable Todd W.
19                                                       Robinson

20
21
22
23
24
25
26
27
28

F. HOOSAVA DECL. ISO W & C'S OPPS. TO MOTS. FOR SUMM. J.

1       I, FARRELL HOOSAVA, declare as follows:

2       1.      I am a tribal member of the Tonto Apache Tribe ("Tribe") located in Payson,

3   Arizona. I am also a duly elected member of the Tonto Apache Tribal Council. I am

4   competent to testify and base this declaration on personal knowledge and the records of

5   the Tribe. I submit this declaration in support of Williams & Cochrane's (1) Opposition

6   to Quechan Tribe's Motion for Summary Judgment; and (2) Opposition to Rosette

7   Defendants' Motion for Summary Judgment.

8       2.      I was elected to the Tonto Apache Tribal Council on 2019 to serve a two-

9   year term. Robert Rosette and his firm, Rosette LLP, already represented the Tribe when

10  I came into office and I believe had done so since approximately late 2016.

11      3.      At the time I took office, the Rosette firm had already set up an online

12  payday lending operation in the name of my Tribe entitled "Comet Loans." I began

13  noticing strange and concerning elements in connection with the operation of Comet

14  Loans. For example, the Tribe was required to pay a monthly finder's fee in connection

15  with Comet Loans by sending a check made out to "Endeavor Consultants" to a UPS

16  store mail box in North Scottsdale, Arizona.

17      4.      I began digging for information about Comet Loans and asking questions

18  about it from employees within the Tribal finance department. No one amongst the Tribal

19  membership or the Tribal Council seemed to know much about it other than Vice

20  Chairman Calvin Johnson who worked directly with Robert Rosette on anything having

21  to do with Comet Loans. From my research, I discovered that the Tribe was getting a

22  piddly 3 percent of gross proceeds from the operation. Of that three percent, the Tribe

23  was required to pay 25 percent of the three percent (or .0075 percent of gross) to the

24  "Endeavor Consultants" for a "finder's fee." The Tribe was also required to pay for all

25  Comet Loans' business expenses including employee wages and benefits, utilities, lease

26  payments, etc., usually totaling around $20,000 per month. On top of that, the Tribe was

27  required to pay on average about $4,000 per month to the Rosette firm for legal fees in

28  connection with Comet Loans. The remaining amount leftover for the Tribe ranged

1    generally between $10,000 to $20,000 per month out of a monthly gross of

2    approximately $1.7 million dollars. None of these financial arrangements had been

3    disclosed by Mr. Rosette to the tribal membership or the Tribal Council as a whole.

4        5.    As a result of my research, I confronted Chairwoman Jeri DeCola asking her

5    what the Tribe really knew about Robert Rosette. I had expressed previous concerns

6    about Mr. Rosette at a community meeting before I was a Tribal Council member, likely

7    during 2018, during which I asked Mr. Rosette about an individual named Neal Rosette

8    whom I read was sent to prison in connection with his role with another online payday

9    lending operation called Plain Green Loans operated under the name of the Chippewa

10   Cree Tribe of Rocky Boy Montana. *See* https://www.justice.gov/usao-mt/pr/plain-green-

11   officials-sent-prison. Robert Rosette told the Tribe that he is also from the Chippewa

12   Cree Tribe of Rocky Boy Montana so the connection with Neal Rosette, who is also

13   involved in online payday lending, seemed a likely one. However, Mr. Rosette denied

14   having any connection with Neal Rosette. Then, at a subsequent meeting with the Tribal

15   Council, I was told that Mr. Rosette threatened to sue me for asking him questions about

16   Neal Rosette at the community meeting, based on my conversation with a tribal employee

17   who was present at the meeting but subsequently terminated.

18       6.    In October 2019, I overheard a conversation in the Tribal office between

19   Robert Rosette and Chairwoman DeCola, Vice Chairman Johnson and Councilmember

20   Lucinda Flores in which Mr. Rosette discussed the instant lawsuit filed by Williams &

21   Cochrane against him, and said that if anyone talks about him or makes him look bad, he

22   was going to sue them. During the same month, Vice Chairman Johnson relayed to me at

23   a Tribal Council meeting that Mr. Rosette had told him that the instant suit had been

24   "dropped" and that if anyone discussed anything about Rosette and what he was doing,

25   Rosette was going to sue them.

26       7.    After doing some research, I discovered that the instant suit had not been

27   "dropped." I met with the attorneys of Williams & Cochrane, Cheryl Williams and Kevin

28   Cochrane, in October 2019. I gave them a copy of the Rosette firm's brochure, a true and

2                    Case No.: 17-CV-01436 TWR DEB

F. HOOSAVA DECL. ISO W & C'S OPPS. TO MOTS. FOR SUMM. J.

correct copy of which is attached hereto as Exhibit 1. Multiple copies of this same brochure in color glossy format had been sitting around the Tribal Office, in the location where the Tribal Council members regularly meet, for quite some time after it was provided to the Tribal Council by Mr. Rosette, presumably in late 2016 based on the meeting minutes of Mr. Rosette's initial arrival at the Tribe. Because of Mr. Rosette's repeated threats to me and other tribal members, I requested that the attorneys of Williams & Cochrane keep my identity and involvement in the suit confidential as long as possible.

9. I was informed by Ms. Williams in early June 2020 that she may need to disclose my identity as the confidential witness who provided the Rosette firm brochure during her deposition on June 11, 2020. She informed me that she had indeed been required to do so after the deposition ended.

10. Just five days after I was disclosed as the confidential witness in the instant suit, on June 16, 2020, I received documents from the other members of the Tribal Council indicating that I was subject to removal from office for allegedly disclosing confidential tribal business information. True and correct copies of these documents are attached hereto as Exhibit 2. I also note that two of the Tribal Council members leading the illegal removal charge, Chairwoman Jeri DeCola and Vice Chairman Calvin Johnson, had been voted out of office in a duly scheduled election on June 13, 2020, the previous Saturday. The newly elected Chairman Wally Davis, and new Council member Joe Morgan, would be sworn in to their new positions on the Tribal Council according to tribal law on June 20, 2020. Thus, the Tribal Council was acting as a "lame duck" entity during the week of my supposed removal.

11. Attached hereto as Exhibit 3 is a true and correct copy of the statement I presented at my so called "hearing" regarding my removal, which was held on June 19, just four days after I was first informed of the removal. As described in my statement, these allegations supporting my illegal "removal" were completely baseless. One of the emails addresses to which I supposedly sent and disclosed the information to was merely

3

Case No.: 17-CV-01436 TWR DEB

F. HOOSAVA DECL. ISO W & C'S OPPS. TO MOTS. FOR SUMM. J.

1   my own personal email address so that I could review the documents at home. The

2   second was to an individual who was the Tribal Secretary at the time. The other

3   allegation, that I sent these documents to the Arizona Department of Gaming, is based on

4   accusations from an attorney at the Rosette firm, Richard Verri. Note that his email to the

5   Tribal Council identifies a "third party" who sent the documents to the Arizona

6   Department of Gaming but does not identify me as that "third party."

7       12.    Although I brought witnesses to speak on my behalf, they were not allowed

8   into the hearing and neither were any other tribal members. Of course, the Tribal Council

9   members voted to remove me based on the sham evidence assembled with the assistance,

10  and I believe at the direction of, Robert Rosette in retaliation for my participation as a

11  witness in this lawsuit and my research into Comet Loans. A true and correct copy of the

12  so called "decision" removing me from office is attached hereto as Exhibit 4. Note that it

13  is signed on June 19, 2020, which was the last day in office for both Chairwoman DeCola

14  and Vice Chairman Johnson.

15      13.    Before the hearing took place, I had Ms. Williams assist me by sending a

16  request to the Arizona Department of Gaming under the Arizona state law version of the

17  Freedom of Information Act seeking the emails sent to the Arizona Department of

18  Gaming by the anonymous "third party" attaching the Tribe's business documents. The

19  Arizona Department of Gaming complied with the request but not in time to present the

20  evidence in my hastily scheduled hearing, not that it would have made any difference in

21  the pre-determined outcome. A true and correct copy of the emails we received in

22  response to the request from the Arizona Department of Gaming is attached hereto as

23  Exhibit 5. These documents show that the "third party" who sent the documents to the

24  Arizona Department of Gaming was not me, but a tribal member and former Chairman

25  named Ivan Smith. Yet Richard Verri, a Rosette attorney, sent an email about this event

26  deliberately omitting Mr. Smith's identity so that they could conspire to accuse me of

27  sending the information instead and use it as the basis for my illegal removal from office.

