Cheryl A. Williams (Cal. Bar No. 193532)
Kevin M. Cochrane (Cal. Bar No. 255266)
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
125 S. Highway 101
Solana Beach, CA 92075
Telephone: (619) 793-4809

Attorneys for Plaintiff
WILLIAMS & COCHRANE, LLP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAMS & COCHRANE, LLP**;<br><br>Plaintiff,<br><br>vs.<br><br>**QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION**, *a federally-recognized Indian tribe*; **ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; ROSETTE, LLP**; *and* **DOES 1 THROUGH 100**;<br><br>Defendants. | Case No.: 17-CV-01436 RSH DEB<br><br>**WILLIAMS & COCHRANE'S OPPOSITION TO MOTION TO SUBSTITUTE PARTY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 25(A) [DKT. NO. 385]**<br><br>Date:    December 27, 2022<br>Time:    NA<br>Dept:    3B<br>Judge:  The Honorable Robert S. Huie |

# TABLE OF CONTENTS

Introduction…………………………………………………………………… 1

Legal Standard …………………………………………………………….. 4

Argument …………………………………………………………………… 4

    I.    Opposing Counsel Filed this Motion to Substitute with
        the Wrong Judge ……………………………………………………… 4

    II.   Opposing Counsel Failed to Meet and Confer Before Fil-
        ing this Motion to Substitute ……………………………………….. 5

    III.  The False Advertising Claim Abated or Extinguished upon
        the Death of Mr. Rosette since the Claim is more Akin to
        Traditionally Personal Claims like Defamation and Inva-
        sion of Privacy …………………………………………………………6

    IV.  Substitution is Impossible now given that the September
        28th Order Issued after Mr. Rosette's Death, thus Ren-
        dering it Void Ab Initio ………………………………………………12

    V.   An Order Granting the Motion to Substitute will Pro-
        duce a Torrent of Motion Practice, including a Motion
        for Reconsideration under Rule 60(b) by Williams &
        Cochrane to Vacate a Void Judgment ……………………………..15

    VI.  The Court should Exercise its Discretion and Deny Sub-
        stitution for a Myriad of Reasons – including Ms. Ro-
        sette Seeming to be the only One still Interested in Fight-
        ing an Age-old Dispute rather than Letting it Go ………………15

Conclusion …………………………………………………………………16

# TABLE OF AUTHORITIES

**CASES**

*Atkins v. City of Chicago*,
    547 F.3d 869 (7th Cir. 2008) ……………………………………………11

*Chorney v. Callahan*,
    135 F. Supp. 35 (D. Mass. 1955) ……………………………………….3

*Crotty v. City of Chicago Heights*,
    1990 U.S. Dist. Lexis 177 (N.D. Ill. 1990) ……………………………… 4

*Farmer v. McDaniel*,
    2012 U.S. Dist. Lexis 129027 (D. Nev. 2012) …………………………… 13, 14

*Goldwater Bank, N.A. v. Elizarov*,
    2022 U.S. Dist. Lexis 210645 (C.D. Cal. 2022) ………………………..6

*Gutierrez v. Tucker*,
    2021 U.S. Dist. Lexis 75933 (E.D. Cal. 2021) ………………………..10

*Harvey v. United States*,
    2022 U.S. Dist. Lexis 180690 (N.D. Tex. 2022) ……………………….4

*Hybe Co. v. Doe*,
    2022 U.S. Dist. Lexis 6220 (D. Nev. 2022) ……………………………….. 12

*In re Fieldwood Energy, LLC*,
    637 B.R. 712 (S.D. Tex. Bankr. 2022) ……………………………………… 2, 3

*Kelly v. Johnson Publishing Company*,
    160 Cal. App. 2d 718 (2d Dist. 1958) ………………………………... 10

*Koger v. Dart*,
    2021 U.S. Dist. Lexis 32343 (N.D. Ill. 2021) ………………………… 4, 15, 16

*Kremens v. Bratley*,
    431 U.S. 119 (1977) ……………………………………………………… 2

*///*

Case No.: 17-CV-01436 RSH DEB
WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
   957 F.3d 943 (9th Cir. 2020) …………………………………………………………... 2

*MacDonald v. Time, Inc.*,
   554 F. Supp. 1053 (D.N.J. 1983) …………………………………………………...11

*Mau v. Rio Grande Oil, Inc.*,
   28 F. Supp. 845 (N.D. Cal. 1939) …………………………………………………..10

*Mizukani v. Buras*,
   419 F.2d 1319 (5th Cir. 1969) …………………………………………………… 3

*Mollica v. County of Sacramento*,
   2022 U.S. Dist. Lexis 196774 (E.D. Cal. 2022) ……………………………………..6

*Mullin v. Bayline, Inc.*,
   2021 U.S. Dist. Lexis 233855 (D. Mass. 2021) …………………………… 3, 14

*Oertwich v. Traditional Village of Togiak*,
   41 F.4th 1193 (9th Cir. 2022) …………………………………………………...13, 15

*Oertwich v. Traditional Village of Togiak*,
   29 F.4th 1108 (9th Cir. 2022) …………………………………………………...12, 13

