MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
BRITTANY ROGERS (S.B. #274432)
brogers@omm.com
KATE M. IKEHARA (S.B. #313431)
kikehara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for the Rosette Defendants and
proper party, Sharon Rosette

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS & COCHRANE, LLP,<br><br>Plaintiff,<br><br>v.<br><br>QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally-recognized Indian tribe; ROBERT ROSETTE; ROSETTE & ASSOCIATES, PC; and ROSETTE, LLP,<br><br>Defendants. | Case No. 17-CV-01436 RSH DEB<br><br>**REPLY IN SUPPORT OF MOTION TO SUBSTITUTE PARTY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 25(A)**<br><br>Date:          December 27, 2022<br>Judge:        Hon. Robert S. Huie<br>Courtroom:  3B<br>Trial Date:  Not Set<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>[Filed concurrently with: Declaration of Brittany Rogers] |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................... 1

II.   ARGUMENT ................................................................................. 2

    A.    W&C Concedes That the Motion Was Timely and Ms. Rosette Is a Proper Party for Substitution. ........................................ 2

    B.    W&C's Lanham Act Claim Was Not Extinguished. ............................ 2

    C.    W&C's Remaining Arguments Are Equally Baseless. ....................... 5

    D.    W&C's Threats Should Not Be Factored Into the Decision Except As Relevant to Sanctions. ........................................... 8

III.  CONCLUSION ........................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Binder v. Disability Grp., Inc.,*
772 F. Supp. 2d 1172 (C.D. Cal. 2011) ...................................................3

*Blixseth v. Yellowstone Mountain Club, LLC,*
796 F.3d 1004 (9th Cir. 2015) ...............................................................9

*Brunoehler v. Tarwater,*
2020 WL 4352790 (C.D. Cal. Jan. 31, 2020) ........................................2

*Chacon v. Babcock,*
640 F.2d 221 (9th Cir. 1981) .................................................................7

*Cheramie v. Orgeron,*
434 F.2d 721 (5th Cir. 1970) .................................................................3

*Estate of O'Shea through O'Shea v. Am. Solar Sol., Inc.,*
2021 WL 4819311 (S.D. Cal. Oct. 15, 2021) .........................................8

*Farmer v. McDaniel,*
692 F.3d 1052 (9th Cir. 2012) ...............................................................6

*Getty Petroleum Corp. v. Bartco Petroleum Corp.,*
858 F.2d 103 (2d Cir. 1988) ..................................................................3

*Gutierrez v. Tucker,*
2021 WL 5263847 (E.D. Cal. Apr. 20, 2021) .....................................3, 4

*In re Player's Poker Club, Inc.,*
636 B.R. 811 (Bankr. C.D. Cal. 2022) ..................................................6

*Kelly v. Johnson Pub. Co.,*
160 Cal. App. 2d 718 (1958) .................................................................4

*Krantz v. United States,*
224 F.3d 125 (2d Cir. 2000) ..................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) ..............................................................................3

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.,*
957 F.3d 943 (9th Cir. 2020) .................................................................7

*Matlink, Inc. v. Home Depot U.S.A., Inc.,*
2008 WL 8504767 (S.D. Cal. Oct. 27, 2008) .........................................9

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC,*
310 F. Supp. 3d 1089 (S.D. Cal. 2018) ..................................................4

*Oertwich v. Traditional Vill. of Togiak,*
41 F.4th 1193 (9th Cir. 2022) ................................................................6

*Pennewell v. Carey,*
2008 WL 1860166 (E.D. Cal. Apr. 23, 2008) ........................................6

*Produce Pay, Inc. v. FVF Distribs. Inc.,*
2022 WL 463929 (S.D. Cal. Feb. 15, 2022) ..........................................8

*Robinson v. Eastman Kodak Co.,*
2003 WL 24183368 (W.D.N.Y. Apr. 9, 2003) ........................................9

REPLY ISO MOTION TO SUBSTITUTE
17-CV-01436 RSH DEB

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith v. Specialized Loan Servicing, LLC*,
   2017 WL 4050344 (S.D. Cal. Sept. 13, 2017) .......................................... 8