28  Nonetheless, I do not believe Mr. Smith did anything wrong in contacting the Arizona

4                    Case No.: 17-CV-01436 TWR DEB

F. HOOSAVA DECL. ISO W & C'S OPPS. TO MOTS. FOR SUMM. J.

1  Department of Gaming. Nor is it misconduct to discuss tribal business with tribal
2  members and these secret business deals should have been presented to the membership.

3      15.    After Chairman Wally Davis took office on June 20, 2020, I discussed with
4  him had concerns he had about what happened with my removal, as the process had never
5  been done before at our Tribe, and he heard from numerous tribal members who signed a
6  petition to reinstate me. Nonetheless, Vice Chairman Carlos "Charlie" Lopez pushed
7  forward to hold an election to fill my position on the Council without the authorization of
8  the Chairman. Lopez had been on the Tribal Council previously but was elected to the
9  Vice Chair position in place of Calvin Johnson. Chairman Davis cancelled the August 1,
10  2020 Special Election to replace me. He also began looking into Mr. Rosette and the
11  improprieties with Comet Loans as well. Chairman Davis discovered, as had I, that our
12  Tribe had been sued by a Comet Loans customer and Rosette's firm defended the suit
13  without informing the Tribe or the Tribal Council as a whole about the suit at all. A true
14  and correct copy of this complaint is attached hereto as Exhibit 6.

15      16.    While Chairman Davis was making plans to terminate Robert Rosette and
16  his firm, on September 22, 2020, Charlie Lopez, Lucinda Flores and Calvin Johnson
17  began an illegal takeover of the Tonto Apache Tribal government by presenting
18  Chairman Davis with yet another illegal "removal," this one of the Chairman himself,
19  again based on charges drafted by the Rosette firm that are baseless. Johnson was not a
20  valid member of the Tribal Council at the time and thus Lopez and Flores did not have a
21  quorum or authority to act as the Tribal Council. A true and correct copy of the removal
22  document presented to Chairman Davis is attached hereto as Exhibit 7.

23      17.    After presenting the removal document to Chairman Davis, Lopez decreed
24  himself the new Chairman. Then, Lopez, Johnson and Flores changed the locks on the
25  Tribal Office, deactivated the tribal email accounts for Chairman Davis and
26  Councilmember Morgan, and told the Chief of Tribal Police that she would be fired if she
27  took orders from anyone but them. And just like that, Robert Rosette and his supporters
28  assumed control of the Tribe. Since then, tribal members organized to gather enough

signatures to recall Lopez and Flores from office pursuant to the Constitution of the Tonto Apache Tribe. However, I doubt that they will follow this directive so long as they have Robert Rosette advising them on how to stay in power. Mr. Rosette and his cohorts have destabilized my Tribe's government, destroyed its democracy by disregarding the will of the people, and jeopardized the safety and well-being of all tribal members in a situation that may well deteriorate into armed conflict, just as I've heard has happened at other tribes where Mr. Rosette has been involved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of October, 2020 at Payson, Arizona.

By: _____
Farrell Hoosava

F. HOOSAVA DECL. ISO W & C'S OPPS. TO MOTS. FOR SUMM. J.

**TABLE OF EXHIBITS TO DECLARATION OF FARRELL HOOSAVA IN SUPPORT OF OPPOSITIONS TO SUMMARY JUDGMENT**

| EX. NO. | DOCUMENT | PAGE |
|---|---|---|
| 1 | Rosette LLP Firm Brochure presented to Tonto Apache Tribe (Excerpted) | 01 |
| 2 | Articles of Impeachment and Removal of Tribal Council Member Farrell Hoosava | 06 |
| 3 | Response of Tribal Council Member Farrell Hoosava to Articles of Impeachment by Lame Duck Chair DeCola and Lame Duck Vice Chair Johnson | 28 |
| 4 | June 19, 2020 Letter to Farrell Hoosava purportedly from Jeri DeCola, Calvin Johnson, Lucinda Flores and Carlos Lopez | 31 |
| 5 | Emails Received from Arizona Department of Gaming in Response to Request for Public Records | 33 |
| 6 | Complaint in *Webster v. Tonto Apache DBA Comet Loans* | 37 |
| 7 | September 21, 2020 Letter to Chairman Wally Davis purportedly from the "Tribal Council" | 46 |

EXHIBIT 1



> *Our enduring relationships with tribal leaders, gaming industry pioneers and federal policymakers allow us to accomplish our clients' objectives quickly and effectively.*

Rosette, LLP is a leading Indian owned national law firm representing tribal governments and entities with offices in Phoenix, Arizona, and Sacramento, California. Robert Rosette, formerly the managing partner of a nationwide Indian law firm, formed Rosette & Associates in February, 2005. Mr. Rosette assembled a dynamic team of attorneys committed to providing Indian tribes with the highest level of professionalism in the practice of law.

Our firm has a national reputation for assisting tribes in economic development and gaming under the Indian Gaming Regulatory Act (IGRA). Our enduring relationships with tribal leaders, gaming industry pioneers and federal policymakers allow us to accomplish our clients' objectives quickly and effectively. Our goal is to promote the economic and political resources our clients require to support their communities and preserve their sovereign status.

We specialize in federal Indian law, complex litigation, governmental negotiations, financial transactions and representation of internal tribal government matters. The internal diversity of the firm's practice allows us to effectively represent our client's present and future interests. The firm, with extensive experience in federal Indian law, represents Indian Tribes across the United States. Our firm's practice focuses on complex litigation, contracts, gaming and Indian land issues at both trial and appellate levels. The firm's attorneys speak at professional seminars relating to Indian issues for various associations.



Ex 1
01
WC10994

# Practice Areas

> *Our firm has a national reputation for assisting tribes in economic development and gaming under the Indian Gaming Regulatory Act*



### ECONOMIC DEVELOPMENT AND DIVERSIFICATION

Our firm assists tribal governments in the development of diverse economic enterprises to invest in infrastructure and support governmental programs.

We advise on the formation of tribal economic development corporations and assist tribes to invest in business interests ranging from restaurants and hotels, to retail shopping centers and energy generation facilities.

We advise our clients in project development, competitive bidding, procurement, environmental issues and employment law. We are experienced in taxable and tax-exempt bond financing, traditional lending, lease financings, short-term obligations, letters of credit and lines of credit.

We assist our clients to ensure compliance with SEC reporting deadlines and other relevant filings. We draft tribal tax codes, assist tribes to enforce tribal tax laws and advise tribes in disputes regarding collection. We have an active practice in helping tribes develop their natural resources, including oil, gas, coal and alternative energy production.

### GAMING

We negotiate and draft agreements for financing, development, construction and management of new and existing gaming facilities. We reach memorandums of understanding with local governments and successfully negotiate Class III gaming compacts with states.

We draft tribal gaming ordinances, assist tribal regulatory agencies to develop regulations and minimum internal control standards and provide advice regarding procedures for licensing and background investigations for vendors and employees.

We advocate on behalf of our clients before the National Indian Gaming Commission ("NIGC") in matters including enforcement actions, Class II and Class III regulatory issues, and we secure tribal rights to conduct gaming on land acquired under section 20 of the IGRA.



Ex-1
02

WC10995

## FINANCE

Rosette, LLP is a premier law firm representing Indian tribes and enterprises in financing transactions. Our attorneys are responsible for $2 Billion in financing for Indian Tribes throughout the United States, including taxable and tax-exempt bond financing, traditional loans, lease financings, short-term obligations, letters of credit and lines of credit.

Our firm assists tribes to select finance options, structure finance transactions and effectively negotiate around sensitive concerns such as limited waivers of sovereign immunity. Through efficient use of financial tools we enable our clients to pursue engagements in accordance with long term economic development goals. We negotiate favorable terms, which may include large amortization periods, lower rates and beneficial covenants.

We have longstanding relationships with lenders and finance professionals who value our experience. We have successfully closed numerous complex transactions with banks and underwriters. Our firm efficiently procures tribal financing while obtaining superior terms for our clients.



## LITIGATION

An important part of our practice is the representation of our clients in litigation in federal, state and tribal courts, as well as federal administrative boards that have jurisdiction over Indian affairs. On behalf of our clients, we advocate to protect our clients' rights and interests, including but not limited to: assertions of tribal civil and/or criminal jurisdiction, enforcement of federal trust obligations, gaming device classification, enforcement of tribal-state compacts, assertions of tribal sovereign immunity and the protection of tribal cultural and property rights.