*Smith v. Specialized Loan Servicing, LLC*,
   2017 U.S. Dist. Lexis 148641 (S.D. Cal. 2017) …………………………………..4

*Sweitzer v. Am. Express Centurion Bank*,
   554 F. Supp. 2d 788 (S.D. Ohio 2008) …………………………………………..11

*Uecker v. Ng*,
   2019 Cal. App. Unpub. Lexis 8523 (1st Dist. 2019) …………………………...3

*Williams & Cochrane, LLP v. Rosette*,
   2020 U.S. Dist. 109750 (S.D. Cal. 2020) ………………………………………..10

**STATUTES**

United States Code
   15, § 1117 …………………………………………………………………………11
   15, § 1125(a)(1)(B) ………………………………………………………………11

iii                     Case No.: 17-CV-01436 RSH DEB
WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

28, § 626(b)(1)(A) …………………………………………………….. 4, 5

California Civil Code
     § 45 ………………………………………………………… 11

**RULES AND REGULATIONS**

Federal Rules of Civil Procedure
     25(a) ……………………………………………...4, 5, 9, 11, 12, 15
     25(a)(1) …………………………………………………………2, 4
     60(b) …………………………………………………………. 3, 15

**SECONDARY SOURCES**

Prosser on Torts (2d ed. 1955)
     § 97 …………………………………………………………. 10, 11

Restatement (Second) of Torts (1977)
     ch. 28 ………………………………………………………… 11
     § 525 ………………………………………………………….11
     § 550 ………………………………………………………….11
     § 552 ………………………………………………………….11
     § 552C ……………………………………………………... 11

Wright & Miller, Federal Practice & Procedure (4th ed.)
     § 1063.1 ……………………………………………………… 12

Case No.: 17-CV-01436 RSH DEB
WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

**INTRODUCTION**

The sixth year of litigation has brought with it plenty of changes. Some of them are pleasant, like Williams & Cochrane, LLP ("Williams & Cochrane" and "Firm") and the Quechan Tribe of the Fort Yuma Reservation ("Quechan" and "Tribe") reaching an agreement in principle to put their differences behind them. (Dkt. No. 384 ("A Mandatory Settlement Conference… was held on November 16, 2022. The case settled.")) Others are not. The Defendant Robert A. Rosette passed away earlier this fall after a prolonged battle with pancreatic cancer, and now his widow Sharon Rosette wants to step into his shoes to continue the fight, presumably after discovering the amount of legal fees her late husband paid instead of making any effort to settle this case. With O'Melveny & Myers, LLP caught between the blind rage of a former client and the bewildered outrage of a current one, the defense of this suit, in the words of Sly and the Family Stone: well, it's a family affair. *See* Wikipedia, *Family Affair (Sly and the Family Stone song)*, *available at* https://en.wikipedia.org/wiki/Family_Affair_(Sly_and_the_Family_Stone_song) (last visited Dec. 3, 2022).[1]

What is most curious about the present state of things is that defense counsel is trying to sub in a surviving spouse for a decedent who passed away *before* the dispositive order was issued. On this point there can be no doubt. The declaration that Sharon Rosette filed in connection with the underlying motion explains that Mr. Rosette passed away on September 17, 2022 – or eleven (11) days before this Court issued its September 28, 2022 order addressing the dispositive motions that had been filed nearly two years prior. (Dkt. No. 375; 385-2, ¶ 2) Not only that, but this very same declaration also acknowledges that Ms. Rosette helped set up the family trust – and was thus aware of her late husband's health battle – by March 25, 2022 at the latest (Dkt. No. 385-2, ¶ 4) Thus,

---

[1] Rather surprisingly, Billboard reports that Family Affair – which many critics laud as one of the top 100 songs of all time – only stayed on the Top 100 for fourteen weeks, making its reign on the charts about two hundred and sixty-seven (267) weeks shorter than the life of this case. *See* Billboard, *Sly and the Family Stone*, *available at* https://www.billboard.com/artist/sly-the-family-stone/ (last visited Dec. 3, 2022).

1  for at least six months while cross-motions for summary judgment were pending, every-

2  one associated with Mr. Rosette seemingly knew that he was suffering from a terminal

3  illness but simply refused to say anything to this Court – including his legal counsel at

4  O'Melveny & Myers, LLP. This was their choice, of course. But, with it being so, it also

5  means they have to live with the consequences of that decision, one of which is that they

6  are now trying to sub in a successor under an order that is void *ab initio*.

7      To explain, one of the bedrock principles of federal law is that there must be an

8  actual case or controversy in order for a court to act. A case loses that character when an

9  adversary on one side of the table passes away. *See LN Mgmt., LLC v. JPMorgan Chase*

10 *Bank, N.A.*, 957 F.3d 943, 953 (9th Cir. 2020) ("[T]he dead lack the capacities that

11 litigants must have to allow for a true Article III case or controversy."). At that very

12 point, the leading "live" in "live case of controversy" is ripped right out of the require-

13 ment, thus rendering this false advertising dispute no more justiciable than one brought

14 by a suddenly business-oriented Nikola Tesla against Thomas Edison in the spring of

15 1932 for claiming he successfully manufactured his competitor's lightbulbs. *See Kremens*

16 *v. Bratley*, 431 U.S. 119, 129 (1977) (explaining "[t]here must be a live case or con-

17 troversy" for the Court to act). The point of all of this is that the Court lost the power to

18 adjudicate a dispute for or against Mr. Rosette eleven days before it did precisely that.