*Strojnik v. Evans Hotels, LLC*,
   2020 WL 2767361 (S.D. Cal. May 28, 2020) ........................................ 7

*Stroud v. Mayden*,
   35 F.R.D. 378 (W.D. Mo. 1964) .......................................................... 6

*Sullivan v. Delta Air Lines, Inc.*,
   15 Cal. 4th 288 (1997) ......................................................................... 4

*League of Women Voters of Pa. v. Cappy*,
   2009 WL 2244470 (M.D. Pa. July 24, 2009) ................................... 5, 6

*Town of New Castle v. Yonkers Contracting Co.*,
   796 F. Supp. 112 (S.D.N.Y. 1992) ...................................................... 3

*U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*,
   603 F. Supp. 2d 677 (S.D.N.Y. 2009) ................................................. 4

*Venable v. Meyers*,
   500 F.2d 1215 (9th Cir. 1974) ............................................................ 6

*Weil v. Markowitz*,
   898 F.2d 198 (D.C. Cir. 1990) ........................................................ 5, 6

*Wheeler v. City of Santa Clara*,
   894 F.3d 1046 (9th Cir. 2018) ............................................................ 2

**Statutes**

28 U.S.C. § 1927 .......................................................................................... 9

Cal. Civ. Proc. Code § 377.20 (1992) ........................................................ 4

**Other Authorities**

*In Memoriam:  Robert Rosette, Founding Partner of Law Firm
Rosette, LLP*, Indian Gaming (Sept. 23, 2022),
   https://www.indiangaming.com/in-memoriam-robert-rosette-
founding-partner-of-native-owned-law-firm-rosette-llp/ ................... 10

**Rules**

CivLR 2.1(a)(3)(d) ....................................................................................... 7

Fed. R. Civ. P. 25(a) .................................................................................... 2

1

## I.      INTRODUCTION

Williams & Cochrane, LLP's ("W&C") Opposition to Ms. Rosette's Motion to Substitute (the "Motion") is sadly typical of W&C's litigation tactics over the last five years.  The Opposition offers no cogent legal basis to deny the Motion.  Instead, W&C uses the Opposition to repeat and amplify its *ad hominem* attacks on Mr. Rosette, his widow, and his counsel.  W&C also tries to improperly side-step this Court's summary judgment order in favor of Mr. Rosette, Rosette & Associates, PC, and Rosette, LLP (the "Rosette Defendants").  The Court should ignore the misdirection and grant the Motion, so that a final judgment can then be entered in favor of Defendants Rosette & Associates, PC, Rosette, LLP, and Sharon Rosette, as Mr. Rosette's surviving spouse, sole Trustee of the Rosette Family Trust, and Mr. Rosette's appointed Personal Representative.

There are three requirements for substitution under Rule 25(a):  the motion must be timely, the claim must not be extinguished, and the party to be substituted must be a proper party.  W&C concedes that the Motion is timely and does not contest that Ms. Rosette is the proper party for substitution.  W&C's only substantive argument against the Motion—that its Lanham Act claim was extinguished upon Mr. Rosette's death—disregards prevailing case law and ignores that the Lanham Act claim is precisely the type of remedial statute that survives under federal common law.  Rather than engaging with the governing legal framework, W&C tries to invent a different standard for the Lanham Act by analogizing inapplicable state-law rules.

W&C's other arguments fare no better.  W&C dedicates the remainder of its Opposition to (i) complaints about the Motion's filing and the Court's summary judgment order, (ii) malicious and baseless accusations against the late Mr. Rosette and his widow, (iii) mischaracterizations of the record, and (iv) threats aimed at the Rosette Defendants and this Court.  Having lost summary judgment on its last claim against the Rosette Defendants, W&C acknowledges that it is trying to prevent a

REPLY ISO MOTION TO SUBSTITUTE
17-CV-01436 RSH DEB

final judgment from being entered against it.  There is no basis to avoid judgment. The Court should grant the Motion so that the Rosette Defendants and Ms. Rosette can submit a proposed form of judgment, file motions for attorneys' fees, and finally put an end to this abuse.