We work with our clients from pre-litigation counseling through all appeals to reach the winning result that meets our clients' objectives; and we are renowned for our ability to succeed in high-stakes, complex cases. We frequently direct litigation in coordination with larger firms, lending our expertise in federal Indian law and making our legal resources available to our clients. Our formula for success enables us to provide superior service and deliver the desired results.



## GOVERNMENT RELATIONS

Rosette, LLP assists tribes as they interface with federal, state and local governments. In Washington DC, we represent tribes in proceedings before federal administrative agencies, including the United States Department of the Interior, the Environmental Protection Agency, the Federal Energy Regulatory Commission and the National Indian Gaming Commission.

Our firm represents clients in administrative hearings and appeals, as well as judicial proceedings that may involve review of an agency's decision. We also represent our clients' interests in Congress through drafting testimony for clients appearing before congressional committees.

We advocate for tribe-specific initiatives and appropriations, monitor and draft legislation, and create successful political strategies to advance tribal interests.

## INTERNAL TRIBAL RELATIONS AND TRIBAL SOVEREIGNTY

Our firm understands that protecting tribal sovereignty is essential to our clients. We actively defend tribal jurisdiction to protect tribal resources, assert sovereign immunity, and promote tribal taxing authority.

Our firm represents Tribal Councils, Gaming Commissions, Tribal Courts, personnel committees, housing and utility authorities, clinics, and election boards. We aid in the administration of tribal programs and agencies such as fiscal departments, education services, housing, and cultural preservation. We procure self-determination contracts for programs such as water projects, sanitation facilities construction, health services and transportation.

We work with tribal governments on constitutional development and reform, drafting tribal policies, ordinances, and regulations and developing tribal adjudicatory systems.

Ex 1
03
WC10996

www.rosettelaw.com

## OFFICE LOCATIONS

### Phoenix



565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225

T (480) 889 8990
F (480) 889 8997

www.rosettelaw.com

### Sacramento



193 Blue Ravine Road, Suite 255
Folsom, California 95630

T (916) 353 1084
F (916) 353 1085

www.rosettelaw.com

### Washington D.C.



T (480) 240-0238
sbazzazieh@rosettelaw.com

www.rosettelaw.com

### Kalamazoo



25344 Red Arrow Hwy., Suite B
Mattawan, Michigan 49071

T (269) 283 5005
F (517) 913 6443

www.rosettelaw.com



4

Ex 1
04
WC10997



Enrolled member of the Chippewa-Cree Tribe, Rocky Boys Indian Reservation; admitted to the Arizona Bar (1997); California Bar (2003); Washington D.C. Bar (1998); United States District Court Southern District of California (2010); United States District Court, Eastern District of California (2010); Ninth Circuit Court of Appeals (2010); D.C. Circuit Court of Appeals (2014).

**Robert A. Rosette**
*Partner*

**Education:** Univ. of New Mexico (B.A. Political Science/American Civilizations, 1993); Arizona State Univ. College of Business (M.B.A. 1996); Arizona State Univ. College of Law (J.D. 1996).

**Employment:** Founder and Managing Partner, Rosette, LLP (2005 - Present); Monteau & Peebles, LLP (1997-2005); Maricopa County Public Defender's Office (1996-1997); Clerk for Salt River Pima Maricopa Indian Community Court (1996); Clerk for Navajo Nation Supreme Court (1994-1995).

Mr. Rosette formed Rosette, LLP to exclusively represent Indian Tribal Governments in all facets of federal Indian law, including finance, commercial transactions, economic development, gaming and litigation.

Having obtained a Masters of Business Administration in finance, Mr. Rosette maintains a unique and keen understanding of financial transactions, which is evidenced by over $4 Billion in economic development and governmental infrastructure projects for over 30 tribes in eight States. Mr. Rosette has raised such capital through various forms of financing, including direct bank loans, taxable and tax exempt bond financing, venture capital, development loans, and bridge financing for his Tribal clients.

Mr. Rosette's extensive experience also includes all areas of gaming for both brick and mortar and Internet gambling ventures. Mr. Rosette has successfully negotiated dozens of gaming compacts and has overseen the development, management and financing of tribal casinos in several states throughout the country. Mr. Rosette works tirelessly to restore Indian lands and take land into trust for gaming purposes, and has done so for Tribes such as the Picayune Rancheria and the Habematolel Pomo of Upper Lake, both located in the State of California. Mr. Rosette has been involved with Internet gaming issues pursuant to the IGRA since 1997. He has represented Indian tribes with the successful launch of internet gaming websites for Class II bingo and poker.

Mr. Rosette brings legal ingenuity and creativity in developing and defending economic development diversification projects by utilizing Tribal sovereign attributes (e.g.: enabling legislation, regulation, value adding), which allows his Tribal clients to pursue opportunities in unique business ventures such as tribal government consumer lending, pharmaceutical distribution, gasoline distribution, and cigarette manufacturing and distribution.

Mr. Rosette's litigation experience includes Indian tribal cases involving public interest and civil rights. For example, Mr. Rosette successfully resolved a dispute between the Havasupai Tribe and the State of Arizona in a case whereby the Tribe alleged the illegal taking of its blood and genetic material. Mr. Rosette also successfully litigated a case saving the Pauma Band of Luiseno Mission Indians over $100 Million in Compact payments allegedly owed to the State of California against then Governor Schwarzenegger. Mr. Rosette conducted the first arbitration regarding off-Reservation mitigation pursuant to a gaming compact, and received a victorious award against the County of San Diego on behalf of the La Posta Tribe of Mission Indians. Mr. Rosette has also successfully restored recognition of Tribal governments against United States' attempts to dissolve them, including the California Valley Miwok Tribe; the Lower Lake Rancheria, Koi Nation; and the Wilton Rancheria.

Mr. Rosette has extensive federal lobbying experience. He frequently drafts tribal constitutions, ordinances and policies, and has negotiated thousands of business agreements between tribal governments and private corporations for economic development projects.

Rosette, LLP
565 W. Chandler Blvd, Suite 212
Chandler, AZ 85225

T (480) 889 8990
C (480) 242 9810
F (480) 889 8997
www.rosettelaw.com

Phoenix Office

EXHIBIT 2

**Articles of Impeachment and Removal of Tribal Council Member Farrell Hoosava**

Farrell Hoosava, a Member of the Tribal Council, disclosed confidential business proprietary information and sensitive financial information of the Tribe ("Confidential Information") without any authorization from the Tribal Council including the following:

- May 5, 2020 email from Farrell Hoosava to az3bulls@gmail.com providing multiple, draft casino and gaming development documents including confidential communications from the Tribe's legal counsel; The Arizona Department of Gaming ("ADOG") notified the Tribe's legal counsel that the proposed gaming development documents were provided to ADOG and are now considered public records

- September 18, 2019 email from Farrell Hoosava to Sabrina Cly, who was no longer employed by the Tribe, including the disclosure of the business terms of the Tribe's engagement of a consultant to the Tribe's lending business

- September 19, 2019 email from Farrell Hoosava to Sabrina Cly disclosing revenue statements from the Tribe's lending business

- September 26, 2019 email from Farrell Hoosava to Sabrina Cly insinuating improper conduct by the Tribe's legal counsel

- September 25, 2019 email from Farrell Hoosava to Sabrina Cly providing a copy of an unresolved civil lawsuit against the Tribe's legal counsel (law firm) in an attempt to incite foment dissention against legal counsel selected by the Tribe

- September 25, 2019 email from Farrell Hoosava to Sabrina Cly disclosing a summary of the Tribe's legal counsel invoices for legal services

- September 19, 2019 email from Farrell Hoosava to Sabrina Cly disclosing revenue and invoice summary of the Tribe's lending business

See, attached email pages and documents.

**Calvin Johnson**

| | |
|---|---|
| **From:** | Richard Verri <RVerri@rosettelaw.com> |
| **Sent:** | Tuesday, June 16, 2020 2:39 PM |
| **To:** | Jeri DeCola; Jeri DeCola; Calvin Johnson |
| **Cc:** | Rob Rosette; Leigh Wink |
| **Subject:** | URGENT - Concerning Development - Re Leak of Confidential Information |
| **Attachments:** | Tonto/Quechan |

| | |
|---|---|
| **Importance:** | High |

Madame Chairwoman and Vice Chairman,

I received a telephone call this morning from the Arizona Department of Gaming legal counsel, Jim Stipe, as a curtesy call as an attorney for counsel to the Tribe, to inform me that the Department of Gaming had received copies of signed or partially signed agreements between the Tonto Apache Tribe, the Hopi Tribe and the Quechan Indian Tribe relating to event wagering and site development/operations. He followed up our conversation with the attached email.  Additionally, I received a telephone call from the gaming counsel for the Hopi Tribe, Sarah Works, this morning expressing concern about a similar telephone conversation which she had with Attorney Jim Stipe today and the very serious impact that it will have on the Hopi Tribe.