19     All of this is further proven by the text of the "substitution of parties" rule at Fed-

20 eral Rule of Civil Procedure ("Rule") 25. The outset of subsection (a)(1) therein explains

21 that "[i]f a party dies and the claim is not extinguished, the court may order substitution

22 of the proper party." Fed. R. Civ. P. 25(a)(1). The introductory clause from this quoted

23 text contains two conditions that are supposed to be read sequentially in order to deter-

24 mine whether substitution is appropriate: a party dies *and* the claim is not extinguished.

25 Taken together, this language means that a party needs to be substituted *during the*

26 *pendency of a claim* in order for substitution to be appropriate, and not after – however it

27 possibly happens – the claim against the decedent is dismissed on the merits and thereby

28 extinguished. *See In re Fieldwood Energy, LLC*, 637 B.R. 712, 720 n.13 (S.D. Tex.

Bankr. 2022) (defining "extinguish" as "[t]o bring to an end" and "[t]o terminate or cancel" (citing Black's Law Dictionary (11th ed. 2019))); *accord Uecker v. Ng*, 2019 Cal. App. Unpub. Lexis 8523, *14 (1st Dist. 2019). All that was required of Mr. Rosette was for him to instruct his legal counsel at O'Melveny & Myers, LLP to file a motion to hold the summary judgment motions in abeyance pending the appointment of a successor at any point during the six months period beginning around March 25, 2022 to immediately after his death on September 17, 2022. *See Mullin v. Bayline, Inc.*, 2021 U.S. Dist. Lexis 233855, *18 (D. Mass. 2021) (holding a motion for summary judgment in abeyance pending the substitution of a successor for a deceased party). Again, the very text of the rule makes it clear that seeking to substitute a successor *after* the disposition of a claim is no more valid that trying to do so *before* such claim is even filed. *See Mizukani v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969) ("[A]s the district court noted, the rule contemplates substitution for someone who had been made a party before his death. It is not available to the appellants in the present case since Buras predeceased the filing of the action." (citing *Chorney v. Callahan*, 135 F. Supp. 35 (D. Mass. 1955))). Thus, not only is substitution at this juncture impossible, but the Court also has an affirmative obligation to vacate its September 28, 2022 order *sua sponte* – at least as to the Lanham Act claim – since a party thereto was no longer alive at that time. Should vacatur not be ordered, Williams & Cochrane intends to file a formal motion for reconsideration of any judgment that is rendered in favor of Mr. Rosette under Federal Rule of Civil 60(b) since – *inter alia* – such judgment will also be void. *See* Fed. R. Civ. P. 60(b) (explaining "the court may relieve a party of its legal representative from a final judgment, order, or proceeding for the following reasons: … (4) the judgment is void").

The foregoing discussion about the mootness of the dispute at the time the September 28th order was issued and the consequent inappropriateness of substitution says nothing about the numerous other fatal defects that plague the underlying motion, including the fact that opposing counsel (1) filed it with the wrong judge, (2) failed to meet and confer before doing so, (3) does not appreciate that a false advertising claim is more akin

to traditionally personal claims like defamation for which substitution is not allowed, and (4) seems to have overlooked the wholly discretionary nature of substitution under Rule 25(a) that in turn enables a court to deny a motion *even if* the proponent has carried his or her burden of satisfying all of the textual requirements of the Rule. Any one of these four additional arguments provides the Court with a separate, standalone basis for denying the underlying motion, and the Court should do just that and help bring an end to a case that has continued on long, *long* past its expiration date.

## LEGAL STANDARD

Federal Rule of Cicil Procedure 25(a)(1) provides in full that:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a). The base elements for a motion to substitute under Rule 25(a)(1) are whether: "(1) the motion is timely, (2) the claims pled are [not] extinguished, and (3) the person being substituted is a proper party." *Smith v. Specialized Loan Servicing, LLC*, 2017 U.S. Dist. Lexis 148641, *5 (S.D. Cal. 2017). The party making the motion to substitute bears the burden of showing that substitution is appropriate. *See Harvey v. United States*, 2022 U.S. Dist. Lexis 180690, *2 (N.D. Tex. 2022). Even if the movant satisfies this burden, a court may nevertheless still deny substitution since Rule 25 is wholly discretionary. *See Koger v. Dart*, 2021 U.S. Dist. Lexis 32343, *5 (N.D. Ill. 2021) (citing, *e.g.*, *Crotty v. City of Chicago Heights*, 1990 U.S. Dist. Lexis 177 (N.D. Ill. 1990)).