## II.   ARGUMENT

### A.   W&C Concedes That the Motion Was Timely and Ms. Rosette Is a Proper Party for Substitution.

Rule 25(a) of the Federal Rules of Civil Procedure requires that the Motion be timely filed and that the suggested party be "proper."  Fed. R. Civ. P. 25(a). Neither element is disputed.  The Motion was timely because it was filed within 90 days of W&C's filing of a Statement of Death (Mot. at 4), and Ms. Rosette is the proper party to be substituted for Mr. Rosette as Mr. Rosette's surviving spouse, sole Trustee and beneficiary of the Rosette Family Trust, and the sole beneficiary of and Personal Representative of Mr. Rosette's estate, (Mot. at 5–6).  Despite its length, W&C's Opposition does not contest that Ms. Rosette meets these two requirements for substitution under Rule 25(a).  (*See* Opp. at 8 ("[T]he consequent deadline for any such substitution motion was not until around the end of December."); *id.* at 9 (acknowledging that "Ms. Rosette had been appointed as the personal representative for Mr. Rosette's estate").)  Thus, there is no disagreement on two of three criteria for substitution.

### B.   W&C's Lanham Act Claim Was Not Extinguished.

While W&C disputes that its own Lanham Act claim survived Mr. Rosette's passing, the argument it offers is meritless.  The Motion demonstrated (Mot. at 5) that under federal law, "claims typically survive a decedent's death if they are remedial in nature and not penal."  *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1056–57 (9th Cir. 2018); *see also Brunoehler v. Tarwater*, 2020 WL 4352790, at *1 (C.D. Cal. Jan. 31, 2020) (finding that under federal common law, claim with a remedial purpose survives a party's death).  There is no question that federal

1   statutes meant to compensate alleged injuries to property rights are remedial, not

2   penal, and therefore survive a party's death.  For example, courts have held that

3   actions for patent infringement and antitrust violations are remedial in nature.  *See,*

4   *e.g.*, *Cheramie v. Orgeron*, 434 F.2d 721, 723 (5th Cir. 1970) ("An action for

5   infringement is an action based upon injury to property rights which survives the

6   death of a party."); *see also Town of New Castle v. Yonkers Contracting Co.*, 796 F.

7   Supp. 112, 113 (S.D.N.Y. 1992) (antitrust claim survived death of a defendant

8   because "[t]his is a situation where there is a 'claim that the estate of the decedent

9   has been increased by profits . . . wrongfully diverted from the plaintiff.'").

10      The Lanham Act is no different as it compensates only "injur[ies] to a

11   'commercial interest.'"  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572

12   U.S. 118, 131–32 (2014).  Indeed, "[s]o long as its purpose is to compensate a

13   plaintiff for its actual injuries—even though the award is designed to deter

14   wrongful conduct—the Lanham Act remains remedial."  *Getty Petroleum Corp. v.*

15   *Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988).  Given their remedial

16   nature, Lanham Act claims survive the death of a party under federal common law.

17   *See Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1183 (C.D. Cal. 2011)

18   (noting that the Lanham Act is remedial in nature).  The law is unambiguous.

19      Ignoring this body of federal caselaw entirely, W&C appears to argue that

20   (i) California state law applies, (ii) state common law "has always interpreted the

21   death of a party as terminating *all* actions for personal torts," and (iii) W&C's

22   Lanham Act claim is personal in nature, as opposed to remedial, because W&C

23   elected to litigate through aggressive personal attacks.  (Opp. at 11 (emphasis in

24   original).)  These arguments are groundless.

25      First, there is no basis to apply California law.  W&C argues that California

26   law on survivability applies because the parties are litigating in California, and cites

27   *Gutierrez v. Tucker*, 2021 WL 5263847 (E.D. Cal. Apr. 20, 2021), for support.  But

28   the Opposition fails to quote *Gutierrez* or explain its holding.  Contrary to W&C's

suggestion, *Gutierrez* stands for the proposition that "[t]o determine whether a cause of action survives a party's death, the Court must look to the law, state or federal, under which the cause arose." *Id.* at *2 (applying California law because "[i]n § 1983 claims, the law of the forum state controls the survivability of claims"). Since the Lanham Act is a federal law that does not specify that the forum's law controls survivability, federal common law applies. *See U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009) ("Unless a statute directly addresses the issue, courts are generally guided by principles of federal common law").