Needless to say, the disclosure of the confidential relationship and agreement between the Tonto Apache Tribe, the Hopi Tribe and the Quechan Tribe can, and probably will, have devasting financial effect on each of the tribes but, especially Tonto, because of the harmful impact that an expansion of gaming in the Phoenix Metropolitan Area will have on Mazatzal Casino and also on Tonto's Tribal-State Gaming Compact negotiations which were nearing conclusion.  The agreement to which Attorney Stipe referred and which is in the possession of the Department is now subject to public disclosure.

The information contained in the agreement reveal a confidential strategy employed to Tonto's advantage which now places the Tribe in very serious jeopardy vis-à-vis the compact negotiations with other Arizona tribes, the State and in Tonto's obtaining an event wagering license for statewide mobile sports wagering.

1

**07**

I urgently suggest that you undertake an immediate review of the breach which has occurred.  Please do not hesitate to contact me regarding this matter.

Richard G. Verri, Esq.*

Rosette, LLP
Attorneys at Law
565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225

Cell (480) 241-6049
Tel (480) 889-8990
Fax (480) 889-8997

*Admitted only: DC, OH, RI; practice limited to Federal Indian Law, Tribal Courts and federal law

rverri@rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT.  ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION.  IF RECEIVED IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS MESSAGE.

08

**Calvin Johnson**

| | |
|---|---|
| **From:** | Jim Stipe <jstipe@bcattorneys.com> |
| **Sent:** | Tuesday, June 16, 2020 9:43 AM |
| **To:** | Richard Verri |
| **Subject:** | Tonto/Quechan |

Hi Richard,

Following up on our discussion, I write to confirm that ADG received from a third party certain documents purporting to represent unsigned or partially signed draft agreements between Tonto, Quechan and Hopi relating to event wagering and site development/operation. We are notifying the involved tribes as a courtesy. Having been received by ADG, the documents are public records, but ADG has no reason or intent to discuss or share these documents with the provider or with any other third persons outside the State at this point.

Thank you, Jim

**James M. Stipe**
Shareholder
Direct:   602.234.8779
Fax:      602.850.9779
E-mail:   jstipe@bcattorneys.com


CELEBRATING
SINCE 1970
BURCH & CRACCHIOLO
P.O. Box 16882 | Phoenix, AZ 85011
1850 N. Central, Suite 1700, Phoenix, Arizona 85004
602.274.7611 Main Office | 602.234.0341 Fax
www.bcattorneys.com



This message is confidential and may contain privileged information. Only the intended recipient is authorized to read or utilize the information contained in this e-mail. If you receive this message in error, please discard the message and advise the sender by reply e-mail or by phone.

1

**09**

**From:**
**Sent:** Farrell Hoosava
**To:** Tuesday, May 5, 2020 11:41 AM
**Subject:** az3bulls@gmail.com
**Attachments:** FW: Action Item for LOI:  HOPI CASINO DOCUMENTS
2020-02-19 Hopi Term Sheet Clean.doc; 2020.02.19 Development Agreement for Hopi Clean Draft.doc; 2020.02.19 Security Agreement for Hopi Clean Draft.doc; 2020.02.19 Loan Agreement Clean Draft.odt; 2020.02.19 Operating Note for Hopi Project Clean Draft.doc; 2020.02.19 Promissory Note for Hopi Project Clean Draft.doc; 2020.02.19 Consulting Agreement for Hopi Project Clean Draft.doc; 2020.02.19 Management Agreement for Hopi Project Clean Draft.doc; 2020-02-19 Hopi Term Sheet Redline.doc

**Farrell Hoosava**

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

**From:** Calvin Johnson
**Sent:** Thursday, February 20, 2020 2:30 PM
**To:** Jeri DeCola; Farrell Hoosava; Lucinda Flores; Carlos Lopez
**Subject:** FW: Action Item for LOI: HOPI CASINO DOCUMENTS

This is what I received yesterday from Rosette.

**From:** Rob Rosette [mailto:rosette@rosettelaw.com]
**Sent:** Wednesday, February 19, 2020 9:16 PM
**To:** Sarah Works <works.sarah@gmail.com>
**Cc:** Margaret Hirchak <mhirchak@rosettelaw.com>; Hubert Nanty <hnanty@mazatzalcasino.com>; Calvin Johnson <cjohnson@tontoapache.org>; Jeri DeCola <jdecola@mazatzalcasino.com>
**Subject:** RE: Action Item for LOI: HOPI CASINO DOCUMENTS

Sarah,

Please find a redlined term sheet that demonstrates the edits I made as well as a clean term sheet that can be used as an execution version between our clients, provided you have no further edits.

Also, as promised, please find the transaction documents that comport with the term sheet.  Specifically, we have included a Development Agreement, Loan Agreement, Security Agreement, Interim Promissory Note, Management Agreement and Operating Note.  In order to be efficient, I am copying the Tonto Tribe to this e-mail so they can begin reviewing these drafts as well.  The Tonto Tribe reserves the right to make additional edits to these agreements.

1

**10**

We have also attached a Consulting Agreement that was not originally contemplated by the Term Sheet. We believe the Consulting Agreement may be required in the event that the approval by the NIGC of the Management Agreement does not occur before the Hopi Casino opens to the public. In the event that the Management Agreement has NOT been approved by the NIGC and the Hopi Casino opens, this Springing Consulting Agreement shall take effect to protect Tonto's interests. The Consulting Agreement shall become operative and binding on the Parties on the date that it is executed and shall continue until the Management Agreement is approved by the NIGC. Hopefully, the Consulting Agreement will never be needed because the Management Agreement will be approved before the Hopi Casino opens.

We are certain you will have many questions and issues and we stand ready to address those. Can you please confirm the dates you would like the Tonto Tribe to travel to Hopi to meet with the Tribal Council?

We look forward to working with you on this very worthwhile endeavor.

Sincerely,

Robert A. Rosette
Rosette, LLP
Attorneys at Law
565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225
Tel (480) 889-8990
Fax (480) 889-8997
Cell (480) 242-9810
www.rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT. ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION. IF RECEIVED IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS MESSAGE.

**From:** Sarah Works <works.sarah@gmail.com>
**Sent:** Tuesday, February 18, 2020 3:44 PM
**To:** Rob Rosette <rosette@rosettelaw.com>
**Subject:** Action Item for LOI

Hi Rob,

I have been directed to prepare the Action Item for the Hopi Tribal Council to approve the LOI. Were there changes made after our meeting at your office? Will you please send me the version that should be put through for approval?

Thank you,

Sarah

Forward

11:41 AM

Hoosava

n Item for LOI:  HOPI CASINO DOCUMENTS

19 Hopi Term Sheet Clean.doc (64 KB)

19 Security Agreement for Hopi Clean Draft.doc (113 KB)

19 Operating Note for Hopi Project Clean Draft.doc (70 KB)

19 Consulting Agreement for Hopi Project Clean Draft.doc (159 KB)

2020.02.19 Development Agreement for Hopi Clean Draft.doc (212 KB)

2020.02.19 Loan Agreement Clean Draft.odt (36 KB)

2020.02.19 Promissory Note for Hopi Project Clean Draft.doc (69 KB)

2020.02.19 Management Agreement for Hopi Project Clean Draft.doc (242 KB)

138
he.org

20, 2020 2:30 PM
oosava; Lucinda Flores; Carlos Lopez
for LOI: HOPI CASINO DOCUMENTS

sterday from Rosette.

to:rosette@rosettelaw.com]
ary 19, 2020 9:16 PM
sarah@gmail.com>
hirchak@rosettelaw.com>; Hubert Nanty <hnanty@mazatzalcasino.com>; Calvin Johnson <cjohnson@tontoapache.org>; Jeri DeCola
for LOI: HOPI CASINO DOCUMENTS

**From:** Farrell Hoosava
**Sent:** Wednesday, September 18, 2019 4:54 PM
**To:** Sabrina Cly
**Subject:** FW: Endeavor Consultant

https://www.gblaw.com/professional/patricia-e-nolan/#member-tabs2

Farrell Hoosava

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

**From:** Farrell Hoosava
**Sent:** Wednesday, September 18, 2019 4:45 PM
**To:** Sabrina Cly
**Subject:** Endeavor Consultant

We pay this company 25% of our Net revenue each month.