## ARGUMENT

### I. OPPOSING COUNSEL FILED THIS MOTION TO SUBSTITUTE WITH THE WRONG JUDGE

The Local Rules of the United States District Court for the Southern District of California contains a civil rule that covers the duties of magistrate judges. That rule – Civil Rule 72.1 – in turn has a subsection b that provides "[p]ursuant to 28 U.S.C. §

636(b)(1)(A) a magistrate judge will hear and determine any pretrial motions, including discovery motions, other than the dispositive motions which are specified in 28 U.S.C. § 636(b)(1)(A)." *See* CivLR 72.1(b). The dispositive motions listed within the referenced Section 636(b)(1)(A) that are *the only pretrial ones not assigned to magistrate judges* are essentially what one would expect: "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). What is noticeably – but not surprisingly – absent from the foregoing list is a motion to substitute under Rule 25(a). That particular type of motion, in this case, should have been filed with Magistrate Judge Butcher, and even a cursory review of the rules for the Southern District would have revealed as much. Given this, the Court should deny the underlying motion and require Ms. Rosette to file it with Magistrate Judge Butcher – something that should (if at all) happen after the January 27, 2023 settlement disposition conference during which opposing counsel will hopefully inform the court this time about her intent to continue litigating the case. *See* Section II, *infra*.

## II.   OPPOSING COUNSEL FAILED TO MEET AND CONFER BEFORE FILING THIS MOTION TO SUBSTITUTE

Section III(A) of this Court's Civil Pretrial and Trial Procedures contains a meet-and-confer requirement that states in full:

> Any party contemplating the filing of a noticed motion before this Court must first contact opposing counsel to discuss thoroughly the substance of the contemplated motion and any potential resolution. The conference must take place at least seven (7) days prior to the filing of the motion. If the parties are unable to reach a resolution that eliminates the need to file the anticipated motion, counsel for the moving party must include in the motion papers a statement to the following effect: 'This motion is made following the conference of counsel that took place on [date].'

It is generally understood that the movant bears the burden of showing that it complied *in*

*good faith* with the meet-and-confer requirement so as to eliminate as many disputes between the parties as possible. *See Goldwater Bank, N.A. v. Elizarov*, 2022 U.S. Dist. Lexis 210645, \*5-\*6 (C.D. Cal. 2022). Orders that surgically pick apart movants' all-too-common blithe disregard for the near-universal meet-and-confer requirement are easy to find, and a recent illustrative one comes from the Chief Judge for the sister district head-quartered in Sacramento. *See Mollica v. County of Sacramento*, 2022 U.S. Dist. Lexis 196774 (E.D. Cal. 2022). The meet-and-confer requirement at issue in that case was sub-stantively similar to the one here, with Chief Judge Mueller commenting in connection therewith that "[m]eeting and conferring saves time and money for all involved – if done correctly." *Id.* at \*2. For starters, "[p]roductive discussions spare both the moving and opposing party the time they would have otherwise have devoted to writing unnecessary or ineffective arguments." *Id.* But, the process held more than that just time benefits for both parties. One other and often overlooked benefit is that it would "allow plaintiffs an opportunity to identify faults in a defendant's motion, and to do it in a less formal and less confrontational setting than on the public docket." *Id.* at \*6. For this and other reasons, "attorneys are not excused from their obligation to meet and confer simply because they believe meeting and conferring would probably *not* moot an anticipated motion" or occur on the truncated schedule the movant demands. *See id.* at \*3-\*4. After all, "[o]ur history is replete with examples of traditional enemies working out their differences by way of peaceful negotiation and resolution." *Id.* at \*4.

   Here, one who reads the declaration from opposing counsel and the supposed efforts to set up a meet-and-confer session depicted therein may imagine a scenario in which she is a relentless paperboy hounding a customer for a missing two dollars to no avail. The truth is actually far from that, though. It is true that opposing counsel included a statement in the October 14, 2022 status report for Magistrate Judge Butcher that she "intend[s] to file a motion to substitute the administrator of Mr. Rosette's estate and reserve[s] the[] right to seek an award of attorneys' fees under governing law." (Dkt. No. 381) However, the comments made by opposing counsel during the *actual* status confer-

Case No.: 17-CV-01436 RSH DEB
WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

ence two weeks hence were anything but, as Ms. Rogers indicated that her, her firm, and her client(s) – whomever they may be – wanted no further involvement in this case *whatsoever*. *See* Declaration of Kevin M. Cochrane ("Cochrane Decl."), ¶ 7. On the basis of that representation, Magistrate Judge Butcher then excused Ms. Rogers from participating in the upcoming settlement conference and said he would not require her to appear in this case going forward unless there was a compelling reason for doing so. *See* Cochrane Decl., ¶ 7.