Second, under California law—which does not even govern—"a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Civ. Proc. Code § 377.20 (1992).[1] W&C cannot now contend that its own Lanham Act claim is barred by the applicable statute of limitations, so it tries to fit the claim into an exception for "personal torts" under California law, citing *Kelly v. Johnson Pub. Co.*, 160 Cal. App. 2d 718 (1958). The problem for W&C is that the torts discussed in *Kelly*—violation of the right to privacy and defamation—redress "a direct wrong of a personal character resulting in injury to the feelings" not injury to property. *Id.* at 721. But "personal" in this sense refers to the asserted injury, not the tenor of the litigation. And unlike "personal tort claims" where the "personalization of the injuries and damages [] creates a need for the actually injured party to be a part of the case," *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1109 (S.D. Cal. 2018), claims under the Lanham Act redress commercial injuries and are freely assignable, *id*. Thus, even if California law dictates survivability of

---

[1] California's survival statute expanded the range of surviving causes of action because "the ancient maxim that 'personal actions die with the person' . . . merely states a largely meaningless conclusion, has no compelling wisdom on its face, is of obscure origin, and appears to be of questionable application to modern conditions." *Sullivan v. Delta Air Lines, Inc.*, 15 Cal. 4th 288, 299 (1997) (quoting legislative history).

REPLY ISO MOTION TO SUBSTITUTE
17-CV-01436 RSH DEB

Lanham Act claims litigated in federal court, the Motion should still be granted.

### C.     W&C's Remaining Arguments Are Equally Baseless.

***This Court's Summary Judgment Order Is Not Void.*** W&C claims that the Court's summary judgment order is void because Mr. Rosette passed away days before the order was docketed; according to W&C, Mr. Rosette's death meant there was no live case or controversy at the time of the order.  (Opp. at 12–14.)  Not so. The death of a litigant before a court's decision on a fully briefed, dispositive motion does not undo the court's reasoning, analysis, or conclusions.  *League of Women Voters of Pa. v. Cappy*, 2009 WL 2244470 (M.D. Pa. July 24, 2009), *aff'd* 385 F. App'x 134 (3d Cir. 2010) is instructive.  There, a defendant died on May 1, 2009, and a suggestion of death was filed on May 7, 2009, both while his motion to dismiss was pending.  *Id.* at *2.  The district court granted the deceased defendant's motion to dismiss on June 26, 2009, nearly two months after he passed away.  *Id.* at *1–2.  There, like here, the plaintiff tried to avoid the order by arguing that it was error to adjudicate a pending motion to dismiss before the plaintiff had the opportunity to substitute another party for the decedent.  *Id.*  The court disagreed:

> Defendant Cappy, ably represented by counsel throughout this proceeding, had pending prior to his death a meritorious motion to dismiss Plaintiff's amended complaint . . . .  The fact of Defendant Cappy's death had absolutely no bearing upon the merits of his dispositive motion, . . . .  As the Court's ruling explained, Plaintiff advanced no cognizable claims against Defendant Cappy.  This fact cannot be altered by substituting a "proper party" in Defendant Cappy's place, and it plainly may not be altered by using Defendant Cappy's death as an opportunity to add new claims or alternative legal theories against different parties.

*Id.* at *2.  The same reasoning applies to this Court's summary judgment order in favor of the Rosette Defendants.[2]  As the court in *Cappy* noted, although W&C may

---

[2] Although not necessary to grant the Motion and issue judgment, the Court also has authority to order *nunc pro tunc* relief to substitute Ms. Rosette for Mr. Rosette as at the time the Court issued its summary judgment order.  *See Weil v. Markowitz*, 898 F.2d 198, 201 (D.C. Cir. 1990) (citations omitted) ("The paradigm case [for *nunc pro tunc* relief] involves a party who has died after his case has been submitted to the court, but before the court has entered judgment.");  *Venable v.*

1  not have "been pleased with the Court's ruling, [it] cannot argue that it was

2  somehow prejudiced by the dismissal of its claims upon consideration of a fully-

3  briefed and meritorious dispositive motion." *Id.* at \*2 n.2.