Finder fee

Farrell Hoosava

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

**13**

**Sent:** Wednesday, September 18, 2019 4:54 PM
**To:** Sabrina Cly
**Subject:** FW: Endeavor Consultant

https://www.qblaw.com/professional/patricia-e-nolan/#member-tabs2

Farrell Hoosava

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

**From:** Farrell Hoosava
**Sent:** Wednesday, September 18, 2019 4:45 PM
**To:** Sabrina Cly
**Subject:** Endeavor Consultant

We pay this company 25% of our Net revenue each month.

Finder fee

Farrell Hoosava

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

**14**

03/01/2011 TUE 9:28 FAX 6022564475 Gammage & Burnham

AZ Corp. Commission

03402721

AZ CORPORATION COMMISSION
FILED

MAR 0 1 2011

FILE NO. L-1602721 8

## ARTICLES OF ORGANIZATION
## OF
## ENDEAVOR CONSULTANTS, L.L.C.

1. **NAME.** The name of this limited liability company is ENDEAVOR CONSULTANTS, L.L.C.

2. **REGISTERED OFFICE.** The address of the registered office of this limited liability company is 28150 N. Alma School #103-458, Scottsdale, Arizona 85262.

   The name and business address of the agent for service of process are Patricia E. Nolan, Two N. Central Avenue, 15th Floor, Phoenix, Arizona 85004-4470.

3. **DISSOLUTION DATE.** This company can be of perpetual duration.

4. **MANAGEMENT.** Management of this limited liability company is reserved to the member.

5. **MEMBERS.** The name and address of the sole member of this limited liability company are:

   Curt Potts
   28150 N. Alma School #103-458
   Scottsdale, Arizona 85262

DATED: March 1, 2011

### Acceptance of Appointment By Statutory Agent

Patricia E. Nolan, having been designated to act as Statutory Agent, hereby consents to act in that capacity until removal or resignation is submitted in accordance with the Arizona Revised Statutes.

Patricia E. Nolan

523193.1

15

**From:** *Farrell Hoosava*
**Sent:** Thursday, September 19, 2019 3:35 PM
**To:** Sabrina Cly
**Subject:** revenue

Farrell Hoosava

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

| Account | Date | Source | JE Reference | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| | | | | ... COMET Travel | | | |
| | 7/23/2019 | A/P | 0005151 | One Time Vendor Hyatt Hotel-COMET Lodging | 1,272.51 | | 79,366.46 |
| | 7/25/2019 | A/P | 0005151 | One Time Vendor Hyatt Hotel-COMET Lodging | 1,272.51 | | 80,638.97 |
| | 7/25/2019 | A/P | 0006771 | One Time Vendor Sky Harbor Park... | 4.00 | | 80,642.97 |
| | 7/25/2019 | A/P | 0006771 | One Time Vendor Hyatt Hotel-COMET Lodging | 1,21... | | 8... |
| | 7/25/2019 | A/P | 0006771 | One Time Vendor Hyatt Hotel-COMET Lodging | 1,009.26 | | 82,924.74 |
| | 7/25/2019 | A/P | 0006771 | One Time Vendor Hyatt Hotel-COMET Lodging | 894.32 | | 83,819.06 |
| | 7/25/2019 | A/P | | One Time Vendor Salon Melinda H ... Comet (Washington DC) | 330.33 | | 84,149.39 |
| | 8/05/2019 | A/P | 2019-07-161 | Rosette Llp Comet Legal Fees | 2,690.25 | | 86,839.64 |
| | 8/10/2019 | A/P | | Verizon Wireless Dallas Tribal Cellphones | 50.64 | | 86,890.28 |
| | 8/15/2019 | A/P | | Hernandez Peter Postage Reim... ... COMET | 44.18 | | 86,934.28 |
| | 8/16/2019 | A/P | | APS Log Cabin/COMET-6672610000 | 156.46 | | 87,090.84 |
| | 8/16/2019 | A/P | | Alliant Arizona Propane LLC Log Cabin/COMET-000899900 | 30.00 | | 87,120.84 |
| | 8/19/2019 | A/P | 0006771 | One Time Vendor Void check 0006771 | | 269.96 | 86,850.88 |
| 0... | ... | ... Comet Funding Enterprise Fund Ending Balance | | | 337,885.01 | 471,034.13 | 86,850.88 |
| 08 1254 000 000 00 | Interfund Rec - Comet Funding Beginning Balance | | | | | | 0.00 |
| | 12/31/2018 | G/L | 367 RS | Accrued MSF Excess expenditures as a recievable for EE MSF. Each Tribal and Enterprise fund should record an an accrued expense. (Reverse in Jan) | 522.15 | | 522.15 |
| | 12/31/2018 | G/L | 896 RS | Fix JE-367 Accrued MSF Excess expenditures as a recievable for EE MSF. Each Tribal and Enterprise fund should record an an accrued expense. (Reverse in Jan) | | 40.73 | 481.42 |
| | 1/01/2019 | G/L | 368 RS | Reverse Accrued MSF Excess expenditures as a recievable for EE MSF. Each Tribal and Enterprise fund should record an an accrued expense. (Reverse in Jan) | | 522.15 | (40.73) |
| 08 1254 000 000 00 | Interfund Rec - Comet Funding Ending Balance | | | | 522.15 | 562.88 | (40.73) |
| Report Total | | | | | 558,407.16 | 471,597.01 | 86,810.15 |
| | | | | | | Comet Revenue | Tribe is negative from Gen Fund $86,810.15 |

Example on how Comet make revenue:

Comet total loans for one month = $1,700,000

Comet gets 3% of total loans; 3% of $1.7M = $51,000

Comet gross revenue is $51,000 minus operational expense (average $20,000 currently) would equal = $51,000 - $20,000 = $30,000

Okay, ONE MORE FEE Taken out... Comet pays FINDER'S FEE of 25% on GROSS REVENUE which equals $51,000 X 25% = $12,750...

One more fee... ATTORNEYS which averages $4,000 show this

| Total Loans Revenue | $1,700,000 |
|---|---|
| Comet Revenue at 3% | $   51,000 |
| Comet Oper. Expenses | - $   20,000 |
| Finder Fee | - $   12,750 |
| Attorney Fees | - $     4,000 |
| | |
| COMET'S REVENUE | $14,250  (ON A VERY GOOD MONTH!!!) |

**17**

From: Farrell Hoosava
Sent: Wednesday, September 25, 2019 11:38 AM
To: Sabrina Cly
Subject: court papers


**Farrell Hoosava**

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

Case 3:17-cv-01436-GPC-MDD  Document 100  Filed 07/20/18  PageID.8018  Page 1 of 81

1  Cheryl A. Williams (Cal. Bar No. 193532)
   Kevin M. Cochrane (Cal. Bar No. 255266)
2  caw@williamscochrane.com
   kmc@williamscochrane.com
3  WILLIAMS & COCHRANE, LLP
   125 S. Highway 101
4  Solana Beach, California 92075
   Telephone: (619) 793-4809
5

6  Attorneys for Plaintiffs
   WILLIAMS & COCHRANE, LLP, *et al.*
7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  **WILLIAMS & COCHRANE, LLP**; *and*         Case No.: 17-CV-01436 GPC MDD
    **FRANCISCO AGUILAR, MILO**
12  **BARLEY, GLORIA COSTA,**                    **SECOND AMENDED**
    **GEORGE DECORSE, SALLY**                    **COMPLAINT**
13  **DECORSE**, *et al., on behalf of themselves*
14  *and all those similarly situated*;          __CLASS ACTION COMPONENT__

15       *(All 27 Individuals Listed in ¶ 12)*   __JURY TRIAL DEMANDED__

16                                               [ACTION FILED JULY 17, 2017]
                  Plaintiffs,
17

18                  vs.

19  **ROBERT ROSETTE; ROSETTE &**
    **ASSOCIATES, PC; ROSETTE, LLP;**
20  **RICHARD ARMSTRONG;**
    **QUECHAN TRIBE OF THE FORT**
21  **YUMA INDIAN RESERVATION**, *a*
    *federally-recognized Indian tribe*;
22  **KEENY ESCALANTI, SR.; MARK**
    **WILLIAM WHITE II**, *a/k/a/ WILLIE*
23  *WHITE*; and **DOES 1 THROUGH 100**;
24
25                  Defendants.
26

27

28
                                          Case No.: 17-CV-01436 GPC MDD
                     SECOND AMENDED COMPLAINT

**19**

From: Farrell Hoosava
Sent: Thursday, September 26, 2019 12:58 PM
To: Sabrina Oy
Subject:

Under RICO, a person who has committed "at least two acts of racketeering activity" drawn from a list of 35 crimes—27 federal crimes and 8 state crimes—within a 10-year period can be charged with racketeering if such acts are related in one of four specified ways to an "enterprise" [citation needed] Those found guilty of racketeering can be fined up to $25,000 and sentenced to 20 years in prison per racketeering count. [citation needed] In addition, the racketeer must forfeit all ill-gotten gains and interest in any business gained through a pattern of "racketeering activity." [citation needed]

When the U.S. Attorney decides to indict someone under RICO, they have the option of seeking a pre-trial restraining order or injunction to temporarily seize a defendant's assets and prevent the transfer of potentially forfeitable property, as well as require the defendant to put up a performance bond. This provision was placed in the law because the owners of Mafia-related shell corporations often absconded with the assets. An injunction or performance bond ensures that there is something to seize in the event of a guilty verdict.