Yet, *the very next Monday* following this Friday, October 28th status conference, Ms. Rogers e-mailed the undersigned and stated that she now "intend[ed] to move to substitute Ms. Rosette and will notify the court of Plaintiff's failure to respond to [her] [supposedly] repeated requests [to meet and confer]" if she did not "receive Plaintiff's position [on substitution] and availability for a meet-and-confer [sic] by close of business tomorrow." (Dkt. No. 385-3, p. 11) What is truly bizarre about all of this is that on the date of the foregoing exchange, the probate case for Mr. Rosette had only been active for *four (4) days* and Ms. Rosette had not even been appointed as the personal representative for the decedent's estate by then:

**[CONTINUED ON NEXT PAGE]**

7                 Case No.: 17-CV-01436 RSH DEB
WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

| Party Information | | | |
|---|---|---|---|
| Party Name | Relationship | Sex | Attorney |
| Robert A Rosette | Decedent | Male | Pro Per |
| Sharon M Rosette | Petitioner | Female | Kristin Moye |

| Case Documents | | | |
|---|---|---|---|
| Filing Date | Description | Docket Date | Filing Party |
| 11/9/2022 | LTA - Letter Of Appointment | 11/15/2022 | |
| NOTE: SHARON M ROSETTE / WITHOUT RESTRICTION | | | |
| 11/8/2022 | DCC - Declaration/Certificate of Completion | 11/14/2022 | |
| NOTE: AMENDED / SHARON M ROSETTE / PERSONAL REPRESENTATIVE / UNLICENSED FIDUCIARY | | | |
| 10/24/2022 | PAC - PROBATE REGISTRAR ACCEPTANCE | 10/27/2022 | |
| 10/24/2022 | SIP - Statement Of Informal Probate | 10/28/2022 | |
| 10/24/2022 | OPA - Order To Personal Representative & Acknowledgement | 10/28/2022 | |
| 10/21/2022 | APE - Application/Petition | 10/27/2022 | |
| 10/21/2022 | CSH - Coversheet | 10/27/2022 | |
| 10/21/2022 | PIF - Probate Information Sheet/Form - Restricted Access | 10/27/2022 | |
| 10/21/2022 | WIL - Will | 10/27/2022 | |
| 10/21/2022 | DCC - Declaration/Certificate of Completion | 10/27/2022 | |
| NOTE: SHARON M ROSETTE / PERSONAL REPRESENTATIVE | | | |
| 10/21/2022 | NIP - Notice Of Informal Probate | 10/27/2022 | |

*See In re Robert A. Rosette*, No. PB2022-051079 (Az. Sup. Ct. docketed on Oct. 27, 2022), *available at* http://www.superiorcourt.maricopa.gov/docket/ProbateCourtCases/ caseInfo.asp?caseNumber=PB2022-051079 (last visited Dec. 3, 2022). Without knowing any of this, the undersigned still responded to Ms. Rogers and informed her an immediate meet and confer would be difficult given the settlement-related requirements of Magistrate Judge Butcher, but that rushing through the process was unnecessary in any event since the statement of death had only recently been filed and the consequent deadline for any such substitution motion was not until around the end of December. *See* Cochrane Decl., ¶¶ 3, 11. After some back and forth, counsel arranged to meet and confer "on either Friday, November 18th or Monday, November 21st," with the undersigned proposing the latter date or the ensuing Friday, November 25th – the day after Thanksgiving when work calendars are traditionally clear – when his involvement in another settlement matter consumed what little time was available on the earliest suggested date of Friday, November 18th. *See* Cochrane Decl., ¶ 12. However, on Monday, November 21st, oppos-

ing counsel simply filed its motion to substitute during the middle of the business day without making any effort to set up a meeting either that day or on the proposed date at the end of the week. *See* Cochrane Decl., ¶ 13.

Again, the ultimate filing date for the motion to substitute was *less than a week* after Ms. Rosette had been appointed as the personal representative for Mr. Rosette's estate, which – from a ripeness perspective – is difficult to square with this Court's order that the meet-and-confer period span at least the seven (7) days prior to the filing of the motion. *See In re Robert A. Rosette*, No. PB2022-051079 (Az. Sup. Ct. filed on Oct. 27, 2022), *available at* http://www.superiorcourt.maricopa.gov/docket/ProbateCourtCases/caseInfo.asp?caseNumber=PB2022-051079 (last visited Dec. 3, 2022). Not only that, but any meeting between the parties would have invariably involved the undersigned a) inquiring why Ms. Rogers was trying to substitute *after the fact* when she could have – but simply did not – arranged for substitution at any point during the six-or-so months preceding the issuance of the September 27th order, and b) informing her that this *post hoc* substitution would create an epic procedural morass involving significant appellate proceedings if her plan succeeded. *See* Cochrane Decl., ¶ 15. But, this conversation never took place, nor does it appear that it was supposed to in light of Ms. Roger's failure to reasonably communicate with either Magistrate Judge Butcher or the undersigned.