4      W&C's legal support crumbles under even the slightest scrutiny.  Indeed,

5  W&C's authorities—*Oertwich v. Traditional Vill. of Togiak*, 41 F.4th 1193 (9th

6  Cir. 2022) and *Farmer v. McDaniel*, 692 F.3d 1052 (9th Cir. 2012)—arose under

7  markedly different circumstances.  In *Oertwich*, the sole appellant died, and despite

8  an order from the Ninth Circuit, no request or motion to substitute was filed.  41

9  F.4th at 1194.  With no one left to prosecute the appeal, the Ninth Circuit withdrew

10  its prior opinion and dismissed the action.  *Id.*  *Farmer* is similarly inapposite

11  because it involved a *habeas* petition—"an action to restrain allegedly illegal

12  personal restraints and mistreatment of petitioner." *Stroud v. Mayden*, 35 F.R.D.

13  378, 379 (W.D. Mo. 1964).  *Habeas* petitions involve relief specific to the plaintiff

14  in each case, i.e., "immediate release from custody or a new parole suitability

15  hearing." *Pennewell v. Carey*, 2008 WL 1860166, at \*1 (E.D. Cal. Apr. 23, 2008).

16  Unsurprisingly, these petitions are mooted upon the death of the petitioner since the

17  requested relief cannot flow to anyone else.  *See Krantz v. United States*, 224 F.3d

18  125, 127 (2d Cir. 2000) ("This practice is premised on the fact that the [*habeas*]

19  motion is, by virtue of petitioner's death, rendered moot.").

20      W&C also conveniently ignores that Rosette & Associates, P.C. and Rosette,

21  LLP are both named as defendants to the Lanham Act claim, and both moved for

22  summary judgment alongside Mr. Rosette.  (*See* Dkt. Nos. 220, 322, 375.)  Thus,

23  even accepting W&C's arguments, there can be no dispute that there was a live case

24

25  *Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974) ("entry of judgment *nunc pro tunc* as
    of the date all the issues were submitted to the district court was appropriate" where

26  party died "before the entry of judgment").  This is consistent with the purpose of
    such relief, which is "to avoid, [rather than] create, an injustice at the hands of the

27  court itself." *Weil*, 898 F.2d at 201; *see also In re Player's Poker Club, Inc.*, 636

28  B.R. 811, 825 (Bankr. C.D. Cal. 2022) (noting that *nunc pro tunc* relief "preserved
    the vitality of the decision notwithstanding the intervening death of the litigant.").

1    and controversy at the time the order issued.  *See LN Mgmt., LLC v. JPMorgan*

2    *Chase Bank, N.A.*, 957 F.3d 943, 953 (9th Cir. 2020) ("In our case, if [plaintiff]

3    could not proceed against [decedent], they nevertheless still had a live case or

4    controversy against [the remaining defendants], which they could continue to

5    pursue in federal court.").  Try as W&C might to prolong entry of judgment,

6    judgment will need to be entered in favor of the Rosette Defendants, *see Chacon v.*

7    *Babcock*, 640 F.2d 221, 222 (9th Cir. 1981) ("Without a Rule 54(b) certification,

8    orders granting partial summary judgment are non-final"), and Ms. Rosette requests

9    that she be substituted for Mr. Rosette in advance of that judgment.

10        ***Defendants Attempted to Meet and Confer in Good Faith.***  W&C also

11   complains about the lack of a meet and confer, but that was entirely W&C's choice.