In many cases, the threat of a RICO indictment can force defendants to plead guilty to lesser charges, in part because the seizure of assets would make it difficult to pay a defense attorney. Despite its harsh provisions, a RICO-related charge is considered easy to prove in court since it focuses on patterns of behavior as opposed to criminal acts. [2]

RICO also permits a private individual "damaged in his business or property" by a "racketeer" to file a civil suit. The plaintiff must prove the existence of an "enterprise". The defendant(s) are not the enterprise; in other words, the defendant(s) and the enterprise are not one and the same. [3] There must be one of four specified relationships between the defendant(s) and the enterprise: either the defendant(s) invested the proceeds of the pattern of racketeering activity into the enterprise (18 U.S.C. § 1962(a)); or the defendant(s) acquired or maintained an interest in, or control of, the enterprise through the pattern of racketeering activity (subsection (b)); or the defendant(s) conducted or participated in the affairs of the enterprise "through" the pattern of racketeering activity (subsection (c)); or the defendant(s) conspired to do one of the above (subsection (d)). [4] In essence, the enterprise is either the 'prize,' 'instrument,' 'victim,' or 'perpetrator' of the racketeers. [5] A civil RICO action can be filed in state or federal court. [6]

Both the criminal and civil components allow the recovery of treble damages (damages in triple the amount of actual/compensatory damages).

Although its primary intent was to deal with organized crime, Blakey said that Congress never intended it to merely apply to the Mob. He once told Time, "We don't want one set of rules for people whose collars are blue or whose names end in vowels, and another set for those whose collars are white and have Ivy League diplomas." [7]

Initially, prosecutors were skeptical of using RICO, mainly because it was unproven. The RICO Act was first used by the US Attorney's Office in the Southern District of New York on September 18, 1979, in the United States v. Scotto. Scotto, who was convicted on charges of racketeering, accepting unlawful labor payments, and income tax evasion, headed the International Longshoreman's Association. During the 1980s and 1990s, federal prosecutors used the law to bring charges against several Mafia figures. The second major success was the Mafia Commission Trial, which resulted in several top leaders of New York City's Five Families getting what amounted to life sentences. By the turn of the century, RICO cases resulted in virtually all of the top leaders of the New York Mafia being sent to prison.

**Farrell Hoosava**

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

From: Farrell Hoosava
Sent: Wednesday, September 25, 2019 4:22 PM
To: Sabrina Cly
Subject: Check this out


Farrell Hoosava

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

Rosette Bills

| Date | Amount | Department |
|------|--------|------------|
| 4/4/2018 | $ 17,244.22 | GF |
| 4/4/2018 | $ 10,635.63 | GF |
| 4/4/2018 | $ 73.76 | GF |
| 5/4/2018 | $ 10,326.16 | GF |
| 5/4/2018 | $ 2,012.28 | Comet |
| 6/11/2018 | $ 188.68 | GF |
| 6/11/2018 | $ 5,758.62 | GF |
| 7/6/2018 | $ 11,663.86 | GF |
| 7/6/2018 | $ 1,275.00 | Comet |
| 7/6/2018 | $ 800.00 | GF |
| 8/6/2018 | $ 8,900.32 | GF |
| 8/6/2018 | $ 399.84 | Comet |
| 9/5/2018 | $ 6,074.89 | GF |
| 9/8/2018 | $ 425.88 | Comet |
| 11/7/2018 | $ 4,190.00 | Colorado A/G |
| 11/10/2018 | $ 22,893.91 | Comet |
| 11/10/2018 | $ 1,000.00 | Comet |
| 11/10/2018 | $ 34,082.67 | Comet |
| 12/7/2018 | $ 4,848.84 | GF |
| 12/7/2018 | $ 806.32 | Comet |
| 12/7/2018 | $ 550.00 | GF |
| 12/7/2018 | $ 4,962.50 | Comet |
| 12/7/2018 | $ 1,200.00 | Comet |
| 1/7/2019 | $ 1,451.13 | GF |
| 1/7/2019 | $ 5,910.60 | GF |
| 1/7/2019 | $ 6,068.57 | Comet |
| 1/7/2019 | $ 5,985.00 | Comet |
| 2/5/2019 | $ 6,007.03 | GF |
| 2/5/2019 | $ 924.55 | Comet |
| 2/5/2019 | $ 4,485.06 | Comet |
| 3/6/2019 | $ 2,619.96 | GF |
| 3/6/2019 | $ 2,887.85 | TCFSRA |
| 3/6/2019 | $ 853.42 | Comet |
| 3/6/2019 | $ 4,315.01 | Comet |
| 4/5/2019 | $ 11,893.46 | GF |
| 4/5/2019 | $ 7,801.16 | TCFSRA |
| 4/5/2019 | $ 1,570.52 | Comet |
| 4/5/2019 | $ 2,194.11 | Comet |
| 5/6/2019 | $ 6,240.68 | GF |
| 5/6/2019 | $ 8,324.04 | GF |
| 5/6/2019 | $ 1,780.07 | Comet |
| 5/6/2019 | $ 784.80 | Comet |
| 6/5/2019 | $ 13,281.58 | GF |

Departments
GF-General Fund
Comet
Water
Colorado A/G
Prosecutors
TCFSRA (Lending )

| GF | Comet | Colorado A/G |
|------|--------|------------|
| $ 158,444.20 | $ 102,320.72 | $ 4,190.00 |

| Water | Prosecutors | TCFSRA |
|------|--------|------------|
| $ 19,237.72 | $ 13,682.36 | $ 17,844.89 |

TOTAL
$ 315,719.89

This amount represents since March of 2018

22

| Date | Amount | |
|------|--------|-----|
| 6/5/2019 | $ 7,155.88 | TCFSRA |
| 6/5/2019 | $ 225.00 | GF |
| 6/5/2019 | $ 732.33 | Comet |
| 6/5/2019 | $ 8,444.97 | Water |
| 7/5/2019 | $ 11,270.89 | GF |
| 7/5/2019 | $ 10,792.75 | Water |
| 7/5/2019 | $ 5,686.07 | GF |
| 7/5/2019 | $ 578.63 | Comet |
| 7/5/2019 | $ 300.00 | Comet |
| 8/5/2019 | $ 2,690.25 | Comet |
| 8/5/2019 | $ 8,468.78 | GF |
| 8/5/2019 | $ 13,682.36 | Prosecutors |

-----Original Message-----
From: Farrell Hoosava
Sent: Thursday, September 19, 2019 3:33 PM
To: Sabrina Cly
Subject: FW: Scan from TAT MFP

Shady...

Farrell Hoosava

Tribal Council Member

P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

Endeavor Consultants, LLC
28150 N. Alma School Parkway
#103-458
Scottsdale, AZ 85262

Comet Funding
#30 Tonto Apache Reservation
Payson, AZ 85541

Invoice Date:  April 15, 2019
Invoice #:                012
Client Matter:  Finder's Fee
**Payable Upon Receipt**

### INVOICE SUMMARY

|  | March 2019 |
|---|---|
| Net Revenue | $1,763,746.82 |
| Retention | $ 52,912.40 |
| Finder's Fee | $13,228.10 |
| 25% Retention | |
| Total Due | $13,228.10 |

**Total Due Upon Receipt**          $13,228.10

**From:** Farrell Hoosava
**Sent:** Wednesday, September 18, 2019 5:03 PM
**To:** Sabrina Oly
**Subject:** comet finders

https://www.bizapedia.com/az/title-loan-source-llc.html

**Farrell Hoosava**

Tribal Council Member



P: (928)474-5000 Ext. 8133
E: fhoosava@tontoapache.org

EXHIBIT 3

## RESPONSE OF COUNCIL MEMBER FARRELL HOOSAVA TO ARTICLES OF IMPEACHMENT BY LAME DUCK CHAIR DECOLA AND LAME DUCK VICE CHAIR JOHNSON

In an unprecedented attempt to prevent their lawful removal of office following their failure to achieve re-election to the Tribal Council in Saturday's election, Chairwoman DeCola and Vice Chairman Johnson are attempting to remove me from office in order to create another Tribal Council seat through which they will attempt to remain in power. As such, they and the Rosette law firm are unlawfully attempting to subvert the will of the people and violate the Constitution of the Tonto Apache Tribe.