III. **THE FALSE ADVERTISING CLAIM ABATED OR EXTINGUISHED UPON THE DEATH OF MR. ROSETTE SINCE THE CLAIM IS MORE AKIN TO TRADITIONALLY PERSONAL CLAIMS LIKE DEFAMATION AND INVASION OF PRIVACY**

One of the requirements for substitution under Rule 25(a) is that a claim has not been extinguished. *See* Fed. R. Civ. P. 25(a). Extinguishment can occur if the claim is considered to be wholly personal in nature and therefore cannot be asserted by another party, including a successor in interest. *Id*. The underlying motion starts its analysis from the assumption that federal common law applies to the resolution of this issue given that the relevant claim arises under federal law. (Dkt. No. 385-1, p. 6) However, *every* issue in this case aside from the actual elements of the particular claims has been resolved in

accordance with California law since the Court has long cast this case as being primarily a contract dispute between Williams & Cochrane and Quechan. *See*, *e.g.*, *Williams & Cochrane, LLP v. Rosette*, 2020 U.S. Dist. 109750 (S.D. Cal. 2020) (holding that State privilege law applies in a federal question case). Given this, the opposition will similarly assume that the laws of the State of California also apply to determine whether a claim of this nature survives a decedent's death. *Cf. Gutierrez v. Tucker*, 2021 U.S. Dist. Lexis 75933 (E.D. Cal. 2021) (applying the laws of the forum state to the survivability of a Section 1983 claim).

While California law has not dealt with the issue of the survivability of a false advertising claim *per se*, it has dealt with similar claims that turn upon false representations intended to damage the character or business interests of another party. One of the leading cases on this subject is *Kelly v. Johnson Publishing Company*, 160 Cal. App. 2d 718 (2d Dist. 1958), in which the court was tasked with explaining the nature of complementary claims like invasion of privacy and defamation in which a defendant is accused of either disclosing a fact or spreading a falsehood, respectively, that he should not have. In each instance, the court had no trouble holding that such a claim is personal to the one aggrieved. In *Kelly*, the discussion on invasion of privacy began right at the outset of the analysis, with the court explaining "[t]he right of privacy is a purely personal one." *Id.* at 721 (citing, *e.g.*, *Mau v. Rio Grande Oil, Inc.*, 28 F. Supp. 845, 846 (N.D. Cal. 1939)). The opinion then proceeded to quote from the author on the leading treatise on torts – *i.e.*, Dean William Prosser – who explained that

> The right [of privacy] is a personal one, and it does not extend to the plaintiff's dog. The action cannot be maintained by a relative of the person concerned, unless that relative is himself brought into unjustifiable publicity. The cause of action does not survive the individual, and cannot exist after death.

*Id.* (citing Prosser on Torts § 97 (2d ed. 1955)). Turning from the issue of invasion of privacy to defamation, the court similarly quoted from Dean Prosser to explain that "[a]ny living person may be defamed" but "[t]he civil action is personal to the plaintiff, and

1  cannot be founded on the defamation of another." *Id.* at 725; *see*, *e.g.*, *Atkins v. City of*
2  *Chicago*, 547 F.3d 869, 870 (7th Cir. 2008) (Posner, J.) (explaining that "some claims,
3  such as claims of defamation, die with the claimant"); *Sweitzer v. Am. Express Centurion*
4  *Bank*, 554 F. Supp. 2d 788, 796 (S.D. Ohio 2008) ("The co-administrators conceded that
5  they cannot proceed with the defamation claim against Amex. They acknowledge that
6  [Rule 25(a)] requires Plaintiff's claims to survive his death before substitution of the
7  parties is allowed and… his defamation claim did not.").

8          What is notable is the substantial overlap between a defamation and false advertis-
9  ing claim. Both concern a false statement of fact that has a natural tendency to financially
10  harm the target of the particular speech. *Compare* Cal. Civ. Code § 45 *with* 15 U.S.C. §
11  1125(a)(1)(B). If anything, a false advertising claim is really just one species of defama-
12  tion that occurs in the business context where the statement is likely to cross state lines.
13  With this being the principal difference between two claims that are aimed at rooting out
14  the same type of deceitful behavior, there is simply no reason *not* to follow the lead of the
15  *Kelly* court and hold that a false advertising claim is personal as between the speaker and
16  the target of the speech. What is more, this result should not change even if one looks at
17  federal law, as the common law has always interpreted the death of a party as terminating
18  *all* actions for personal torts. *See*, *e.g.*, *MacDonald v. Time, Inc.*, 554 F. Supp. 1053, 1055
19  (D.N.J. 1983) (citing defamation as one example). This rule not only covers defamation
20  (*id.*), but also actions for fraudulent misrepresentations (*see* Restatement (Second) of
21  Torts § 525 (2d ed. 1977)), concealments and nondisclosures (*id.* at § 550), negligent
22  misrepresentations (*id.* at § 552), innocent misrepresentations (*id.* at § 552C), and all
23  other injurious falsehoods like trade libel that harm a person in his ability to conduct
24  business (*see id.* at ch. 28). Again, false advertising fits in right amongst these claims, just
25  subject to the restriction that any enhanced damages can only triple the amount of actual
26  damages. *See* 15 U.S.C. § 1117. At least one of the many judges previously assigned to
27  this case has long-commented upon the personal nature of this dispute, which makes the
28  present the perfect time to apply that perception to the claim at issue. (*See*, *e.g.*, Dkt. No.