12   Defendants' counsel made numerous attempts to meet and confer with W&C, but

13   those efforts were rebuffed.  (*See* Mot. at 3–4.)  As is clear from the Opposition,

14   W&C is desperate to avoid entry of final judgment; delaying and canceling

15   scheduled meet and confers was part of its strategy.  But, "a party may not

16   arbitrarily or unreasonable withhold consent to a reasonable request for cooperation

17   or accommodation," CivLR 2.1(a)(3)(d), and W&C should not be permitted to use

18   the meet-and-confer requirement to block a timely motion.  Given W&C's failure to

19   meet and confer within six weeks of defense counsel's initial outreach, Ms. Rosette

20   had no choice but to bring this Motion.  The meet-and-confer requirement is

21   excused under these circumstances.  *See Strojnik v. Evans Hotels, LLC*, 2020 WL

22   2767361, at *1 (S.D. Cal. May 28, 2020) (excusing meet-and-confer requirement

23   where "Plaintiff refused to make himself available for meet-and-confer discussions

24   with defense counsel regarding discovery for more than six weeks").[3]

25        W&C similarly criticizes counsel's meet-and-confer efforts based on Mr.

26

27   [3] W&C also quibbles about the timing of Defendants' counsel's meet-and-confer
     outreach in relation to the conclusion of probate proceedings.  (Opp. at 7–8.)  The
28   information communicated to W&C in counsel's meet-and-confer attempts was
     accurate, however, and W&C does not claim otherwise.

1    Cochrane's recollection of an unreported status conference before the Honorable
2    Daniel E. Butcher on October 21, 2022.[4]  (Opp. at 6–7.)  Defense counsel has a
3    different recollection.  During discussions about a settlement conference, counsel
4    for the Rosette Defendants asked that her clients be excused because no claims
5    remained against them.  (Rogers Reply Decl. ¶ 5.)  Magistrate Judge Butcher
6    therefore excused the Rosette Defendants.  (*Id.* ¶ 7; Dkt. No. 383 ¶ 2.)  This was
7    entirely consistent with the parties' joint status report (Rogers Reply Decl. ¶ 4; Dkt.
8    No. 381), and the present Motion which seeks to substitute Ms. Rosette so that
9    Court can enter judgment and adjudicate a motion for attorneys' fees and costs.

10       ***The Motion Was Filed With the Correct Judge.***  Finally, W&C claims that
11   the Motion should have been filed before Magistrate Judge Butcher.  (Opp. at 4.)
12   The Motion was filed before the Honorable Robert S. Huie because the issues
13   raised relate to the District Court's summary judgment order and ultimately the
14   final judgment in the case, which the Rosette Defendants intend to seek following
15   disposition of this Motion.  Moreover, District Court judges routinely decide
16   motions to substitute in this District.  *See, e.g.*, *Produce Pay, Inc. v. FVF Distribs.*
17   *Inc.*, 2022 WL 463929, at *1 (S.D. Cal. Feb. 15, 2022) (Anello, J.) (granting motion
18   to substitute surviving spouse for defendant); *Estate of O'Shea through O'Shea v.*
19   *Am. Solar Sol., Inc.*, 2021 WL 4819311, at *3 (S.D. Cal. Oct. 15, 2021) (Lorenz, J.)
20   (granting motion to substitute); *Smith v. Specialized Loan Servicing, LLC*, 2017 WL
21   4050344, at *1 (S.D. Cal. Sept. 13, 2017) (Curiel, J.) (same).  In any event, if in the
22   Court's judgment the Motion is more properly handled by Magistrate Judge
23   Butcher, then Ms. Rosette welcomes Judge Huie's referral of the Motion.

24       **D.**    **W&C's Threats Should Not Be Factored Into the Decision Except**
                **As Relevant to Sanctions.**
25

26       With no legal basis to oppose the Motion and as a seemingly last resort,

27   _____
28   [4] The status conference was held on October 21, 2022, not October 28, 2022 as
     W&C claims.  (Opp. at 7; Dkt. No. 287-1 ¶ 7.)  Mr. Cochrane's memory is not
     reliable in this regard, too.