Further, they have presented no factual evidence of misconduct or neglect of duty on my part and their effort to remove me is illegal and invalid for many reasons set forth below.

Reasons why the "impeachment" evidence is deficient and does not show misconduct:

1. Nothing in the "impeachment" articles and attached documents prove that I sent documents to the Arizona Dept of Gaming. The "third party" who supposedly sent the documents to the Arizona Dept of Gaming is not identified in the email from Jim Stipe to Richard Verri and my name is never mentioned.
2. The documents supposedly sent to the Arizona Dept of Gaming have not been provided.
3. Jim Stipe no longer works at the Arizona Dept of Gaming is no longer their counsel. Thus, he cannot speak to what documents were sent to the Arizona Dept of Gaming or who sent them.
4. Jim Stipe now works for the private law firm called Burch & Chracchiolo. The Firm website does not provide that it represents the Arizona Dept of Gaming.
5. The website for the Arizona Dept of Gaming identifies its legal counsel as Kristian Fasching, not Jim Stipe.
6. The remaining emails shown in the "impeachment documents" were sent to a Tribal member, Sabrina Cly, and not to anyone outside the Tribe.

Reasons why the "impeachment" articles are illegal and invalid:

1. Nothing in Tribal law prohibits a Council Member from keeping tribal members informed of Tribal business.
2. In fact, the Constitution requires the Tribal Council to report to the entire Tribe "***all activities of the Tribal Council throughout the past year and to***

28

*outline proposed plans for the coming year for the benefit of the Tribe*." Constitution of the Tonto Apache Tribe, Article IV, Section 7

3. Therefore, I have not committed misconduct in discussing business engaged in by the Tribal Council which should have been reported to the Tribe. Rather, I was doing my Constitutional duty that Chairwoman DeCola and Vice Chair Johnson failed to do by keeping such business secret from the Tribal members. They are the ones who have neglected their duties to the Tribe.

4. As a Tribal Council Member, the Constitution provides me with the power to "consult" "with" "other persons" "on all activities that may affect the Tribe. This includes consulting with Sabrina Cly on Tribal business matters. Constitution of the Tonto Apache Tribe, Article VII, Section 2(n).

5. As a Tribal Member, I have the same Constitutional right to "freedom of speech" as all other Tribal Members. DeCola and Johnson cannot remove anyone from Office for exercising that right (emailing with Sabrina Cly). See Bill of Rights, Constitution of the Tonto Apache Tribe, Article VIII, Section 2(a).

6. As a Tribal Member, I have the right to due process in connection with any process for removal from a position on Tribal Council, which is set forth in the Constitution of the Tonto Apache Tribe in two places. The Bill of Rights requires "due process" at Article VIII, Section 2(h) of the Constitution.

7. The Removal section of the Constitution at Article VI, Section 2(3), requires that "Due process is required in all removals," including the following:

> "The Tribal Council member in question shall be afforded full due process including a written statement of the charges, the right to respond to charges and the right to present witnesses and other evidence in his/her defense."

8. I am not being provided with any of the basic due process requirements on two days' notice, having received notice on Tuesday, June 16, 2020, of a hearing scheduled for Friday, June 19, 2020.

9. Further, I am informed that the hearing will be closed so that I cannot present witnesses and have no time to get evidence from the Arizona Dept of Gaming.

I call ALL OF YOU, my fellow Tribal Members, to appear on Friday as my WITNESSES to the truth – that my actions were not misconduct but instead simply carrying out my duty to inform and protect the Tribe. Please be there to ensure the Constitution and the will of the People are protected from this illegal power grab.

EXHIBIT 4



# Tonto Apache Tribe

Tonto Apache Reservation #30
Payson, Arizona 85541
Telephone: (928) 474-5000
Fax: (928) 474-9125

June 19, 2020

Farrell Hoosava
**ADDRESS**

**Re:    Removal from Office Effective Immediately**

Dear Mr. Hoosava:

The Tribal Council held a hearing for you on June 19, 2020, to provide you with an opportunity to present a defense against the charges that you violated the Tribe's Constitution by committing gross misconduct as an elected official of the Tribe. The Tribal Council has determined that your actions meet the standard for removal from office, and has decided that you are removed from your position as a member of the Tribal Council effective immediately.

On June 15, 2020, the Tribal Council provided you with a written list of the charges that served as the basis for your removal. At the time you received the written charges, you admitted that you had sent the emails and had disclosed the information in question. The emails show that you disclosed confidential information of the Tribe including financial information, and extremely sensitive busines development contracts and related documents, which has directly harmed the Tribe's ability to pursue lucrative business opportunities. Your emails also disclosed confidential documents regarding the Tribal Council's selection and use of legal counsel in an attempt to undermine and disparage the Tribal Council's decisions.

Your actions disclosing confidential information to unauthorized third parties is a gross violation of your duties and obligations to the Tribe. Your actions in releasing confidential documents, including business proprietary information, have sabotaged the business plans of the Tribe and have caused embarrassment and harm to the Tribe and its members. Your actions meet the standard of gross misconduct to remove an official from office. The Tribal Council has no choice but to remove you as a member of the Tribal Council.

Jeri DeCola, Chairman

Calvin Johnson, Vice Chairman

Lucinda Flores, Council Member

Carlos Lopez, Council Member

**31**

EXHIBIT 5



**Kristian Fasching <kfasching@azgaming.gov>**

---

## Fwd: [FWD: Tribal Gaming License]]
1 message

**Brian Jacobsen** <bjacobsen@azgaming.gov>         Thu, Jun 4, 2020 at 8:20 AM
To: Kristian Fasching <kfasching@azgaming.gov>
Cc: Rudy Casillas <rcasillas@azgaming.gov>

> *Good Morning Kristian,*
> *Barb received this letter and it doesn't pertain to VCU. Not sure what they are looking for.*
> *Can you look at this and let me know how to proceed?*
> *Thanks*
> *Brian*

---------- Forwarded message ---------
From: **Barbara Evans** <bevans@azgaming.gov>
Date: Thu, Jun 4, 2020 at 8:08 AM
Subject: Fwd: [FWD: Tribal Gaming License]]
To: Brian Jacobsen <bjacobsen@azgaming.gov>


Hi Brian,

Please see email below and attachments.  I sent this to Henry first to see if this was a legit email and he said yes. I've never received any email like this before.

What would you like me to do?

Thank you



Barbara Evans
**Intake Officer**
**Vendor Certification Unit**
bevans@azgaming.gov
gaming.az.gov

**Tel**  602.255.3823
**Fax**  602.255.3883



**1110 W. Washington St., Suite 450**
**Phoenix, AZ 85007**

**33**

---------- Forwarded message ---------
███████████████████████>
Date: Wed, Jun 3, 2020 at 11:30 PM
Subject: [FWD: Tribal Gaming License]]
To: BEvans@azgaming.gov <BEvans@azgaming.gov>

-------- Original Message --------
Subject: Tribal Gaming License]
███████████████████████
Date: Wed, June 03, 2020 8:41 pm
To: "beverlyevans@azgaming.gov" <beverlyevans@azgaming.gov>

-------- Original Message --------
Subject: Tribal Gaming License
███████████████████████
Date: Tue, June 02, 2020 10:59 pm
To: "b.evans@azgaming.gov" <b.evans@azgaming.gov>

-------- Original Message --------
Subject:
███████████████████████
Date: Mon, June 01, 2020 9:08 pm
To: "bievans@azgaming.gov" <bievans@azgaming.gov>

Hello my name is Ivan Smith, I am a Tonto Apache tribal member.  I would like to know if
the Tonto Apache Tribal Council, has applied for a Gaming License to do business as
mentioned in the following documents. As far as I know the Council has not held any
community meeting or informed the tribal community members of the following.

Thank you for your time.