168 (replete with statements about the personal nature of the dispute between Williams & Cochrane and Mr. Rosette))

## IV. SUBSTITUTION IS IMPOSSIBLE NOW GIVEN THAT THE SEPTEMBER 28TH ORDER IS-SUED AFTER MR. ROSETTE'S DEATH, THUS RENDERING IT VOID *AB INITIO*

Again, Rule 25(a) explains that a court *may* in its discretion order substitution "[i]f a party dies and the claim is not extinguished." Fed. R. Civ. P. 25(a). This rule is almost always easy to administer because the claim at issue either immediately extinguishes – where it is personal in nature – or there is a substantial gap of time between the death of the decedent and the resolution of the claim during which an attorney can file a motion to substitute. After all, what attorney is going to sit on his or her laurels while a motion is pending and wait for a court to issue an order for or against a deceased client? Doing so takes the "live" out of the "live case or controversy" requirement and becomes a situation in which the attorney is just wasting everyone's time by passively litigating a case that is now moot. *See Hybe Co. v. Doe*, 2022 U.S. Dist. Lexis 6220, *3 n.4 (D. Nev. 2022) ("It is well-established that a federal court must have jurisdiction over both the person of the defendant . . . and the subject matter of the action before deciding the merits of the dispute." (quoting Wright & Miller, Federal Practice & Procedure § 1063.1 (4th ed.)).

Consider for example two cases in which the implicated court had to declare the matter moot and withdraw its prior orders because a plaintiff died while still pursuing one of its claims. The first of these cases is known as *Oertwich v. Traditional Village of Togiak*, No. 19-36029 (9th Cir. 2022), and involved a plaintiff who brought a bevy of claims against a tribe and tribal officials for unlawfully detaining him after attempting to import alcohol into the City of Togiak, Alaska. *Oertwich v. Traditional Village of Togiak*, 29 F.4th 1108, 1112-14 (9th Cir. 2022). On appeal, the United States Court of Appeals for the Ninth Circuit largely upheld the decision of the district court that dismissed the case in its entirety for lack of subject matter jurisdiction on account of tribal sovereign immunity, but nevertheless carved out a small exception that allowed the plaintiff-appellant to pursue tort claims – including a Section 1983 claim – on remand against the

named tribal officials in their individual capacities since they did not share in the tribe's immunity. *Id.* at 1123. For present purposes, the real fireworks in the case happened after the issuance of this opinion on March 30, 2022. Perhaps somewhat unsurprisingly, the individual tribal defendants that would be impacted by the holding in the May 30th order allowing the individual capacity claims to go forward filed a motion for panel rehearing on April 13, 2022. *See Oertwich*, Dkt. No. 71 (9th Cir. Apr. 13, 2022). The filing of this motion meant that the Ninth Circuit retained jurisdiction over the appeal, but just ten days later, and long before the Ninth Circuit could address the merits of the petition, the plaintiff unexpectedly passed away. *See Oertwich*, Dkt. No. 72 (9th Cir. May 3, 2022). The attorney who had represented the plaintiff did the right thing by promptly informing the court of his client's passing in under ten (10) days,[2] and that in turn led the Ninth Circuit to hold the matter in abeyance pending further developments. *See Oertwich*, Dkt. No. 75 (9th Cir. May 10, 2022). When it became clear no one would take the place of the decedent, the Ninth Circuit then declared the pending petition for panel rehearing moot, withdraw its prior May 30th order (the one for which the plaintiff was actually alive), and dismissed the appeal *in toto*. *See Oertwich*, 41 F.4th 1193 (9th Cir. 2022). What this second opinion disposing of the case goes to show is that a petition or motion becomes moot if one of the parties dies before its disposition, and the only appropriate remedy to a mistaken ruling on such a request is for the court to vacate or withdraw its opinion at issue.

Situations like the one in *Oertwich* are rare indeed, but another federal court within the Ninth Circuit dealt with the same thing a decade earlier. In *Farmer v. McDaniel*, 2012 U.S. Dist. Lexis 129027 (D. Nev. 2012), a convict named Farmer filed a petition for writ of habeas corpus with the district court in which he sought certain relief from his prison sentence. *Id.* at *1. The district court denied the petition on April 20, 2010 and the Ninth

---

[2] It is worth noting that the materials in *Oertwich* suggest the plaintiff was a man of limited means, and yet his attorney, who presumably has many other more "important" clients, was still able to notify the Court of the plaintiff's passing in less time than elapsed between Mr. Rosette's death and the issuance of the summary judgment order in this case.

WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

Circuit issued an order affirming that decision on February 7, 2012. *Id.* Receiving this adverse opinion on appeal simply led to the filing of a petition for rehearing *en banc*, but – during the pendency of such – the Ninth Circuit "issued an order [on September 5, 2012] stating that the court was advised that [the Petitioner] Farmer had died in prison on April 24, 2012." *Id* at *1-*2. This change in circumstances left the Ninth Circuit with only one option for handling the matter: it refrained from acting on the petition for rehearing *en banc*, vacated its February 7th order, dismissed the appeal as moot, and remanded the case to the district court "for dismissal of the petition for writ of habeas corpus as moot and for further proceedings as may be required, including the vacatur of any prior orders." *Id.* at *2. The district court heeded this instruction from the Ninth Circuit, finding that the action was moot and therefore vacating its prior orders and judgment. *Id.* Again, this second case goes to the very same point that a party actually needs to exist at the time a court addresses a motion or petition involving such a party.