1  W&C threatens a "torrent of motion practice" should the Court grant the Motion

2  and enter judgment.  (Opp. at 15–16.)  These threats are no basis for denying the

3  Motion.  Instead, they are a transparent and unacceptable attempt to intimidate.

4  The Court should thus disregard W&C's "admitted strategy to becalm the instant

5  case in a sea of costly motion practice" if W&C is unhappy with the outcome.

6  *Robinson v. Eastman Kodak Co.*, 2003 WL 24183368, at \*4 (W.D.N.Y. Apr. 9,

7  2003) (denying request of party who "hint[ed] that it intends to file myriad

8  motions" and "further warn[ed] that, in the event that the Court certifies a class, it

9  will likely move to decertify the class at the conclusion of discovery.").

10  　　　Further, these threats once again highlight the vexatious manner in which

11  W&C has litigated this case.  The Court has inherent authority under 28 U.S.C.

12  § 1927 to evaluate whether W&C's conduct has "multiplie[d] the proceedings . . .

13  unreasonably and vexatiously" and may award "costs, expenses, and attorneys' fees

14  reasonably incurred because of such conduct."  *Blixseth v. Yellowstone Mountain*

15  *Club, LLC*, 796 F.3d 1004, 1007–08 (9th Cir. 2015) (quoting 28 U.S.C. § 1927).

16  Sanctions are also appropriate where, as here, a party's refusal to meet and confer

17  necessitates motion practice.  *See Matlink, Inc. v. Home Depot U.S.A., Inc.*, 2008

18  WL 8504767, at \*5 (S.D. Cal. Oct. 27, 2008) (awarding sanctions where the

19  plaintiffs "stonewalled [a defendant's] efforts to meet and confer until the eleventh

20  hour when [the defendant] already had expended considerable time attempting to

21  meet and confer and, ultimately, preparing a motion.").  An award of the fees and

22  costs incurred in preparing the Motion and Reply are therefore appropriate because

23  W&C has unreasonably multiplied the proceedings, mischaracterized the statements

24  of Defendants' counsel at the October 21 status conference, and continues to harass

25  the Rosette Defendants through its vexatious litigation conduct.[5]

26  _____

27  [5] Judge Curiel previously chastised W&C for this very conduct:  "The level of
    acrimony displayed by W&C in their pleadings deserves attention.  Throughout its
    pleadings, W&C clothe their legal contentions in personal and sarcastic barbs.  This

28  creates an unnecessary distraction and produces many pages of irrelevant material
    on the issues before the Court, thereby diluting the arguments presented.  This type

REPLY ISO MOTION TO SUBSTITUTE
17-CV-01436 RSH DEB

1

**III.   CONCLUSION**

2          Mr. Rosette's untimely passing is a loss to his family, friends, and

3   community, after he provided "decades of trailblazing legal strategies for the

4   benefit of tribal governments and their businesses."[6]  His death is not an

5   opportunity for W&C to erase the last five years of litigation and side-step the

6   consequences of its decision to mount and maintain a frivolous lawsuit.  For the

7   foregoing reasons, Sharon Rosette respectfully requests that the Court issue an

8   order substituting her for Robert Rosette in this action.  She also requests an award

9   of fees and costs incurred in preparing what should have been an unnecessary

10  Motion and Reply.

11

12          Dated:  December 20, 2022          Respectfully Submitted,

13                                            By: _/s/ Brittany Rogers_____

14                                               Brittany Rogers

15                                            Attorneys for the Rosette Defendants
                                              and proper party, Sharon Rosette
16                                            Email:  brogers@omm.com

17

18

19

20

21

22

23

24

25

---

26  of lawyering is not only disrespectful to the opposing parties and counsel, but to the
    Court as well."  (Dkt. No. 285 at 20 n.9.)
27  [6] *In Memoriam:  Robert Rosette, Founding Partner of Law Firm Rosette, LLP*,
    Indian Gaming (Sept. 23, 2022), https://www.indiangaming.com/in-memoriam-
28  robert-rosette-founding-partner-of-native-owned-law-firm-rosette-llp/.

REPLY ISO MOTION TO SUBSTITUTE
                                         17-CV-01436 RSH DEB