Ivan Smith
Tonto Apache Member

--


**Brian Jacobsen**
**Manager, Vendor Certification Unit**
bjacobsen@azgaming.gov
gaming.az.gov

Dir  **602-255-3833**
Cel  **602-463-6508**



1110 W. Washington St., Suite 450

Phoenix, AZ 85007

---

**2 attachments**

 **non binding letter of intent.pdf**
1109K

 **letter of intent.pdf**
3029K

EXHIBIT 6

Electronically FILED by Superior Court of California, County of Los Angeles on 06/07/2019 11:39 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
Case 3:17-cv-01436-RSH-DEB    Document 348-3    Filed 10/16/20    PageID.32372    Page 47 of 56
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Dennis Landin

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Matthew M. Loker, Esq. (SBN: 279939)
ml@kazlg.com
Elizabeth A. Wagner, Esq. (SBN: 317098)
elizabeth@kazlg.com
1303 East Grand Avenue, Suite 101
Arroyo Grande, CA 93420
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Tabitha Webster

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| **TABITHA WEBSTER,**<br><br>Plaintiff,<br><br>v.<br><br>**TONTO APACHE DBA COMET LOANS,**<br><br>Defendant. | **Case No.:** 19STCV19912<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §§ 1788 ET SEQ.**<br><br>**JURY TRIAL DEMANDED**<br><br>**UNLIMITED – OVER $25,000** |

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

### INTRODUCTION

1. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

2. Plaintiff TABITHA WEBSTER ("Plaintiff") by Plaintiff's attorneys brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of TONTO APACHE DBA COMET LOANS ("Defendant") with regard to attempts by Defendant to unlawfully and abusively collect a debt allegedly owed by the Plaintiffs, in violation of the California State debt collection laws.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

4. Plaintiffs makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

7.  Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

### JURISDICTION AND VENUE

8.  Jurisdiction of this Court is proper because the events leading to Plaintiffs' causes of action occurred in the County of Los Angeles and in the State of California.

9.  This action arises out of Defendant's violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788.17 ("RFDCPA" or "ROSENTHAL ACT").

10. Because Defendant does business within the State of California, personal jurisdiction is established.

11. Venue is proper in this Court.

### PARTIES

12. Plaintiff is a natural person who resides in the City of Rancho Dominguez, County of Los Angeles, State of California, from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiffs, and are "debtors" as that term is defined by California Civil Code § 1788.2(h).

13. Plaintiff is informed and believes, and thereon alleges, that Defendant is a credit company operating out of the City of Blanding, State of Utah.

14. Plaintiff is informed and believes, and thereon alleges, that Defendant, in the ordinary course of business, regularly, on behalf of itself, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

//

15. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.  As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

**FACTUAL ALLEGATIONS**

16. At all times relevant, Plaintiff is an individual who resides within the State of California and within this judicial district.

17. At all times relevant, Defendant conducted business in the State of California.

18. Sometime prior to April 2018, Plaintiff allegedly incurred financial obligations to Defendant.

19. These alleged finance obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and were therefore "debt[s]" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

20. Sometime thereafter, Plaintiff allegedly fell behind in the payments allegedly owed on the alleged debt.  Plaintiffs currently takes no position as to the validity of the alleged debt.

21. On June 27, 2018, Defendant sent a letter to the payroll/human resources department at Plaintiff's employer, United Bakery Equipment, which announced that Plaintiff allegedly owed $1313.04 which was to be garnished from Plaintiff's wages at a rate not to exceed 15% per paycheck.

22. Said written communication makes no mention of a debt collection judgment against Plaintiff giving rise to the 15% per paycheck wage assignment.

23. Defendant's written communication to Plaintiff's employer also stated that Plaintiff's wages were to be garnished had then changed from "the standard 15% per paycheck to $65 paycheck, as per a verbal agreement [with Plaintiff]."

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

24. Again, Defendant's June 27, 2018 written communication to Plaintiff's employer makes no mention of a debt collection judgment against Plaintiff.

25. Plaintiff's employer approved both of these wage assignments without verifying whether there was an actual judgment out against Plaintiff.

26. These letters constitute "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b).

27. Defendant's letter written communications contained numerous false, deceptive and/or misleading statements in violation of the Rosenthal Act.

28. First, there are no grounds for a wage assignment arrangement.

29. Second, Defendant's June 27, 2018 written communication indicated that the wage assignment adjustment was "urgent," which is a misrepresentation as the status of the debt allegedly owed by Plaintiff to Defendant.

30. Third, there was no explicit mention of a judgment against Plaintiff or other justification for imposing wage garnishments against her, which is necessary for such an arrangement to be effective and binding.

31. On information and belief, Defendant never even filed a collection action against Plaintiff nor obtained a judgment that would permit Defendant to garnish Plaintiff's wages.

32. Through this conduct, Defendant violated 15 U.S.C. § 1692c(b) by communicating with Plaintiff's employer, a third party, without the prior consent of Plaintiff or a court of competent jurisdiction. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17. Thus, Defendant has violated Cal. Civ. Code § 1788.17.

33. Through this conduct, Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress and abuse Plaintiff in connection with the collection of Plaintiff's alleged debt to Defendant. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17. Thus, Defendant has violated Cal. Civ. Code § 1788.17.

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

41

34. Through this conduct, Defendant violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt.  This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17.  Thus, Defendant has violated Cal. Civ. Code § 1788.17.

35. Through this conduct, Defendant violated 15 U.S.C. § 1692e(2)(A) by using false, deceptive and misleading representations to mischaracterize the character, amount, and legal status of Plaintiff's alleged debt to Plaintiff and to Plaintiff's employer. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17.  Thus, Defendant has violated Cal. Civ. Code § 1788.17.

36. Through this conduct, Defendant violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means in attempting to collect the alleged debt from Plaintiff and Plaintiff's employer. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17.  Thus, Defendant has violated Cal. Civ. Code § 1788.17.

37. Through this conduct, Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect Plaintiffs' alleged debt. This section is incorporated into the Rosenthal Act through Cal. Civ. Code § 1788.17.  Thus, Defendant has violated Cal. Civ. Code § 1788.17.

38. Through this conduct, Defendant violated § 1788.12(a) of the Rosenthal Act by communicating with Plaintiff's employer when such communications were neither necessary to the collection of the alleged debt after a final, binding judgment nor given with the prior written consent of Plaintiff or her attorney.

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

42

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

# COUNT I

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

## Cal. Civ. Code §§ 1788-1788.32 (ROSENTHAL ACT)

39. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

40. The foregoing acts and omissions constitute numerous and multiple violations of the ROSENTHAL ACT.

41. As a result of each and every violation of the ROSENTHAL ACT, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendant for:

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), for each plaintiff and putative class member;

- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), for each plaintiff and putative class member;

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c);

- Any and all other relief that this Court deems just and proper.

1

**TRIAL BY JURY**

42. Pursuant to the Seventh Amendment to the Constitution of the United States

of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: June 3, 2019                                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _____

MATTHEW M. LOKER, ESQ.

ATTORNEY FOR PLAINTIFF

**KAZEROUNI LAW GROUP, APC**
**1303 EAST GRAND AVENUE, SUITE 101**
**ARROYO GRANDE, CA 93420**

44

EXHIBIT 7



## Tonto Apache Tribe

Tonto Apache Reservation #30
Payson, Arizona 85541
Telephone: (928) 474-5000
Fax: (928) 474-9125

September 21, 2020

Wally Davis, Jr., Chairman
Tonto Apache Tribe
Tonto Apache Reservation #30
Payson, Arizona 85541
(HAND-DELIVERED)

> **Re:** **Articles of Impeachment of Wally Davis, Jr., Chairman of the Tribe and Notice of Removal Hearing**

Dear Chairman Davis:

The Tribal Council hereby charges you with the following offenses:

### Articles of Impeachment

Wally Davis, Jr., Chairman of the Tribe, without authority from the Tribal Council, has abused his authority as follows:

- On August 26, 2020, Mr. Davis improperly attempted to suspend the Vice Chairman from office without pay (Exhibit A - August 26, 2020 letter);

- On September 15, 2020, Mr. Davis threatened and attempted to intimidate Council Member Lucinda Flores by ordering her to "be present for duty", by demanding "documentation" for her absence, seeking her resignation from office, and by demanding her response in less than 24 hours (Exhibit B - September 15, 2020 letter);

- On August 1, 2020, Mr. Davis, inappropriately and without authority from the Tribal Council, ordered the cancellation of the Special Election to fill a vacancy on the Tribal Council.

The Tribal Council hereby finds that your inappropriate conduct towards your fellow Council Members, and your improper decision to cancel the recent Special Election, may constitute gross misconduct and/or gross neglect of duty and grounds for removal from office, in accordance with the authority of the Tribal Council under Article VI, Section 2 of the Constitution.

The Tribal Council has scheduled a hearing on September 28, 2020 at 10:00 am in the Tribal Council chambers at the Tribal Office headquarters in order to provide you the opportunity to respond to the charges and to present witnesses and other evidence in your

**46**