Here, that obviously was not the case. Sharon Rosette filed a declaration in connection with the underlying motion in which she explained that her late husband Robert A. Rosette passed away on September 17, 2022 – or eleven days *before* this Court issued its dispositive order on the Lanham Act claim. (Dkt. No. 385-2, ¶ 2) Not only that, but Ms. Rosette actually helped co-create the family trust some six months prior, on March 25, 2022. (Dkt. No. 385-2, ¶ 4) The rather clear implication from this admission is that the Rosette family was well aware of Mr. Rosette's terminal illness *at least* six months before the Court issued its dispositive order. What they could have and should have done during that time – at worst – is file a motion with the Court to hold the summary judgment motions in abeyance pending the appointment of a legal representative. *See Mullin*, 2021 U.S. Dist. Lexis at 233855. Yet, it appears that Mr. Rosette was rolling the dice that the Court would resolve the Lanham Act claim in his favor. Sure, that did in fact happen with the issuance of the September 28th order (*but see* Section VI, *infra*); but it is also a pyrrhic victory given that the Court now has to vacate the order since Mr. Rosette passed before it issued.

**V.**   **AN ORDER GRANTING THE MOTION TO SUBSTITUTE WILL PRODUCE A TORRENT OF MOTION PRACTICE, INCLUDING A MOTION FOR RECONSIDERATION UNDER RULE 60(B) BY WILLIAMS & COCHRANE TO VACATE A VOID JUDGMENT**

An order addressing the merits of a motion made by a decedent is, once again, void *ab initio*. *See*, *e.g.*, *See Oertwich*, 41 F.4th 1193 (9th Cir. 2022). Federal Rule of Civil Procedure 60(b) details the possible grounds for relief from a final judgment, order, or proceeding, and lists among those grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> …
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A judgment enforcing a void order would seem to logically fall under the rubric of a void judgment that entitles a party to relief under prong (4). Not to mention, the prevailing fact pattern of opposing counsel failing to inform either the Court or Williams & Cochrane about Mr. Rosette's impending or actual passing, thus creating a situation in which the Court mistakenly issued an order where it lacked the power to do so, would certainly seem to provide additional grounds for relief under upwards of four other prongs of Rule 60(b). The import of this Section is just to stress the point that the September 28th order should not exist (at least with respect to the Lanham Act claim), and Williams & Cochrane will use every available procedure to ensure it is overturned in the event substitution is granted.

**VI.**   **THE COURT SHOULD EXERCISE ITS DISCRETION AND DENY SUBSTITUTION FOR A MYRIAD OF REASONS – INCLUDING MS. ROSETTE SEEMING TO BE THE ONLY ONE STILL INTERESTED IN FIGHTING AN AGE-OLD DISPUTE RATHER THAN LETTER IT GO**

Finally, substitution under Rule 25(a) "is discretionary and may be denied even if the motion is timely filed" and the other textual requirements are satisfied. *Koger*, 2021

U.S. Dist. Lexis 32343 at *5. The respective postures of the parties to this litigation is a real-life representation of the Sesame Street song lyric "one of these things is not like the other." Williams & Cochrane and Quechan were able to set aside their differences in a settlement conference before Magistrate Judge Butcher last month after five-and-a-half-years of grueling litigation and reach a settlement in principle. And then there is the Rosette family. They appear to be the only ones interested in litigating this case any further. This reality is all the more perplexing if one considers the position in which the Rosettes find themselves. During the course of the litigation, Mr. Rosette invoked every conceivable privilege in defense of the false advertising claim under the Lanham Act, and this Court arguably took a *very* narrow view of the applicable law to hold that Williams & Cochrane could not prevail on its claim because the evidence of causation – *i.e.*, the very documents Mr. Rosette refused to produce – for what *did* happen at Quechan (and not what *could* be expected to happen in the marketplace generally) was absent. Without even getting into the framing of the causation element, one could very easily present a case on appeal that permitting Mr. Rosette to shield evidence pertaining to a federal claim on the basis of State privilege law was legally unsound. Suffice it to say, all the parties would be better off by simply going their separate ways at this juncture. With that said, Williams & Cochrane will litigate the ruling on the Lanham Act claim in the September 28th order till the end of the line if this lawsuit somehow continues.

## CONCLUSION

For the foregoing reasons, Williams & Cochrane respectfully requests the Court to deny the motion to substitute in its entirety.

RESPECTFULLY SUBMITTED this 13th day of December, 2022

WILLIAMS & COCHRANE, LLP

By: */s/ Kevin M. Cochrane*
Cheryl A. Williams
Kevin M. Cochrane
caw@williamscochrane.com

Case No.: 17-CV-01436 RSH DEB
WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))

kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
125 S. Highway 101
Solana Beach, CA 92075
Telephone: (619) 793-4809

WILLIAMS & COCHRANE'S OPP'N TO MOT. TO SUBSTITUTE (RULE 25(A))